# 21-2304; 21-2598 (con)

# United States Court of Appeals
## For the Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ANTHONY LAURIA,

*Defendant,*

BRIAN RODRIGUEZ, ANTHONY MOLINA,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF & APPENDIX ON APPEAL ON BEHALF OF
DEFENDANT-APPELLANT ANTHONY MOLINA**

Richard W. Levitt
Zachary Segal
Levitt & Kaizer
40 Fulton Street 17th Floor
New York, New York 10038
(212) 480-4000
*Attorneys for Anthony Molina*

# Table of Contents

Table of Authorities ...............................................................iv

Statement of Subject Matter & Appellate Jurisdiction......................1

Statement of Issues, Argument Summary
  & Standard of Review .......................................................2

Preliminary Statement .......................................................4

Statement of Facts...............................................................5

    Government Case.......................................................5

    Defense Case .........................................................7

Argument .....................................................................9

I. GEO-LOCATION DATA PLACING MOLINA IN NEW
   MILFORD AND MAHOPAC WHEN THE TWO CHARGED
   ROBBERIES OCCURRED SHOULD HAVE BEEN
   SUPPRESSED AS THE FRUIT OF WARRANTS THE
   DISTRICT COURT AGREED WERE OBTAINED USING
   MATERIALLY FALSE INFORMATION; THE DISTRICT
   COURT ERRED WHEN IT APPLIED THE INEVITABLE
   DISCOVERY EXCEPTION WITH NO ANALYIS
   WHATSOEVER, AND WHERE THE GOVERNMENT IN
   FACT FAILED TO PROVE
   DISCOVERY WAS INEVITABLE............................................ 9

    Facts .....................................................................10

      A. Connecticut anonymous tip & warrants ........................ 10

      B. Toll records & cell site/tower extraction warrants
        are issued ...................................................... 11

      C. Complaint filed; arrest warrants and warrant for

cell site data issued ........................................................ 13

    D. Defendants Rodriguez & Molina are arrested, cell
       phones are seized and additional warrants are issued.14

    E. Motion to suppress ........................................................ 16

Discussion ................................................................ 23

    A. New Milford: the 4879 number ..................................... 31

    B. Mahopac: the 2454 number .......................................... 39

    C. Molina's arrest was not inevitable; therefore,
       nor was the collection of his DNA ................................ 43

    D. The error in applying the inevitable discovery
       exception was not harmless ........................................... 44

II. **THE TRIAL COURT WRONGLY DENIED DEFENDANT'S
REQUEST FOR A "THEORY OF DEFENSE"
INSTRUCTION REGARDING POSSESSION, ETC.,
OF A FIREARM, AND THE INSTRUCTION GIVEN
TO THE JURY WAS OTHERWISE ERRONEOUS** .......... 46

Facts ....................................................................... 47

Discussion ................................................................ 50

    A. The trial court wrongly refused to give the requested
       "theory of defense" instruction ..................................... 50

    B. The trial court's instruction erroneously equated
       a "gun" with a "firearm" ............................................... 54

    C. The errors were not harmless ...................................... 56

Conclusion ............................................................... 59

Certificate of Compliance ...................................................... 60

## Appendix Table of Contents

Docket Entries ..................................................................... A.1

Decision & Order denying motion to suppress ............................... A.24

Charge conference (excerpt) .................................................. A.57

Jury instruction (excerpt) ..................................................... A.61

Notice of Appeal dated October 7, 2021 ........................................ A.68

# Table of Authorities

**Cases**                                                    **Page(s)**

*In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66 (2d Cir. 2016) ................................................................. 3

*In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147 (2d Cir. 2019) ....................................................*passim*

*Franks v. Delaware*, 438 U.S. 154 (1978)................................. 16, 22, 28

*Herring v. United States*, 555 U.S. 135 (2009) ....................................... 23

*Higgs v. District Court*, 713 P.2d 840 (Colo. 1985) ................................. 34

*Medley v. Runnels*, 506 F.3d 857 (9th Cir. 2007) ................................... 56

*Matter of Subpoena 2018R00776*, 947 F.3d 148 (3d Cir. 2020) ............................................................... 35

*United States v. Archer*, 671 F.3d 149 (2d Cir. 2011) ............................ 54

*United States v. Cabassa*, 62 F.3d 470 (2d Cir. 1995)....................*passim*

*United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021)............................ 57

*United States v. Cedeno*, 437 F. App'x 8 (2d Cir. 2011) ......................... 55

*United States v. Christian*, 2017 WL 2274328 (E.D. Va. May 24, 2017), *aff'd*, 737 F. App'x 165 (4th Cir. 2018)............................. 33

*United States v. Crowley*, 236 F.3d 104 (2d Cir. 2000) .................... 51, 52

*United States v. Dove*, 916 F.2d 41 (2d Cir. 1990) ................................. 51

*United States v. Eng*, 971 F.3d 854 (2d Cir. 1992) .........................*passim*

*United States v. Heath*, 455 F.3d 52 (2d Cir. 2006) ........................*passim*

*United States v. Nouri*, 711 F.3d 129 (2d Cir. 2013) ................................ 4

*United States v. Roberts*, 852 F.2d 671 (2d Cir. 1988) ........................... 36

*United States v. Rosa,* 507 F.3d 142 (2d Cir. 2007)................................ 55

*United States v. Russo,* 74 F.3d 1383 (2d Cir.1996).............................. 47

*United States v. Stokes*, 733 F.3d 438 (2d Cir. 2013)......................*passim*

*United States v. Vilar*, 530 F.Supp.2d 616 (S.D.N.Y. 2008)
    *aff'd United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013) .................. 42

*United States v. Wardrick*, 350 F.3d 446 (4th Cir. 2003)...................... 55

*United States v. Whitehorn*, 829 F.2d 1225 (2d Cir. 1987).................. 44

## Statutes and other authorities

U.S. Const. amend. IV.............................................................. 23, 41

18 U.S.C. § 921 ...................................................................... 46, 54

18 U.S.C. § 924 ................................................................*passim*

18 U.S.C. § 1951 ........................................................................ 1

18 U.S.C. § 2705 ...................................................................... 35

18 U.S.C. § 3103 ...................................................................... 34

28 U.S.C. § 1291 ........................................................................ 2

U.S.S.G. § 1B1.1 ...................................................................... 55

Fed. R. Evid. 404(b) ................................................................... 7

Alice Good, *Broken Phone Stats: Heartbreaking? Or
    Hilarious?*
    https://www.attsavings.com/resources/wireless/broken-
    phone-stats-heartbreaking-or-hilarious/ ............................................. 36

https://www.youtube.com/watch?v=Rfm8rEE-QXo ................................ 53

https://www.youtube.com/watch?v=YmaAq3qwiw8 .............................. 53

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Anthony Molina appeals from a judgment of conviction and sentence, entered October 12, 2021, pursuant to his conviction after trial in the Southern District of New York (before the Hon. Nelson Stephen Róman and a jury) of conspiracy to commit Hobbs Act robbery (Counts One and Four, charging violations of 18 U.S.C. § 1951), Hobbs Act Robbery (Counts Two and Five, charging violations of 18 U.S.C. §§ 1951 and 2) and Possession of a Firearm during the aforementioned Hobbs Act Robberies (Counts Three and Six, charging violations of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2). Mr. Molina was sentenced, principally, to concurrent 24-month terms of imprisonment upon Counts One, Two, Four, and Five, and consecutive 84-month terms of imprisonment upon Counts Three and Six, for a total sentence of 192 months. The court also imposed a three-year term of supervised release, $600 special assessment, $103,425.91 in restitution, and $103,425.91 forfeiture. (Doc. 183, Judgment and Commitment, at 7-9).

A Notice of Appeal was timely filed on October 14, 2021. (A.68).[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Mr. Molina is presently incarcerated.

## STATEMENT OF ISSUES, ARGUMENT SUMMARY, AND STANDARD OF REVIEW

Mr. Molina stands convicted of crimes related to his participation in the robbery of two Verizon stores. Two issues are presented. First, the district court concluded that the affidavits in support of two warrants issued in this case contained materially false information, but adopted the Government's argument that suppression was not required because the evidence obtained as the fruit of these warrants inevitably would have been discovered. As we discuss in Point One, the district court's inevitable discovery finding was erroneous, both because it did not engage in the searching analysis required by this Court's precedents, and also because, in any event, the Government failed to meet its burden to demonstrate that discovery of this evidence was "inevitable." When analyzing a suppression ruling, this Court reviews a district court's factual findings for clear error and its legal conclusions

---

[1] Numbers preceded by "A." refer to the Appendix. Numbers without a prefix refer to the trial transcript unless otherwise noted.

*de novo. See In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 98 (2d Cir. 2016), citing *United States v. Getto*, 729 F.3d 221, 227 (2d Cir. 2013).

Second, we discuss two prejudicial errors relating to the district court's jury instructions regarding the two firearm counts alleging violations of 18 U.S.C. § 924(c). The trial evidence called into question whether the weapon Molina allegedly possessed during each of the two robberies met the statutory definition of "firearm," defined as "a weapon, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive", or whether the object was not a "firearm," but rather was, for example, a pellet or BB gun. The defense therefore asked the district court to instruct the jury on its theory of defense that the jury should not convict Molina of these counts if it found that the weapon was, e.g., "a pellet gun, imitation, facsimile or toy gun." The district court denied the request. It then compounded this error by instructing the jury, over defense counsel's objection, that "a gun is a firearm," when, in fact, this Court and others have held that such an instruction is error, since not all "guns" are "firearms." These errors were not harmless and the sentences upon these counts account

for fourteen years of Molina's sixteen-year sentence. "Where a defendant has preserved his claim of error by a timely objection calling the district court's attention to the problem when the court would have the opportunity to fix the error, [this Court] review[s] a district court's jury charge *de novo,* and will vacate a conviction for an erroneous charge unless the error was harmless." *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013) (citations omitted).

## PRELIMINARY STATEMENT

The six-count superseding indictment upon which Mr. Molina was tried was filed December 8, 2020,[2] and charged the previously mentioned six counts, relating to robberies of two Verizon stores in New Milford, CT and Mahopac, NY, respectively. (Doc. 102). Mr. Molina's co-defendant, Brian Rodriguez, pleaded guilty and was sentenced to a total of 132 months' imprisonment. Mr. Molina's trial ended in his conviction, on June 23, 2021, and he was sentenced on September 24, 2021. The third Defendant, Anthony Lauria, is awaiting trial.

---

[2] The initial complaint was filed April 29, 2019, (Doc. 2), and the initial indictment was filed June 17, 2019. (Doc. 20).

## STATEMENT OF FACTS

Because Mr. Molina does not raise sufficiency-of-the-evidence arguments, we relate, in this section, the underlying facts in summary form, with a more thorough discussion of the facts relevant to each argument on appeal provided in the corresponding Points below.

**Government Case**. Mr. Molina and his two co-defendants, Anthony Lauria and Brian Rodriguez, were charged with crimes relating to the robberies of two Verizon stores, one in New Milford, CT, on or about August 10, 2017, and the other in Mahopac, NY, on or about February 15, 2019. The relevant facts were the subject of testimony by employees of the two stores, two of whom narrated surveillance videos made at each location. As developed by the testimony and videos, as well as other evidence, the robberies had similar modus operandi: Two masked persons – said by the Government to be Messrs. Molina and Rodriguez – entered each store,[3] and one or more employees were restrained and taken to the storage area of each location, where Apple cell phones and other electronic equipment were removed from safes.

---

[3]     Mr. Lauria apparently entered the New Milford store, portraying himself as a customer, and left prior to Molina and Rodriguez's entry therein. (204).

(New Milford robbery: Testimony of Verizon employee Marcelino Wright: 205-10; Mahopac robbery: Testimony of Verizon employee Christopher Sielawa: 36-46). The robbers then fled in a black Honda the Government maintained was driven by Mr. Lauria. (76). During each robbery, one of the participants – said by the Government to be Mr. Molina – possessed what appeared to be a firearm, but which may or may not have been. (New Milford robbery: 210-12, 389-90; Mahopac robbery: 53, 76-78). *See also* Point Two, *post.*

With respect to each robbery, the Government introduced additional evidence suggesting the three defendants' involvement, including phone records showing many calls and texts between certain of the defendants prior to and after (but not during) the robberies, (276-77, 279, 280, 288-90, 285, 298-304), and geo-location/cell site information tracing each defendants' travel on the day of each robbery. (346, 349-50, 353, 358, 361-63). Much of this information was obtained pursuant to several warrants, the lawfulness of which is addressed in Point One *post.* Additionally, Mr. Lauria's thumbprint was lifted from the door of the New Milford store (241-43) and Mr. Molina's DNA was found on a zip tie used to bind Mahopac Verizon employee Christopher

Sielawa. (122-28). As to the DNA evidence, forensic analyst Lisa Sheridan acknowledged the phenomenon of DNA transfer, whereby DNA located on an object may originate with a person other than the one who transferred the DNA to the object in question, and also that it was not possible to know when the DNA had been left on the zip tie. (139-41). The Government also introduced evidence, under Fed. R. Evid. 404(b), that Mr. Molina possessed various firearms at times other than the times of the robberies, to show Mr. Molina's access to firearms. (Tr. 266, 268, 269, 270-271, 273).

**Defense Case**. Troy Consalvo, who was working at the New Milford Verizon store on the day of the robbery testified "someone came into the store," "pulled guns," and "directed [him] to get down on the ground." (Tr. 389). The man "cocked the gun"; however, Consalvo was "unsure at the time" but thought the gun "sounded plastic." (Tr. 390).

Mr. Molina testified on his own behalf, denying involvement in the robberies, and asserting that various evidence introduced at trial in fact related to his involvement in other criminal activity, specifically, identity theft. And he maintained that he possessed firearms for self-protection after he had been the victim of a kidnapping. (429-41).

Because Mr. Molina was not the subject of eyewitness identification with respect to either robbery, the evidence obtained from warrants executed for phone records, cell site records, and other evidence was central to the Government's case and instrumental to his conviction.[4] The lawfulness of these warrants and the admissibility of their fruits is addressed in Point One.

With respect to both robberies, the parties contested, *inter alia*, whether the gun-wielding robber possessed an actual firearm (defined as "a weapon, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive"), or whether the object was not a "firearm," such as a pellet or BB gun. The evidence in this regard, as it relates to the district court's jury instructions is addressed in Point Two, *post*.

---

[4] The warrants included the March 29, 2019, Cell Site Warrant (Doc. 55-6); the April 23 GPS Warrant (Doc. 55-7); the April 29 Molina Triggerfish Warrant (Doc. 55-8); the April 29 Cell Site Warrant (Doc. 55-9); the April 30 iPhone Warrant (Doc. 55-10); the May 23 Cell Site Warrant (Doc. 55-11); the June 3 DNA Warrant (Doc. 55-12); and the August 29 iCloud Warrant (Doc. 55-13).

## ARGUMENT

### Point One

**GEO-LOCATION DATA PLACING MOLINA IN NEW MILFORD AND MAHOPAC WHEN THE TWO CHARGED ROBBERIES OCCURRED SHOULD HAVE BEEN SUPPRESSED AS THE FRUIT OF WARRANTS THE DISTRICT COURT AGREED WERE OBTAINED USING MATERIALLY FALSE INFORMATION; THE DISTRICT COURT ERRED WHEN IT APPLIED THE INEVITABLE DISCOVERY EXCEPTION WITH NO ANALYIS WHATSOEVER, AND WHERE THE GOVERNMENT IN FACT FAILED TO PROVE DISCOVERY WAS INEVITABLE**

This Court should reverse the district court's Decision and Order (A.24) denying Molina's motion to suppress the fruits of the March 29, 2019, Cell Site Warrant and the April 23, 2019, GPS Warrant. These warrants, which included false statements, were key to the prosecution's case because they led to evidence placing Molina near or at the scene of the two charged robberies, in New Milford, CT, and Mahopac, NY. The district court correctly concluded that the false statements were "necessary to the issuing judge's probable cause finding," (A.43), but then wrongly accepted, with no analysis whatever, the Government's claim of inevitable discovery. For the reasons that follow, this Court should find the district court erred when it failed to

conduct the searching analysis of inevitable discovery required by the case law, and that the record in fact precludes a finding of inevitable discovery. The Court should therefore suppress the fruits of the unlawful searches and grant Molina a new trial. In the alternative the case should be remanded for further fact-finding regarding the application of the inevitable discovery doctrine.

## Facts.

In the aftermath of each of the two robberies charged in this case, the state and local police commenced investigations, later joined by the FBI. The following facts are keyed to the district court's Decision and Order. (A.24).

### A. Connecticut anonymous tip and warrants.

In January 2018, the Connecticut State Police ("CSP") informed the New Milford Police ("NMPD") that two anonymous persons came to the CSP barracks and said they watched an online video of the New Milford Robbery and identified the robbers as Lauria, Rodriguez, and Molina, and provided contact information for each (including that Molina used a cell phone ending in 9885). Warrants were then issued by the Connecticut Superior Court for historical cell site and toll records

for two phone numbers: (914) 562-3972 (believed to belong to Lauria); and (914) 649-1912 (believed to belong to Rodriguez). Phone records obtained by the warrants showed that, during August 2017, those two phones were used exclusively in New York, except for the date of the 2017 New Milford Robbery, August 10, 2017, when they were used in New Milford, CT. (A.26).

## B. Toll records and cell site/tower extraction warrants are issued.

Phone records subpoenaed by the NMPD in 2018 disclosed, *inter alia*, that on the date of the 2017 New Milford Robbery, between 3:06 p.m. and 11:47 p.m., Rodriguez's cell phone (ending in 1912) communicated at least six times with Lauria's cell phone (ending in 3972), and at least seven times with phone number (917) 789-4879. The Government would later learn, pursuant to an April 30, 2019, warrant to search Rodriguez's red iPhone (seized when Rodriguez was arrested that day), that the number ending in 4879 belonged to Molina.

The FBI entered the investigation after the February 15, 2019, Mahopac Robbery, and, on March 4, 2019, Magistrate Judge Lisa Margaret Smith issued a "tower extraction" warrant, directing a number of telephone service providers to provide the FBI with the

telephone numbers that accessed the cell tower nearest the Mahopac store around the time of the 2019 Mahopac Robbery, namely, 6:30 p.m. through 8:30 p.m., Eastern Standard Time. (Doc. 55-5, "March 4 Tower Extraction Warrant.") The records thereby obtained reflected Lauria's 3972 phone "pinging" off a nearby cell tower to communicate with both Rodriguez's 1912 phone as well as phone number (917) 254-2454, believed to belong to Molina, prior to the robbery. The records also showed Rodriguez's 1912 cell phone accessed a cell tower near the 2019 Mahopac Robbery when it communicated with Lauria's 3972 phone prior thereto. Molina's 2454 phone used the T-Mobile network – different from that used by Lauria and Rodriguez's phones. T-Mobile's tower log did not show what cell tower Molina's 2454 phone was using when it communicated with Lauria's 3972 phone prior to the 2019 Mahopac Robbery, and therefore did not confirm Molina's presence near the site of the robbery. (Doc. 55-14, "Returns from March 4 Tower Extraction"). Toll records for Lauria's phone showed that Lauria's 3972 phone communicated with Rodriguez's 1912 phone repeatedly on the day of the 2017 New Milford Robbery, as well as with Rodriguez's 1912 phone and Molina's 2454 phone repeatedly on the day of the 2019

Mahopac Robbery, including prior to the robbery but, again, did not confirm the precise location of Molina's 2454 phone.

On March 29, 2019, Magistrate Judge Smith issued a warrant for cell site and toll record information for Lauria's 3972 phone, Rodriguez's 1912 phone, and Molina's 2454 phone. The records obtained pursuant to these warrants reflected, *inter alia*, that all three phones were near the Mahopac store at the time of that robbery, but were not used in Mahopac at any other time in February 2019. As is discussed below, the application for Molina's warrant included factual averments the district court found to be materially false.

On April 23, 2019, Magistrate Judge Paul E. Davison issued a warrant for prospective and historical location information and toll record information for Rodriguez's 1912 phone, and Molina's 2454 phone. (Doc. 55-7, "April 23 GPS Warrant"). The application for this warrant repeated the false information contained in the application for the March 29, 2019, warrant. (Suppression Order, A.26-28).

C. Complaint filed; arrest warrants and warrant for cell site data issued.

On April 29, 2019, Magistrate Judge Judith C. McCarthy executed a Complaint charging Lauria, Rodriguez, and Molina with crimes

related to the New Milford and Mahopac robberies, and issued warrants permitting the use of cell site simulators, or "Triggerfish" for Rodriguez's 1912 phone and Molina's 2454 phone, to allow law enforcement agents better to locate and arrest them.[5] On the same day, Judge McCarthy issued a warrant for cell site and toll record information for phone number (718) 810-1273, believed to belong to Molina. (A.28).

### D. Defendants Rodriguez and Molina are arrested, cell phones are seized and additional warrants are issued.

The following day, April 30, 2019, Molina and Rodriguez were arrested, having been located with the assistance of a Triggerfish device.[6] Molina was arrested in his basement bedroom, where the agents seized a black iPhone. Rodriguez was arrested in his basement

---

[5] Although Lauria had previously been arrested, on March 26, 2019, by NMPD, (Doc. 2, Complaint, at 5), the Complaint, filed on April 29, requested a federal arrest warrant be issued for Lauria. *Id.* at 13.

[6] Lauria was also arrested on April 30, 2019. *See* DE April 30, 2019 ("Arrest of Anthony Lauria. (ap) [7:19-mj-04152-UA] (Entered: 05/02/2019)"); *see also* (Doc. 52-5, Search Warrant Affidavit for Rodriguez's red iPhone Seized During Arrest, at 2) ("On or about April 30, 2019, three defendants, Anthony Lauria, Brian Rodriguez, and Anthony Molina were arrested[.]"). It appears Lauria was re-arrested after having been granted bail following his March 26, 2019, state court arrest as the federal docket does not reflect the issuance of a writ of habeas corpus ad prosequendum.

apartment, where agents seized a red iPhone 8. Magistrate Judge Judith C. McCarthy issued a warrant authorizing the search of the two iPhones. Rodriguez's iPhone, which used his 1912 number, contained at least seven saved contacts for "Molina," including an entry for Molina's 4879 number — the number that was in contact with Rodriguez's 1912 number several times the day of the 2017 New Milford Robbery — labeled "Molina 4."

On May 23, 2019, Judge McCarthy issued two warrants. First, a warrant for cell site and toll records for Molina's 4879 number. (Doc. 55-11, "May 23 Cell Site Warrant"). Records obtained pursuant to that warrant showed that Molina's 4879 cell phone was in New Milford the day of the 2017 New Milford Robbery. Second, a warrant permitting a supplemental search of Rodriguez's red iPhone. (Doc. 52-5, "May 23 iPhone Search Warrant").

On June 3, 2019, Magistrate Judge Paul E. Davison issued a warrant authorizing law enforcement to obtain DNA samples from each of the defendants. (Doc. 55-12, "June 3 Molina DNA Warrant"). Forensic analysis revealed that Molina's DNA was a likely contributor to the

DNA on the zip tie used to secure a Verizon employee during the Mahopac robbery. ("DNA Report").) (A.28-29).

Two weeks later, on June 17, 2019, the grand jury returned its initial indictment in this case.

E. <u>Motion to suppress</u>.

Molina moved to suppress evidence seized pursuant to the March 29 Cell Site Warrant; the April 23 GPS Warrant; the April 29 Molina Triggerfish Warrant; the April 29 Cell Site Warrant; the April 30 iPhone Warrant; the May 23 Cell Site Warrant; the June 3 DNA Warrant; and the August 29 iCloud Warrant. (Suppression Order, A.38); *see also* (Doc. 55, Molina Suppression Memorandum of Law, at 2). As relevant here, he argued that SA Gray's March 29, 2019, Cell Site Warrant and April 23, 2019, GPS warrant[7] for information related to the 2454 number, which lead to the discovery of key evidence placing him in New Milford and Mahopac on the relevant dates, contained misrepresentations that entitled him to a hearing pursuant *Franks v.*

---

[7] Because the April 23, 2019, GPS warrant did not uncover any relevant evidence in addition to that uncovered by the March 29, 2019, Cell Site Warrant, for simplicity we will refer in this argument solely to the March 29 warrant.

*Delaware*, 438 U.S. 154 (1978), and suppression because the misrepresentations were material.

Specifically, with respect to the March 29, 2019, Cell Site Warrant, (1) SA Gray's allegation that Molina's 2454 number communicated with Lauria's 3972 number on the day of the New Milford robbery, August 10, 2017, was false because the 2454 number was not registered to Molina in 2017; and (2) SA Gray's claim that he reviewed tower extraction records and that those records reflected Molina's 2454 number as among those using the T-Mobile towers in Mahopac during the February 15 Mahopac Robbery was also false because SA Gray did not receive the tower extraction records until a day *after* he swore out the affidavit (and, in fact, those records, when received, did not reflect the stated fact). (Doc. 55 at 18-19).

In response, the Government conceded there were two misrepresentations in the March 29 Cell-Site Warrant, as was reflected in the following chart, which was included in the district court's opinion:[8]

---

[8]    Words crossed out in red reflect the admittedly false averments. Words in green reflect the Government's "corrected" averments.

| Erroneous statement | Statement as corrected by the Government |
|---|---|
| "Based on my review of cell tower log information from the closest cell tower to the Mahopac Store, I have learned that [Lauria's 3972 phone], [Molina's 2454 phone], and [Rodriguez's 1292 phone] were all in the vicinity of the Mahopac Store on February 19, 2019." (March 29 Cell Site Warrant Aff. ¶ 13). | Based on my review of cell tower log information from the closest cell tower~~s~~ to the Mahopac Store, I have learned that [Lauria's 3972 phone]~~, [Molina's 2454 phone],~~ and [Rodriguez's 1292 phone] were ~~all~~ in the vicinity of the Mahopac Store on February ~~19~~ 15, 2019, minutes before the robbery, and, while located by the Mahopac store, [Lauria's 3972 phone] called only two phones: [Molina's 2454 phone] and [Rodriguez's] 1912 phone.] I have not yet received cell tower information to show where [Molina's 2454 phone] was at that time.[2] |
| "Toll records for [Lauria's 3972 phone] reflect that on August 10, 2017, shortly before and after the New Milford Store robbery, [Lauria's 3972 phone] was in communication with [Molina's 2454 phone] and [Rodriguez's 1912 phone]." (March 29 Cell Site Warrant Aff. ¶ 8(i)) | Toll records for [Lauria's 3972 phone] reflect that, on August 10, 2017, shortly before and after the New Milford Store robbery, [Lauria's 3972 phone] was in communication with ~~[Molina's 2454 phone] and~~ [Rodriguez's1912 phone], and that, on February 15, 2019, shortly before and after the Mahopac Store robbery, [Lauria's 3972 phone] was in communication with [Molina's 2454 phone] and [Rodriguez's 1912 phone].[3] |

(Suppression Order, A.39). The district court summarized the false statements the Government acknowledged:

> First, Molina emphasizes that the T-Mobile cell tower log information does not identify Molina's 2454 phone number as one of the numbers using the T-Mobile towers in February 2019 during the Mahopac Robbery. This statement should not have been included in paragraph 13 of the March 29 Cell Site Warrant Affidavit; the Government explains that all three co-defendants' phone numbers appeared on the logs, but that only Lauria's 3972 number was recorded actually using the cell tower near the Mahopac store. (Id. at 42.) Second, Molina highlights that Lauria's toll records do not show that Molina's 2454 phone communicated with Lauria's number in August 2017 at all. This statement should not have been included in paragraph 8 of the March

29 Cell Site Warrant Affidavit; the Government attributes this error to a "misreading of records," which conflated the February 2019 records with the August 2017 records. (Id. at 41–42.) Both errors were repeated verbatim in the April 23 GPS Warrant Affidavit. (April 23 GPS Warrant Aff. ¶¶ 9(i), 15.)

(A.40).

The Government's "corrections" (in green) themselves included two additional inaccuracies. In the first statement, the Government represented that Lauria called Molina on the day of the Mahopac robbery, when in fact it was the other way around. In the second statement, the Government represented that Molina was in contact with Lauria both before and after the Mahopac robbery; in fact Molina was in contact with Lauria only *before* the robbery, not *after*. (Suppression Order, A.39, fns 2-3). The misrepresentations by the agent and Government notwithstanding, the Government argued probable cause for the March 29, 2019, warrant existed even when the false statements were excised because Molina was Facebook friends with Lauria and Rodriguez and toll records showed Molina communicated with Lauria and Rodriguez on the days of the robberies. (Doc. 72, Gov't Opp., at 53).

The district court disagreed, finding:

As corrected, the evidence in the affidavit linking Molina to either robbery is meager. The only statements involving Molina are: (1) that Lauria's 3972 phone was in communication with Molina's 2454 phone twice in the hour or so before the 2019 Mahopac Robbery; and (2) the tenuous observation that Molina was Facebook friends with both Lauria and Rodriguez. Whereas other statements place Lauria and Rodriguez at the scene, there is nothing placing Molina in the vicinity of either store. Moreover, nothing links Molina to the Honda.

(A.42). Observing, "Though probable cause is not a high bar to clear … one social media connection and two calls—with nothing more to suggest Molina's participation in either robbery—is simply not enough to demonstrate the probability . . . of criminal activity," the district court "readily conclude[d] that the false statements were necessary to the [issuing] judge's probable cause finding." (A.43) (internal quotes and citations omitted).

The Government nonetheless argued that inevitable discovery precluded application of the exclusionary rule because, independently of the March 29, 2019, Cell Site Warrant (and its fruits), it had – or imminently would obtain – information showing that one or another of Molina's several phones was present in New Milford and Mahopac, respectively, during each of the two robberies:

- According to the Rodriguez Toll Records 2018—which

law enforcement obtained in 2018—on the date of the 2017 New Milford Robbery, between 3:06 p.m. and 11:47 p.m., Rodriguez's 1912 phone communicated at least six times with Lauria's 3972 phone, and at least seven times with phone number (917) 789-4879. *A search of Rodriguez's phone—to which search Molina has no standing to object—revealed that phone number (917) 789-4879 was stored as "Molina 4."*[9]

- The Government has asked T-Mobile to respond to the March 4 Tower Extraction Warrant by providing the tower logs for the cell towers near the 2019 Mahopac Robbery for the time period set forth in the order; that is, the two hours around the time of the robbery. *That response will confirm that Molina's 2454 phone was, in fact, near the location of the 2019 Mahopac Robbery minutes before that robbery, while Molina was talking with Lauria.*[10]

(Doc. 72, Gov't Opp., at 57-58) (emphasis added).

---

[9]    To clarify: Here, the Government argued that, although it falsely stated, in its March 29, 2019, Cell Site Warrant application, that it had tied Molina to the New Milford Robbery via Molina's 2454 number, it had lawfully obtained evidence linking Molina to that robbery via his 4879 number, which the Government extracted from Rodriguez's red iPhone seized when Rodriguez was arrested.

[10]    To clarify: Here, the Government argued that, although it falsely stated, in its March 29, 2019, Cell Site Warrant application, that it had reviewed records establishing that Molina's 2454 phone was in the vicinity of the Mahopac robbery when in fact the Government had so stated before even receiving the records, it now anticipated receiving those records in short order. In fact, the records the Government initially received – shortly after making the false statement – *did not* confirm the Government's suspicions because the wrong time frame was used when the agent completed the cell provider's form. Molina's motion to suppress apparently woke the Government to its error – some 16 months later – and it therefore requested the records anew.

The Government continued that the only exception to the district court's ability to find with a "high level of confidence" that the previously misrepresented information would have been inevitably discovered pertained to the information gleaned from Molina's phone at the time of his arrest, "as there is no way to know whether Molina would have had his phone on him had he been arrested at another time or another place." (Doc. 72, Gov't Opp., at 58-59) (citations omitted).

Accepting at face value the Government's arguments, the district court declined to conduct a *Franks* hearing, finding, "even if the Court were to find that Molina had made a substantial preliminary showing that the challenged statements were the result of SA Gray's deliberate falsehood or reckless disregard for the truth, a *Franks* hearing is not warranted due to the inevitable discovery doctrine." (A.45-46). Instead of engaging in its own inevitable discovery analysis, the district court merely adopted the Government's arguments, as summarized above, concluding:

> The Government presents avenues by which each error has been remedied independently of any warrants challenged by Molina. (Gov. Opp. at 49-50.) Given these independent means of obtaining the challenged information, the Court has a high level of confidence that such evidence would have inevitably been obtained. The Court therefore

finds that the Government has met its burden, by a preponderance of the evidence, that the discovery of the disputed evidence would in fact have occurred.

(A.22).

## Discussion.

"[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct [violating the Fourth Amendment], or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). Accordingly, the exclusionary rule is not a "necessary consequence of a Fourth Amendment violation," *id.* at 141; instead, courts deciding whether to impose that remedy must "focus[ ] on the efficacy of the rule in deterring Fourth Amendment violations in the future," and ensure that the "the benefits of deterrence ... outweigh the costs" of its application. *Id.* For these reasons, exceptions exist to the exclusionary rule. One such exception is the inevitable discovery doctrine.

"Under the 'inevitable discovery' doctrine, evidence obtained during the course of an unreasonable search and seizure should not be excluded 'if the government can prove that the evidence would have been obtained inevitably' without the constitutional violation." *United*

*States v. Heath*, 455 F.3d 52, 55 (2d Cir. 2006) (quoting *Nix v. Williams*, 467 U.S. 431, 447 (1984)). "[I]llegally-obtained evidence will be admissible under the inevitable discovery exception to the exclusionary rule only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the Government's favor." *Id.* at 60. The Government has the burden to establish inevitability by a preponderance of the evidence. *Id.* at 58, n.6 (quoting *Nix*, 467 U.S. at 444).

District courts applying the exception must "determine, viewing affairs as they existed at the instant before the unlawful search, what *would have happened* had the unlawful search never occurred." *In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 164 (2d Cir. 2019) (citations omitted, emphasis in original). This finding, therefore, "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Id.*; *see also United States v. Eng*, 971 F.3d 854, 861 (2d Cir. 1992) ("This point of departure is fixed by the requirement that an inevitable discovery inquiry focus on 'demonstrated historical facts' so as to keep speculation

to an absolute minimum[.]") Put differently, "unlawfully seized evidence is admissible if there is *no doubt* that the police would have lawfully discovered the evidence later." *United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013) (citations omitted, emphasis in original). A district court commits reversible error when it fails "adequately to consider other plausible contingencies that might not have resulted" in the discovery of the unlawfully seized evidence. *Id.* at 446. For that reason, "proof of inevitability is made more convincing when the areas of the search or investigation are well-defined, the government effort is planned and methodical, and a direct causal relationship and reasonably close temporal relationship exist between what was known and what had occurred prior to the government misconduct and the allegedly inevitable discovery of the evidence." *Eng*, 971 F.2d at 859 (2d Cir. 1992).

To ensure district courts do not eschew the Fourth Amendment's exclusionary rule by erroneously admitting unlawfully seized evidence, this Court has prescribed a rigid two-step process:

> First, the court must evaluate the progress of the investigation at the time of the government misconduct to determine whether an active and ongoing investigation was in progress at [that time]. At this step, the government

must establish that the investigation was not triggered or catalyzed by the information unlawfully gained by the illegal search but, rather, that the alternate means of obtaining the challenged evidence was, at least to some degree, imminent, if yet unrealized at the time of the unlawful search.

Second, the court must, *for each particular piece of evidence*, specifically analyze and explain how, if at all, discovery of that piece of evidence would have been more likely than not inevitable absent the unlawful search.

*In re 650 Fifth Ave. & Related Properties*, 934 F.3d at 165 (emphasis in original). The district court cannot short circuit this process by merely citing testimony or the Government's brief and concluding the exception applies. *Id.* at 166. Where the district court fails to engage in this process, vacatur and remand for further fact-finding is one appropriate remedy. *Id.*; *see also Eng*, 971 F.2d at 856 ("Our consideration of the issues presented by this case is hindered by the lack of specific factual determinations by the district court. Accordingly, we vacate the judgment of conviction and remand this case to the district court for particularized findings[.]"). Where there are too many contingencies to account for, vacatur without fact-finding can be ordered. *See Stokes*, 733 F.3d at 448 ("In short, on de novo review, we conclude that the sheer number of contingencies that may not have been resolved in the

government's favor undermines the conclusion that discovery of the evidence pursuant to a lawful search was inevitable. … For the foregoing reasons, we VACATE appellant's conviction, REVERSE the denial of the suppression motion, and REMAND the case for further proceedings.") (internal ellipses and citations omitted).

Where the Government claims that evidence otherwise subject to suppression pursuant to an unlawful warrant would have been inevitably discovered, this Court has held the relevant question is whether a new warrant would inevitably have been issued and the evidence discovered thereunder. *See United States v. Cabassa*, 62 F.3d 470, 473-73 (2d Cir. 1995) ("In cases in which a claim of inevitable discovery is based on expected issuance of a warrant, the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search is of great importance."). Before this requirement may be deemed satisfied, however, the Government must show the new warrant was not tainted by the unlawful warrant. *Id.* But even if a subsequent warrant is not tainted, "proving that a judge *could* validly have issued a warrant supported by probable cause [is] not necessarily enough to establish that a judge *would* have issued

the warrant in question." *Heath*, 455 F.3d at 59 (2d Cir. 2006) (emphasis in original), citing *Cabassa*, 62 F.3d at 472.

**\*\*\***

The district court found the misstatements in the March 29, 2019, Cell Site/toll record Warrant (repeated in the April 23 GPS warrant) to be material under *Franks* because they placed Molina in New Milford and Mahopac at the time of the respective robberies; without them, probable cause to believe Molina was involved in either robbery lacked at the time the warrants issued. (A.42-43). The fruits of these warrants were then cited to establish probable cause, among other things, for (1) Molina's April 29 arrest warrant, (2) the June 3, 2019, warrant for Molina's DNA, and (3) the August 29 warrant to search Molina's iCloud account. (Doc. 55, Molina's Motion to Suppress, at 2). Additionally, as we discuss below, the Government timed Molina's arrest with Rodriguez's arrest; fortuitously, when Rodriguez was arrested, his red iPhone was in the vicinity and seized, and a subsequent search of that phone revealed a listing for "Molina 4" attached to the 4879 number which had communicated with Rodriguez several times on the day of the New Milford robbery. Thus, the tainted March 29, 2019, warrant led

to evidence that, *inter alia*, showed that Molina was in New Milford and Mahopac the days of those robberies, as well as to the DNA evidence on the zip tie used to tie up Verizon employee Sielawa during the Mahopac Robbery.

The Government argued that all this tainted evidence would have – and in fact was – inevitably discovered. *See ante* at 21 (quoting the Government's arguments in this regard). While it is true the key evidence discovered through executing the tainted warrants was eventually obtained elsewhere, through additional searches, the inevitability of the discovery of this same evidence *but for* the tainted warrants is not at all clear; certainly that inevitability was not found by the district court, with respect to each tainted piece of evidence, through any analysis that remotely complied with this Court's precedents. Rather, the district court merely adopted the Government's arguments with no independent analysis whatsoever, saying: "The Government presents avenues by which each error has been remedied independently of any warrants challenged by Molina. (Gov. Opp. at 49–50.) Given these independent means of obtaining the challenged information, the

Court has a high level of confidence that such evidence would have inevitably been obtained." (A.45).

The district court's mere reference the Government's memorandum fails to provide any framework for appellate review and is plainly insufficient under this Court's precedent. *Cf. In re 650 Fifth Ave. & Related Properties*, 934 F.3d at 167 (2d Cir. 2019) ("Our well-established principle that courts must make findings 'for each particular piece of evidence,' *Eng*, 971 F.2d at 862, ensures that the inevitable-discovery exception does not swallow the exclusionary rule.")

The district court's failure to independently consider the facts aside, the Government's argument did not sufficiently explain *why* the tainted evidence would have been inevitably discovered; likewise, it failed to follow this Court's mandate to explore alternative scenarios that militated against a finding of inevitability. The district court's failure to consider the myriad possible contingencies would, under any circumstances, suffice for this Court to reverse the denial of suppression and remand for fact-finding. For the reasons provided directly below, however, remand is not necessary because compelling reasons exist for this Court to hold that the record cannot support a finding of inevitable

discovery and to therefore grant the motion to suppress, vacate Mr. Molina's conviction, and remand to the district court for a new trial.

## A. New Milford: the 4879 number.

At trial the Government placed Molina in New Milford on the day of the robbery via the cell site records for the Molina 4879 number, obtained pursuant to the May 23, 2019, Cell Site Warrant. (479-81 [summarizing significance of phone records for the 4879 number]). This warrant had been obtained after Rodriguez was arrested and his red iPhone was seized and searched, whereupon the agents saw a reference in the phone's directory to the 4879 number with the attribution "Molina 4." Molina argued in his motion to suppress that the May 23, 2019, warrant was the fruit of the tainted March 29, 2019, Cell Site Warrant. The Government countered that discovery of the 4879 number's connection to Molina was inevitable because the connection was learned one month after the unlawful search, pursuant to the April 30, 2019, search of Rodriguez's red iPhone, which had been seized upon Rodriguez's arrest on the same date, and which included in its directory the 4879 number saved as "Molina 4." Yet the Government at no point claimed, let alone proved, that the execution of the Rodriguez arrest

warrant was preordained to occur on April 30, while Rodriguez was in possession of the red iPhone, much less that the phone would still contain the reference to the 4879 number and "Molina 4". Instead, it merely claimed that Rodriguez's arrest was inevitable and that it occurred. *See Stokes*, 733 F.3d at 446 (courts must "adequately [] consider other plausible contingencies that might not have resulted" in the discovery of the unlawfully seized evidence).

If the district court adhered to this Court's prescribed analysis, the threshold question would have been whether the unlawful searches pursuant to the March 29, 2019, Cell Site Warrant and/or April 23, 2019, GPS Warrant catalyzed the discovery of the 4879 number on Rodriguez's red iPhone. And the answer to this question would have been – and is – they likely did.

Molina's arrest, on April 30, 2019, was unquestionably tainted by execution of the unlawful March 29 and April 23, 2019, warrants, as the probable cause section of the affidavit for the April 29, 2019, arrest warrant relied on information obtained therefrom. (Doc. 55-8 at 7, 19-20) (citing "records provided by T-Mobile" as reason to believe Molina travelled to Mahopac on day of robbery). And equally clear is that the

Government consciously decided to delay Rodriguez's arrest until Molina's arrest; although it had probable cause to arrest Rodriguez for the New Milford robbery as early as March 26, 2019 (and earlier), the day NMPD and SA Gray arrested Anthony Lauria,[11] the Government nonetheless waited until April 30 – more than a month later, to arrest him. The simultaneous arrest of Molina and Rodriguez was no coincidence, but rather was consistent with the Government's common practice to delay execution of arrest warrants when there are multiple co-defendants to, *inter alia*, prevent spoliation of evidence. *See e.g. United States v. Christian*, 2017 WL 2274328, at *13 (E.D. Va. May 24, 2017), *aff'd*, 737 F. App'x 165 (4th Cir. 2018) ("On October 15, 2003, one week after the Ping Warrant was authorized, the government charged

---

[11]    It is unclear why NMPD did not arrest Rodriguez with Lauria on March 26, 2019, considering they had probable cause to do so as early as June 2018 when it obtained cell site records confirming they were both in New Milford on the day of the robbery. (Doc. 72, Gov't Opp. at 12) ("Phone records showed that, during August 2017, [Lauria and Rodriguez's] phones were used exclusively in New York, except for the date of the 2017 New Milford Robbery, when they were used in New Milford"). Likewise, by March 29, 2019, the Government could have arrested Rodriguez as they knew he was in Mahopac at the time of that robbery, as there was no challenge to SA Gray's statement in the March 29 warrant for Rodriguez's cell site information that "cell tower log information" confirmed Rodriguez's phone pinged a Mahopac tower. (Doc. 52-3 at 9).

22 defendants by criminal complaints, including Christian and Reza, and obtained arrest warrants for them. Gov. Opp. at 20. As the government explains, '[i]n an effort to arrest as many defendants as possible and prevent the destruction of evidence, the agents planned to effect arrests and search various residences in a coordinated and simultaneous manner.' *Id.*"); *Higgs v. District Court*, 713 P.2d 840, 858 (Colo. 1985) ("Officer Rossmeisl, however, testified that it was normal procedure to simultaneously execute arrest and search warrants so as to prevent destruction of evidence.")

In fact, the application for the April 29, 2019, Triggerfish warrant, obtained to track Molina's 2454 phone to facilitate his arrest, reflected this concern. (Doc. 55-8 at 22) ("Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and [continue to] flee from prosecution. See 18 U.S.C. § 3103a(b)(1).") The warrant issued for Rodriguez's arrest also included this language. (Doc. 52-4 at 13) (same). The Government must have harbored these concerns when they sought the arrest

warrants, for, otherwise, a request for delayed notice would be improper. *Cf. Matter of Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020) ("§ 2705(b) sets out for us the governmental interests that **must exist before** a court issues" a warrant) (emphasis added).[12] And the issuing magistrates must have agreed with the Government's concerns, as they granted the delayed notice request. (Doc. 55-8 at 2) (granting request for delayed notice for reasons set forth in Government affidavit).

Further, it was not at all inevitable that Rodriguez's arrest would have led to the discovery of the 4879 number. If Molina's unlawful search never occurred, there is no way to know (1) whether Rodriguez would have been arrested on April 30; (2) whether Rodriguez, whether arrested April 30 or on some other day, would have had the red iPhone with him, permitting its seizure and search; and (3) whether the phone, whenever searched, inevitably would have contained the reference to

---

[12]    The USAO manual confirms these concerns must be held antecedent to the request for delayed notice. *See* 9-13.700 - Applications For Protective Orders Pursuant To 18 U.S.C § 2705(b), 2017 WL 6519235, at *1 ("In applying for a § 2705(b) order, prosecutors should tailor the application to include the available facts of the specific case and/or concerns attendant to the particular type of investigation.") 18 U.S.C. § 3103a(b)(1) directs courts considering requests for delay to review factors enumerated in 18 U.S.C. § 2705.

Molina and the 4879 number. The need to consider whether Rodriguez would have had his phone in proximity at the time of his arrest is a very real one and reflects the same uncertainty the Government itself acknowledged with respect to the discovery of the iPhone seized when Molina was arrested:

> The sole exception to this inevitable discovery analysis is that the Court would not be able to find, with a "high level of confidence," *Heath*, 455 F.3d at 60, that the Government would have seized Molina's physical phone or extracted data from it, as there is no way to know whether Molina would have had his phone on him had he been arrested at another time or another place.

(Doc. 72, Gov't Opp., at 58-59). Additionally, Rodriguez's phone could have been broken, or lost, or the contacts could have been erased.[13] *See United States v. Roberts*, 852 F.2d 671, 676 (2d Cir. 1988) ("Moreover, we can deplore but not ignore the possibility that the recipient of a subpoena … may even deliberately conceal or destroy them after service of the subpoena.")

---

[13]    Anyone with a cellphone is keenly aware that these devices are easily compromised. AT&T, for instance, conducted a survey of 400 phone owners and found that 72% of them have broken a phone at some point, and 57% of them have done so more than once. *See* Alice Good, *Broken Phone Stats: Heartbreaking? Or Hilarious?*, AT&T, published online Sept, 11, 2017, available at, https://www.attsavings.com/resources/wireless/broken-phone-stats-heartbreaking-or-hilarious/.

So, while it is true the 4879 number with its attribution to Molina was discovered during the search of Rodriguez's red iPhone, seized at the time of his arrest, it does not follow these discoveries were inevitable, *i.e.,* that "there is *no doubt* that the police would have lawfully discovered the evidence later." *Stokes*, 733 F.3d at 444 (2d Cir. 2013) (emphasis in original, citations omitted); *see also Eng*, 971 F.2d at 859 (2d Cir. 1992) ("it is essential that there be a substantial degree of directness in the government's chain of discovery argument, rather than a hypothesized 'leapfrogging' from one subpoena recipient to the next until the piece of evidence is reached.")

In *United States v. Cabassa*, this Court declined to apply the inevitable discovery doctrine to the fruits of an unlawful warrantless arrest, even though an arrest warrant was being prepared at the time of the unlawful search, explaining:

> At best, the government's showing in the instant matter would support separate findings that more probably than not a warrant would eventually have issued and that more probably than not the evidence would have been in the apartment when a lawful search occurred. Either of these findings is susceptible to factual error—the magistrate judge might not be satisfied as to the showing of probable cause or, more likely, the evidence might disappear before issuance or execution of a warrant, or both—and the combined chance of error undermines the conclusion that discovery of the

37

evidence pursuant to a lawful search was inevitable.

*United States v. Cabassa*, 62 F.3d 470, 474 (2d Cir. 1995); *see also Heath*, *supra*, at 61 ("With respect to such a decision by a police officer, we hold that relatively weak evidence of the right to arrest is not sufficient, without further findings, to establish that an officer would, in fact, have made an arrest."). This Court reached the same conclusion in a case where the district court applied inevitable discovery to a defective warrant. *See In re 650 Fifth Ave. & Related Properties*, 935 F.3d at 167 ("Moreover, without factoring in the possible contingencies, simply identifying the intersection between the protective order and the seized materials does not solve for inevitable discovery.") When the actions of a third party are a contingency, this Court has said the bar is even higher:

> [T]he district court's inevitability analysis in this case is predicated on an assessment of the actions that might have been taken by third parties—Stokes, Fulmes, or motel staff—not acting at the behest of the police. Such an analysis is inherently speculative[.]

*Stokes,* 733 F.3d at 447 (2d Cir. 2013). Because the district court failed to engage in the demanding analysis prescribed by this Court, it did not consider whether the unlawful searches resulted in the discovery of the

4879 number and its connection to Molina or whether *something* otherwise might have prevented the discovery of the 4879 number on Rodriguez's red iPhone. A proper evaluation would have answered both questions in the affirmative. Therefore, this Court should suppress the discovery of the 4879 number and vacate Molina's convictions related to the New Milford Robbery. In the alternative it should remand for further fact-finding.

## B. Mahopac: the 2454 number.

On March 4, 2019, SA Gray obtained a "tower extraction" warrant, requiring the major service providers to return "tower dumps" for the location of the Mahopac Robbery on the date and time of the robbery, to determine what phones had pinged cell towers in Mahopac during the specified time. On March 29, SA Gray swore that he reviewed the "tower dumps" obtained from the March 4 "tower extraction" warrant and that Molina's 2454 number was listed thereon. This was false, as SA Gray didn't receive the tower dumps until a day after he claimed to have reviewed them, (Doc. 55-14 at 2) (noting the warrant was returned on "March 30, 2019"), and, in fact, Molina's 2454 number was not even listed on those dumps because (it was later determined) SA Gray had

39

incorrectly specified the time for which he sought the records. (Suppression Order, A.40).[14]

The sum of the Government's argument regarding the inevitable discovery of the phone records regarding the 2454 number placing Molina's phone in Mahopac at the time of the robbery is that it eventually realized its error in the March 4 warrant and made another request for the records. That realization, however, apparently came as the Government was preparing its opposition to Molina's motion to suppress, and the corrected warrant, which eventually yielded the evidence placing the phone with the 2454 number at the scene of the Mahopac Robbery was not issued until July 2020, **16 months** after the issuance of the March 4 warrant. Accordingly, the relevant question for this Court is, absent the unlawful search pursuant of the March 29, 2019, warrant, whether the Government would have inevitably discovered the T-Mobile cellular records placing Molina's 2454 cell phone in Mahopac at the time of the robbery.

---

[14]    Although the Government placed blame on T-Mobile for providing faulty records, (Doc. 72 at 1, 6, 42), SA Gray had not complied with the plain wording in the standard request form he used. (Doc. 79, Molina's Reply, at 15) (reproducing request form, with instruction to "Enter times in UTC.")

Absent the unlawful March 29, 2019, warrant, and the resulting motion to suppress, nothing in the record suggests the Government would have realized its error in the March 4 tower extraction warrant or otherwise sought the information anew. On the contrary, the Government seemingly remained oblivious to the mix-up until it focused on the fruits of the unlawful March 29 warrant and Molina's motion to suppress. The Government's explanation for SA Gray's misstatements bears this out.

The Government claimed that Agent Gray's errors were "unintentional" and simply "inaccuracies." (Doc. 72, Gov't Opp., at 9). Carried to its logical conclusion, such an argument necessarily means that the Government was not aware of Agent Gray's "unintentional" "inaccuracies." Accordingly, the Government would have been equally unaware that it needed to apply for a new search warrant to remedy any Fourth Amendment violation. It can hardly be disputed, then, that the Government's decision to renew its request to T-Mobile — some 16 months later — relied "upon *information* unlawfully gained' during the course of the initial, unlawful search. *Eng I,* 971 F.2d at 861 (emphasis

added)." *United States v. Vilar*, 530 F.Supp.2d 616, 627 (S.D.N.Y. 2008) *aff'd United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013).

In *Vilar*, then District Court Judge Sullivan considered whether information obtained via subpoena issued after an unlawful search would have been inevitably discovered. Because the issuance of the subpoena was sparked by a conversation between the AUSA and defense counsel during the execution of the unlawful search, and issued **5 hours** after the unlawful search began, *id.* at 620, Judge Sullivan concluded that "the record in this case offers absolutely no indication … that, at the time the Government decided to seek the Subpoena, drafted the document, and served it upon Defendants, the Government had reviewed even a *single piece of evidence* obtained pursuant to the invalid portions of Warrant." *Id.* at 627 (emphasis in original). Therefore, Judge Sullivan further concluded, "the Subpoena in this case was not 'trigger[ed] or catalyzed by information unlawfully gained' as a result of the invalid portions of the Warrant." *Id.* quoting *Eng I*, 971 F.2d at 861. This Court agreed. *See Vilar*, 729 F.3d at 84 (2d Cir. 2013).

Here, the opposite conclusion follows from the facts. In *Vilar* there was a scant 5-hour delay between the illegal search and the subsequent

subpoena, and the unlawful search fruits had yet to be reviewed when the subpoena issued. Here, by contrast, the delay was *16 months* and the fruits of the illegal search had long been subject to inspection and were the subject of a pending suppression motion: under these circumstances, how could the unlawful search *not* have informed the issuance of the July 2020 subpoena? Having established the July 2020 subpoena was triggered by the unlawful search, this Court need not further inquire whether "the discovery of each piece of challenged evidence would have been' more likely than not 'inevitable' absent the [unlawful] search." *Eng II*, 997 F.2d at 992 (2d Cir. 1993).

## C. Molina's Arrest Was Not Inevitable; therefore, nor was the collection of his DNA.

Molina's arrest gave the Government access to his DNA. However, the warrants for Molina's arrest and his DNA cited to, and thus were tainted by, the March 29, 2019, unlawful search. (Doc. 55-8, April 29 Arrest Warrant, at 7, 19-20) (citing "records provided by T-Mobile" as reason to believe Molina travelled to Mahopac on day of robbery); (Doc. 55-10, June 3 DNA Warrant, at 5-6) (same). The district court, of course, made no specific findings whether Molina's arrest, and discovery of DNA, was inevitable. But this Court's precedent all but forecloses a

finding that the arrest and seizure of DNA was inevitable, because there was nothing presented to suggest the FBI (or NMPD) was preparing an arrest warrant for Molina at the time of the unlawful March 29 search. *Cf. United States v. Whitehorn*, 829 F.2d 1225 (2d Cir. 1987) (affirming inevitable discovery finding where warrant process begun prior to unlawful search and warrant executed 6 hours after unlawful search). This Court's holding in *Heath* makes this clear:

> [I]n the circumstances of this case, it is possible that an arrest, even if potentially valid, would not have been made. And if no such arrest would have been made, then there would have been no inevitable discovery, and, hence, the currency at issue would be properly excluded. It is, of course, also possible that the arrest and discovery of the cash would have occurred. But, on the record before us and without further findings by the court below, we cannot say whether the likelihood of such an arrest was great enough to justify the application of the doctrine of inevitable discovery.

*United States v. Heath*, 455 F.3d 52, 62 (2d Cir. 2006). Because Molina's arrest was not inevitable, neither was collection of his DNA.

## D. The error in applying the inevitable discovery exception was not harmless.

The district court's erroneous finding of inevitable discovery was not harmless, for the fruits of the unlawful March 29, 2019, Cell Site Warrant went to the "heart of the Government's case," *see In re 650*

*Fifth Ave. & Related Properties*, 934 F.3d at 167 (2d Cir. 2019) ("Because the unlawfully obtained evidence goes to the heart of the Government's case … this error was not harmless."), leading to (1) the evidence seized from Rodriguez's red iPhone linking the 4879 phone to Molina and placing him in New Milford at the time of that robbery; (2) the evidence obtained from the March 29, 2019, Cell Site Warrant establishing that Molina's 2454 phone was in Mahopac at the time of that robbery; and (3) the DNA evidence linking Molina to the zip tie used to bind the Verizon employee during the Mahopac robbery. This evidence was pivotal as neither the surveillance videos nor any of the eyewitnesses established Molina as one of the New Milford or Mahopac robbers. Without this evidence, as the district court found, "one social media connection and two calls—with nothing more to suggest Molina's participation in either robbery—is simply not enough to demonstrate 'the probability . . . of criminal activity.'" (Suppression Order, A.43) (citations omitted). *Ipso facto* it does not establish guilt beyond a reasonable doubt.

Because the district court failed to engage in the searching analysis this Court requires when the Government alleges inevitable

discovery, and because such an analysis inevitably would have militated firmly against that doctrine's application, this Court should either reverse Mr. Molina's conviction or remand for additional fact-finding.

### Point Two

## THE TRIAL COURT WRONGLY DENIED DEFENDANT'S REQUEST FOR A "THEORY OF DEFENSE" INSTRUCTION REGARDING POSSESSION, ETC., OF A FIREARM, AND THE INSTRUCTION GIVEN TO THE JURY WAS OTHERWISE ERRONEOUS

Mr. Molina was sentenced to 192 months' imprisonment, 168 months of which were attributable to his convictions under Counts Three and Six, which charged Mr. Molina with violating 18 U.S.C. § 924(c) in that, during the Hobbs Act robberies charged in Counts Two and Four, he "knowingly did use and carry a firearm …."

At trial, the defense argued the evidence did not support a finding that the object appearing to be a gun at each robbery in fact was a "firearm," *i.e.*, "a weapon, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). Consistent with this position, defense counsel requested a "theory of defense" jury instruction, that the jury should not convict

Molina if it found that the gun was, *e.g.*, "a pellet gun, imitation, facsimile or toy gun." The instruction was accurate and had evidentiary support. The district court's refusal to give the instruction was error.

The district court additionally erred when, contrary to settled law and over defense counsel's objection, it instructed the jury that, "a gun is a firearm." This instruction was erroneous because, as several cases hold, not all guns are firearms. These errors, considered individually or collectively, were not harmless and require that Molina's convictions on Counts Three and Six be reversed.

A defendant's entitlement to a particular jury charge raises a question of law, reviewed on appeal *de novo. See United States v. Russo*, 74 F.3d 1383, 1392 (2d Cir.1996).

Facts.

At trial evidence was introduced both supporting and refuting the Government's position that the object brandished during each robbery met the definition of a firearm. With respect to the 2017 New Milford Robbery, employee Marcelino Wright testified that he had to "conclude it was a real gun" but also testified that when interviewed by the prosecutors and law enforcement he told them he thought the object

was "a plastic gun ... a pellet gun". (Tr. 211-12). Employee Troy Consalvo identified the object displayed by the robber as a gun but indicated "it sounded plastic." (Tr. 389-390). New Milford Detective Guilbeault testified that the surveillance video depicted the robber with the gun "kneel down in front of [employee Consalvo] and rack or cock the firearm," which is "taking a round or bullet from the magazine, putting into the chamber so the gun would be ready to fire." (230-31).

Regarding the 2019 Mahopac Robbery, employee Christopher Sielawa testified that the object looked like a handgun. However, there was no evidence that he had any familiarity or expertise in firearms. He also testified that he never felt the object, did not know whether it was heavy or light, and did not know the texture of the object's material. (35, 38, 52-53). Carmel Police Detective Michael Russo, who reviewed the surveillance video of the robbery and spoke with Mr. Sielawa at the scene, testified: "I can't tell from the surveillance video if it is a real gun or not." (78). However, he also said, while narrating a portion of surveillance video from inside the Mahopac Store that the video depicted one of the robbers holding what appeared to be a "black pistol" in his right hand, (76), and using his left hand to "push[] something into

the magazine well of the gun," a gesture Russo testified was "consistent with loading the firearm." (77).

Given this disparate evidence, and undoubtedly cognizant that conviction upon the two § 924(c) counts would require the imposition of substantial, mandatory consecutive sentences, defense counsel asked the district court to instruct the jury:

> A pellet gun, imitation, facsimile or toy gun does not constitute a firearm within the meaning of the statute.

(Tr. 513, A.58). The Government objected, arguing, "the purpose of the jury charge is to set forth the law for the jurors and not to advance defense theories." (514, A.59). The district court denied the request, saying that its intended jury instruction "pretty much reads that the definition of a firearm is," and "So I don't necessarily believe that I have to give an additional charge." *Id.* Defense counsel then asked the district court to "strike the last sentence in the charge, which says, 'I instruct you that a gun is a firearm' " because " 'Gun' is an ambiguous statement. The jury could believe that a pellet gun is a gun based upon that sentence[.]" (514-15, A.59-60). The Government again objected, asserting, "I don't think there is any ambiguity that when the charge says a gun is a firearm, it might potentially mean that a pellet gun is a

49

firearm." (515, A.60). The district court said, "All right. I do believe it's a standard charge, Mr. Vita, but your objection is duly noted." *Id.*

The district court thereafter instructed the jury:

> A firearm under the statute means any weapon, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. In considering this specific element of which the defendant used or carried or possessed a firearm, it does not matter whether the firearm was loaded or operable at the time of the crime. Operability is not relevant to your determination of whether a weapon qualifies as a firearm. I instruct you that a gun is a firearm.

(553-54, A.62-63).

<u>Discussion</u>.

**A. <u>The trial court wrongly refused to give the requested "theory of defense" instruction</u>.**

This Court has repeatedly admonished trial courts to instruct a jury regarding a requested theory of defense that is accurately stated and supported by at least some evidence:

> Nearly five decades ago, we made it clear that a "criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be." *United States v. O'Connor,* 237 F.2d 466, 474 n. 8 (2d Cir.1956). We have had occasion only recently to restate this basic principle. *See United States v. Bok,* 156 F.3d 157, 163 (2d Cir.1998) ("[A] criminal defendant is entitled to instructions relating to his theory of defense, for which there is some

> foundation in the proof, no matter how tenuous that defense may appear to the trial court.") (internal quotation marks omitted).

*United States v. Crowley*, 236 F.3d 104, 111 (2d Cir. 2000). In *Crowley*, the theory of defense that formed the basis for the requested charge was that defendants Crowley and Valjato were too intoxicated to form the specific intent required to commit the crimes of attempted sexual abuse and attempted aggravated sexual abuse. *Id.* at 107. The trial court refused to give the requested instruction and the defendants were convicted, but thereafter granted the defendants' motion for a new trial acknowledging it was error to not give the instruction. *Id.* at 107-08. This Court affirmed. Referencing the disparate evidence on the issue, this Court explained, "Whether to infer from this evidentiary foundation that Crowley and Valjato were too intoxicated specifically to intend to sexually abuse Vincent (and/or to do so in an aggravated manner) was a question for the jury. Accordingly, the requested charge should have been given, and, on this basis, the motion for a new trial was properly granted." *Crowley*, 236 F.3d at 111; *see also United States v. Dove*, 916 F.2d 41 (2d Cir. 1990) (failure to give jury instructions

relating to defense theory that police had arrested wrong person required new trial).

Here, as summarized above, evidence unquestionably was introduced that supported the posited defense with respect to both § 924(c) counts. Further, the requested instruction was accurate in all respects because, "A pellet gun, imitation, facsimile or toy gun [in fact] does not constitute a firearm within the meaning of the statute." (513, A.58).

Opposing the application, the Government argued "the purpose of the jury charge is to set forth the law for the jurors and not to advance defense theories." (514, A.59). The Government was half right. True, the purpose of the jury charge is to explain the law to the jury. But, as the cases also state without equivocation or exception, a "criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be." *United States v. Crowley, supra.*

The district court, for its part, denied the request believing that its intended jury instruction was adequate, because it "pretty much reads

that the definition of a firearm is," and "So I don't necessarily believe that I have to give an additional charge." But the district court's charge did not fully encapsulate the theory of defense. Nor, in context, was it a full and accurate substitute for the requested instruction. Critical to the defense was that the jury understand not only what a firearm *is* but also what it *is not.* Indeed, the instruction itself did not explain, unambiguously, that the term "firearm" would not include a "pellet gun," or a "facsimile" gun, or a BB gun, or even certain "toy guns". That the district court's definition included a requirement that the weapon be designed to "expel a projectile by the action of an explosive" did not clarify the matter, as jurors may not know – or intuit – *e.g.*, that a "pellet gun" or a "facsimile gun" or BB gun does not discharge a projectile by the action of an explosive.[15]

---

[15]     There was testimony that the gun-wielding robber appeared to "rack" or "cock" his gun, but this is an action common both to actual "firearms" as well as to certain BB and pellet pistols. *See, e.g.*, https://www.youtube.com/watch?v=YmaAq3qwiw8 (YouTube re Umarex Glock 17 Gen4 BB Pistol Review) (at first minute); https://www.youtube.com/watch?v=Rfm8rEE-QXo (YouTube of BB Beretta M92a1) (at 6:30).

## B. The trial court's instruction erroneously equated a "gun" with a "firearm."

Additionally, the district court's instruction, as given, further muddied the waters by telling the jury, over defense objection, that "a gun is a firearm," thereby undoing – or at least further confusing – the limiting language it had just used; if "a gun is a firearm" and a pellet gun is a gun, then a pellet gun is a firearm. The same would hold true for imitation, facsimile, BB, and toy "guns." *See United States v. Archer*, 671 F.3d 149, 158 (2d Cir. 2011) (error where "the jury could have convicted him under the instructions given by the court even if it believed his defense.")

This additional language, equating a firearm with a gun, finds no support in the statutory language, which in fact uses the term "gun" in the definition of firearm for only the limited purpose of including a *particular type of gun* – starter pistols – within its ambit. *See* 18 U.S.C. § 921(a)(3) ("(A) any weapon (*including a starter gun*) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive") (emphasis added). This equivalency in fact has been repeatedly rejected in the Second Circuit. For example, this Court

held, in *United States v. Cedeno*, 437 F. App'x 8, 12 (2d Cir. 2011), that

although the district judge

> provided the jury with a definition virtually identical to
> § 921(a)(3), her statement was inaccurate to the extent she
> was suggesting that all guns are firearms. We have
> previously observed that 'not all guns are firearms' because,
> for instance, a BB gun is not a 'firearm.' *United States v.*
> *Rosa,* 507 F.3d 142, 145 n. 1, 156 (2d Cir. 2007).

*Id.* at 12.

In *United States v. Rosa,* the case cited in *Cedeno*, this Court

observed, "It is important for purposes of addressing this appeal that

not all guns are firearms—BB guns and staple guns, for example, are

not." *Rosa,* 507 F.3d at 145 n.1; *see also United States v. Wardrick*, 350

F.3d 446, 453 (4th Cir. 2003) ("A weapon, commonly known as a 'BB' or

pellet gun, that uses air or carbon dioxide pressure to expel a projectile

is a dangerous weapon but not a firearm. ... [U.S.S.G. § 1B1.1

Application Note (H).]")

The Government opposed defense counsel's request that the "gun

is a firearm" language be deleted, arguing that equating a gun with a

firearm does not create "any ambiguity," a position contrary to this

Court's precedents. The district court, for its part, rejected the request,

saying, "I do believe it's a standard charge," when in fact it is not. *See*

Sand and Siffert Modern Jury Practice Instructions (Criminal) Instruction 35-4.

Thus, the district court's instructions were doubly erroneous: first because the instructions, as given, did not include the defense theory and second because they erroneously drew an equivalency between guns and firearms.

## C. The errors were not harmless.

Considered separately or in tandem, the trial court's erroneous refusal to give the requested jury instruction and its wrongful equating of guns and firearms were not harmless and require that Mr. Molina's convictions under Counts Three and Six be reversed. *See Medley v. Runnels*, 506 F.3d 857, 867 (9th Cir. 2007) (en banc) (instruction equating flare gun with firearm, contrary to controlling state statute, was not harmless error because "This instruction took a critical issue of fact away from the jury[.]") No weapons were recovered from the scene of the robberies and the jurors' determination whether Molina possessed a "firearm" at each of the two robberies required them to sort through substantial evidence that supported each of the parties' disparate arguments. And, while defense counsel argued, among other

things, "It has to be a real gun. It can't be a pellet gun, can't be a facsimile gun," (Tr. 497-500), the district court's instructions – the authoritative statement of the law – undermined, rather than reinforced, that argument by not including the requested language in the jury instructions and misstating the law by equating all guns with firearms.

It is no answer, with regard to the instruction equating guns with firearms, that elsewhere in the instruction the district court quoted the statutory language accurately, because this happenstance merely set up a tension between the accurate – if incomplete – language and the inaccurate language, and this Court can have no confidence that the jury followed the former and not the latter. A similar circumstance was recently presented *United States v. Cabrera*, 13 F.4th 140, 148 (2d Cir. 2021), where this Court concluded the jury instructions wrongly suggested the defendant had to satisfy a burden of proof to be entitled to an entrapment instruction, when in fact he "was obliged to produce no more than 'some credible' evidence of inducement." Rejecting the Government's argument that the error was harmless because the court,

elsewhere in the instructions, stated the rule properly, this Court found that the instruction set up a confusing dichotomy:

> However, the final two sentences left the jury with a dichotomy that reinforced the charge's basic error: the jury could *either* (1) reject the entrapment defense if "you find … no evidence" of inducement, *or* (2) move on to predisposition if, "on the other hand," "you find that the Government did initiate" the offense. That dichotomy has the natural tendency to confuse and skew the jury's decision-making.

*Id.* The district court's instructions here similarly set up a confusing dichotomy: To prove what Mr. Molina possessed was a "firearm" the jury had to find either that the object was "any weapon, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" *or* that it was as "gun" – a term which could include a BB gun, a pellet gun, a facsimile gun, etc.

## Conclusion

For all these reasons, Mr. Molina's conviction and sentence should be REVERSED, and a new trial granted upon all counts, or his convictions under Counts Three and Six should be reversed and a new trial granted upon those counts.

Dated: New York, New York
      January 6, 2022

Respectfully submitted,

_____
Richard Levitt
Zachary Segal
LEVITT & KAIZER
40 Fulton Street, 17th Floor
New York, N.Y. 10038
(212) 480-4000
*Attorneys for Anthony Molina*

## Certificate of Compliance

I certify pursuant to FRAP 32 and Local Rule 32.1 (a)(4)(A) that that the foregoing brief was prepared on a computer using Microsoft Word. The proportionally spaced typeface, font size and spacing used was the following:

    Name of Typeface: Century
    Point Size: 14
    Line Spacing: Double

The total number of words in the brief, based upon Microsoft word count, exclusive of the cover, table of contents, table of authorities, and signature is 12,265.

Dated: New York, New York
    January 6, 2022.

Zachary Segal

# APPENDIX

# Table of Contents

Docket Entries......................................................................A.1

Decision & Order denying motion to suppress................................A.24

Charge conference (excerpt) ............................................................A.57

Jury instruction (excerpt)................................................................A.61

Notice of Appeal dated October 7, 2021............................................A.68

# U.S. District Court
## Southern District of New York (White Plains)
## CRIMINAL DOCKET FOR CASE #: 7:19-cr-00449-NSR-3

Case title: USA v. Lauria et al

Date Filed: 06/17/2019

Magistrate judge case number: 7:19-mj-04152-UA

Date Terminated: 10/12/2021

Assigned to: Judge Nelson Stephen Roman

**Defendant (3)**

**Anthony Molina**
*TERMINATED: 10/12/2021*

represented by **Dawn M Florio**
Dawn M. Florio Law Firm PLLC
488 Madison Avenue
20th Floor
10022
New York, NY 10022
212-939-9539
Fax: 347-398-8062
Email: dawnmflorio@yahoo.com
*TERMINATED: 04/22/2021*
*LEAD ATTORNEY*
*Designation: Retained*

**Jason Immanuel Ser**
Federal Defenders of New York Inc. (NYC)
52 Duane Street
10th Floor
New York, NY 10007
417-8700
Fax: (212)-571-0392
Email: jason_ser@fd.org
*TERMINATED: 11/25/2020*
*LEAD ATTORNEY*
*Designation: Public Defender or
Community Defender Appointment*

**Joseph A. Vita**
Joseph A. Vita
52 Irenhyl Avenue
Port Chester, NY 10573
914-939-5401
Email: joev63542@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Samuel Michael Braverman**

Fasulo Braverman & Di Maggio, LLP
225 Broadway, Suite 715
New York, NY 10007
212-566-6213
Fax: 718-293-5395
Email: sbraverman@fbdmlaw.com

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1951.F INTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE (1s-2s) | Imprisonment: One hundred ninety-two (192) months; Supervised Release: Three (3) years. |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN (3s) | Imprisonment: One hundred ninety-two (192) months; Supervised Release: Three (3) years. |
| 18:1951.F INTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE (4s-5s) | Imprisonment: One hundred ninety-two (192) months; Supervised Release: Three (3) years. |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN (6s) | Imprisonment: One hundred ninety-two (192) months; Supervised Release: Three (3) years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1951.F INTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE (1-3) | Dismissed |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN (4) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:1951.F | |

---

**Plaintiff**

| **USA** | represented by | **Lindsey Keenan** |
|---|---|---|
| | | DOJ-USAO |
| | | 1 St. Andrew's Plaza |
| | | New York, NY 10007 |

212-637-2634
Email: lindsey.keenan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Hagan Cordell Scotten**
U.S Attorney's Office, SDNY
One St. Andew's Plaza
New York, NY 10007
(212)-637-2410
Email: hagan.scotten@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jason Michael Swergold**
DOJ-USAO
300 Quarropas Street
White Plains, NY 10601
914-993-1963
Email: jason.swergold@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Shiva H Logarajah**
DOJ-USAO
1 Saint Andrews Plaza
New York, NY 10001
212-637-2272
Email: shiva.logarajah@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2019 | 2 | SEALED COMPLAINT as to Sealed Defendant 1 (1), Sealed Defendant 2 (2), Sealed Defendant 3 (3). (Signed by Magistrate Judge Judith C. McCarthy) (Previously filed under seal on 4/29/2019) (ap) [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 04/30/2019 |  | Arrest of Anthony Molina. (ap) [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 04/30/2019 | 6 | Minute Entry for proceedings held before Magistrate Judge Judith C. McCarthy: Initial Appearance as to Anthony Molina held on 4/30/2019. Appearances entered by AUSA Lindsey Keenan for the Government, Attorney Jason Ser on behalf of the defendant. BAIL DISPOSITION: The defendant is advised of his rights and the charges against him. Public reading of the complaint is waived. Financial affidavit approved. Jason Ser is appointed to represent the defendant. The defendant is released on bail. See Appearance Bond and Order Setting Conditions of Release. Preliminary hearing 5/29/2019 on Defendant's consent. (Court Reporter Courtflow) (ap) [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 04/30/2019 | 9 | MEDICAL ORDER as to Anthony Molina. (Signed by Magistrate Judge Judith C. McCarthy on 4/30/2019) (See ORDER set forth) (ap) [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 04/30/2019 | 11 | CJA 23 Financial Affidavit by Anthony Molina. APPROVED. (Signed by Magistrate Judge Judith C. McCarthy) (ap) [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 05/01/2019 | 8 | Unsecured Bond Entered as to Anthony Molina in amount of $100,000.00, co-signed by 3 |

| | | |
|---|---|---|
| | | FRP, 2 of whom must also be for moral suasion purposes. See BOND set forth) (ap) Modified on 5/3/2019 (ap). [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 05/02/2019 | 3 | Order to Unseal Case as to Sealed Defendant 1, Sealed Defendant 2, Sealed Defendant 3. (Signed by Magistrate Judge Judith C. McCarthy on 5/1/2019) (ap) Modified on 5/2/2019 (ap). Modified on 5/3/2019 (ap). [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 05/02/2019 | | COMPLAINT UNSEALED as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (ap) Modified on 5/2/2019 (ap). Modified on 5/3/2019 (ap). [7:19-mj-04152-UA] (Entered: 05/02/2019) |
| 05/13/2019 | 13 | **FILING ERROR - ELECTRONIC FILING IN NON-ECF CASE -** FIRST LETTER MOTION addressed to Judge Kenneth M. Karas from Sam Braverman dated May 13, 2019 re: Bail Hearing . Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) Modified on 5/14/2019 (ka). [7:19-mj-04152-UA] (Entered: 05/13/2019) |
| 05/29/2019 | 19 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Anthony Molina. Time excluded from 5/29/2019 until 6/26/2019. (Signed by Magistrate Judge Lisa Margaret Smith on 5/29/2019) (lnl) [7:19-mj-04152-UA] (Entered: 05/30/2019) |
| 06/17/2019 | 20 | INDICTMENT FILED as to Anthony Lauria (1) count(s) 1-3, 4, Brian Rodriguez (2) count(s) 1-3, 4, Anthony Molina (3) count(s) 1-3, 4. (lnl) (Entered: 06/18/2019) |
| 06/17/2019 | | Case Designated ECF as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (lnl) (Entered: 06/18/2019) |
| 06/21/2019 | | Minute Entry for proceedings held before Magistrate Judge Lisa Margaret Smith: Arraignment as to Anthony Lauria (1) Count 1-3,4 and Brian Rodriguez (2) Count 1-3,4 and Anthony Molina (3) Count 1-3,4 held on 6/21/2019. AUSA Lindsey Keenan appearing for the Government. Defendant Anthony Lauria present with Samuel Braverman [CJA], Defendant Brian Rodriguez present with Howard Tanner [CJA], Defendant Anthony Molina present with Jason Ser [FD]. Court reporter: Courtflow. Defendants Anthony Lauria, Brian Rodriguez, and Anthony Molina waive a public reading of the indictment and enter a plea of not guilty to all counts. Judge Roman wheeled out and assigned. Defendant Lauria's detention is continued. Defendant Rodriguez's bail is continued. Defendant Molina's bail is continued. Time between today's date and the first appearance before Judge Roman, not to exceed July 8, 2019, is excluded from calculation under the Speedy Trial Act. Adjourned. (lnl) (Entered: 06/21/2019) |
| 06/21/2019 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman **Plea entered by Anthony Lauria (1) Count 1-3,4 and Brian Rodriguez (2) Count 1-3,4 and Anthony Molina (3) Count 1-3,4 Not Guilty.** (lnl) (Entered: 06/21/2019) |
| 06/21/2019 | | Case as to Anthony Lauria, Brian Rodriguez, Anthony Molina REASSIGNED to Judge Nelson Stephen Roman. Judge Unassigned no longer assigned to the case. (lnl) (Entered: 06/21/2019) |
| 06/21/2019 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Status Conference as to Anthony Lauria, Brian Rodriguez, Anthony Molina held on 6/21/2019. Initial Appearance held. Defendant Anthony Lauria (01) present with counsel Samuel Braverman, Esq. Defendant Brian Rodriguez (02) present with counsel Howard Tanner, Esq. Defendant Anthony Molina (03) present with counsel Jason Ser, Esq. AUSA Lindsey Keenan present. The Government has produced pre-Indictment discovery and will produce the remainder of discovery on a rolling basis. Defendants counsel need time to review it. Status conference scheduled for September 11, 2019 at 12:30 pm. Speedy trial time is excluded from today, June 21, 2019 until September 11, 2019 in the interests of justice. Defendant Anthony Lauria (01) remanded. Bail continued for Defendants |

A.4

| | | |
|---|---|---|
| | | Brian Rodriguez (02) and Anthony Molina (03). (Status Conference set for 9/11/2019 at 12:30 PM before Judge Nelson Stephen Roman) (Court Reporter Angeie Shaw-Crockett) (ap) (Entered: 06/24/2019) |
| 09/11/2019 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Status Conference as to Anthony Lauria, Brian Rodriguez, Anthony Molina held on 9/11/2019. Defendant Anthony Lauria (01) present with counsel Samuel Braverman, Esq. and Roberto Bettega, Esq. Defendant Brian Rodriguez (02) present with counsel Howard Tanner, Esq. Defendant Anthony Molina (03) present with counsel Jason Ser, Esq. AUSA Lindsey Keenan also present. Sabrina D'Emidio is court reporter. Discovery is substantially complete. Defendants' motions to suppress briefing schedule is as follows: moving papers to be filed January 10, 2020; Government's response papers to be filed February 10, 2020; and replies to be filed February 25, 2020. The parties are directed to provide 2 copies of all documents to chambers as the documents are filed. Two (2) week jury trial is scheduled to commence on October 5, 2020. Jury selection will be conducted on October 5, 2020 at 9:30 am with trial to commence immediately thereafter. Voir dire, request to charge, all proposed jury instructions, proposed verdict sheet, witness lists, exhibit lists and copies of premarked, tabbed exhibits (in binders) shall be submitted to chambers by September 21, 2020. 3500 materials are due September 28, 2020. Two sets of all the above documents are due the morning of the respective deadline date. Motions in limine/404(b) briefing schedule is as follows: moving papers to be filed August 28, 2020; response papers to be filed September 4, 2020; and replies to be filed September 11, 2020. The parties are directed to provide 2 copies of all documents to chambers as the documents are filed. No extensions will be entertained. Final pretrial conference scheduled for September 25, 2020 at 10:30 am. Speedy trial time is excluded from today, September 11, 2019 until September 25, 2020 in the interests of justice. Defendant Anthony Lauria (01) remanded. Bail continued for Defendants Brian Rodriguez (02) and Anthony Molina (03). (jbo) (Entered: 09/23/2019) |
| 10/31/2019 | 23 | PROTECTIVE ORDER as to Anthony Lauria, Brian Rodriguez, Anthony Molina...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Nelson Stephen Roman on 10/31/2019) (ap) (Entered: 10/31/2019) |
| 01/09/2020 | 24 | ENDORSED LETTER as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from defense counsel Jason Ser dated 1/8/20 re: briefing schedule...ENDORSEMENT: The parties' application to hold the briefing schedule in abeyance is granted. Counsel shall provide the court with a written update on or before Jan. 22, 2020. (Signed by Judge Nelson Stephen Roman on 1/9/20)(jbo) (Entered: 01/10/2020) |
| 01/09/2020 | | Set/Reset Deadlines as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Brief due by 1/22/2020. (jbo) (Entered: 01/10/2020) |
| 01/22/2020 | 25 | FIRST LETTER by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Sam Braverman dated January 22, 2020 re: Status Update Document filed by Anthony Lauria. (Braverman, Samuel) (Entered: 01/22/2020) |
| 01/28/2020 | 29 | ENDORSED LETTER as to Anthony Molina addressed to Judge Nelson Stephen Roman from Jason I. Ser dated 1/27/2020 re: Defense counsel writes to request time to update the Court. ENDORSEMENT: Counsel directed to provide the Court with an update by Jan. 30, 2020. (Signed by Judge Nelson Stephen Roman on 1/28/2020) (ap) (Entered: 01/28/2020) |
| 01/31/2020 | 30 | SECOND LETTER MOTION addressed to Judge Nelson Stephen Roman from Sam Braverman dated January 31, 2020 re: 27 Memo Endorsement,, Set Deadlines/Hearings, |

A.5

| | | |
|---|---|---|
| | | re: Modified Motion Schedule . Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 01/31/2020) |
| 02/03/2020 | 31 | ENDORSED LETTER as to Anthony Molina addressed to Judge Nelson Stephen Roman from Jason I. Ser dated 1/31/2020 re: Defense counsel writes to request new motion schedule. ENDORSEMENT: SO ORDERED. (Signed by Judge Nelson Stephen Roman on 1/31/2020) (ap) (Entered: 02/03/2020) |
| 02/03/2020 | 32 | MEMO ENDORSEMENT as to Anthony Lauria, Brian Rodriguez, Anthony Molina on re: 30 SECOND LETTER MOTION addressed to Judge Nelson Stephen Roman from Sam Braverman dated January 31, 2020 re: 27 SECOND LETTER MOTION addressed to Judge Nelson Stephen Roman from Sam Braverman dated January 31, 2020 re: 27 Memo Endorsement. ENDORSEMENT: Application granted. as set forth below. Clerk of the Court requested to terminate the motion (doc. 30). (Signed by Judge Nelson Stephen Roman on 2/3/2020) (ap) (Entered: 02/03/2020) |
| 02/12/2020 | 33 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE 34 Letter Motion) -** LETTER MOTION addressed to Judge Nelson Stephen Roman from Howard E. Tanner, Esq. dated 12/12/2020 re: Request for Extension to File Motions . Document filed by Brian Rodriguez as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Tanner, Howard) Modified on 2/19/2020 (db). (Entered: 02/12/2020) |
| 02/12/2020 | 34 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Howard E. Tanner, Esq. dated 2/12/2020 re: Request for Extension to File Motions . Document filed by Brian Rodriguez as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Tanner, Howard) (Entered: 02/12/2020) |
| 02/21/2020 | 35 | MEMO ENDORSEMENT as to Anthony Lauria (1), Brian Rodriguez (2), Anthony Molina (3) on 34 LETTER MOTION addressed to Judge Nelson Stephen Roman from Howard E. Tanner, Esq. dated 2/12/2020 re: Request for Extension to File Motions. ENDORSEMENT: Application granted. The motion briefing schedule for all defendants is extended as set forth below. Clerk of the Court requested to terminate the motion (doc. 34). (Signed by Judge Nelson Stephen Roman on 2/21/2020) (ap) (Entered: 02/21/2020) |
| 02/21/2020 | | Set/Reset Deadlines as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Motions due by 3/6/2020. Responses due by 3/20/2020. Replies due by 3/27/2020. (ap) (Entered: 02/21/2020) |
| 03/04/2020 | 36 | ENDORSED LETTER as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Attorney Jason I. Ser dated March 4, 2020 re: I write on behalf of all defendants in the above captioned matter to request modification of the briefing schedule.... Mr. Tanner requires additional time to complete motions on behalf of his client. Mr. Braverman, counsel for Mr. Lauria, joins in the request as well. Accordingly, all defense counsel ask the Court to amend the briefing schedule as follows: Defense motions on or before March 20, 2020; Government answer on or before April 3, 2020; Defense replies, if necessary, on or before April 10, 2020. Government counsel, Lindsey Keenan, consents to the above request and proposed briefing schedule. ENDORSEMENT: SO ORDERED. (Signed by Judge Nelson Stephen Roman on 3/4/2020)(bw) (Entered: 03/05/2020) |
| 03/20/2020 | 39 | SECOND LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated March 20, 2020 re: 36 Endorsed Letter, Set Deadlines/Hearings,,,,,, re: Terminate Pending Motion Schedule, or if denied, extend time to file submissions . Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 03/20/2020) |
| 03/20/2020 | 40 | MEMO ENDORSED granting 39 LETTER MOTION Terminate Pending Motion |

A.6

| | | |
|---|---|---|
| | | Schedule, or if denied, extend time to file submissions as to Anthony Lauria (1), Brian Rodriguez (2), Anthony Molina (3)...ENDORSEMENT: Defendants' application is granted to the extent that their motions to suppress briefing schedule is extended as follows: moving papers to be filed April 27, 2020; Govt's response papers to be filed May 11, 2020; and replies to be filed May 18, 2020. The parties are directed to provide 2 copies of all documents to chambers as the documents are filed. Clerk of the Court requested to terminate the motion (doc. 39). SO ORDERED. (Signed by Judge Nelson Stephen Roman on 3/20/2020) (jbo) (Entered: 03/23/2020) |
| 03/20/2020 | | Set/Reset Deadlines as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Replies due by 5/18/2020. Responses due by 5/11/2020. (jbo) (Entered: 03/23/2020) |
| 03/25/2020 | 41 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated March 25, 2020 re: Temporary Release of Defendant . Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Attachments: # 1 Exhibit Wall Street Journal Article re Spread of Coronavirus at Rikers Island, # 2 Exhibit Wall Street Journal Article re BOP 14 day Quarantine)(Braverman, Samuel) (Entered: 03/25/2020) |
| 03/26/2020 | 42 | LETTER RESPONSE in Opposition by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated March 26, 2020, re: 41 LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated March 25, 2020 re: Temporary Release of Defendant .. *Anthony Lauria* (Attachments: # 1 Exhibit A: 5/3/2019 Transcript, # 2 Exhibit B: 6/21/2019 Transcript, # 3 Exhibit C: Firearm photograph, # 4 Exhibit D: Firearm photograph, # 5 Exhibit E:)(Keenan, Lindsey) (Entered: 03/26/2020) |
| 04/01/2020 | 46 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - FIRST MOTION for Hearing re: 41 LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated March 25, 2020 re: Temporary Release of Defendant . *A hearing is requested at which testimony should be heard from a Warden of Westchester County Jail to determine the current state of health affairs at the jail facility.* Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. Return Date set for 4/2/2020 at 11:00 AM. (Braverman, Samuel) Modified on 4/2/2020 (ka). (Entered: 04/01/2020) |
| 04/01/2020 | 47 | LETTER RESPONSE to Motion by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated April 1, 2020, re: 46 FIRST MOTION for Hearing re: 41 LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated March 25, 2020 re: Temporary Release of Defendant . *A hearing is requested at which testimony should be heard f. (Keenan, Lindsey) (Entered: 04/01/2020)* |
| 04/01/2020 | 88 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 10/06/2020) |
| 04/22/2020 | 49 | THIRD LETTER MOTION addressed to Judge Nelson Stephen Roman from Howard E. Tanner dated 4/22/2020 re: 40 Order on Letter Motion,, re: Request for Extension of Motion Schedule . Document filed by Brian Rodriguez as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Tanner, Howard) (Entered: 04/22/2020) |
| 04/24/2020 | 50 | MEMO ENDORSEMENT granting 49 THIRD LETTER MOTION filed by Brian Rodriguez as to Anthony Lauria, Brian Rodriguez, Anthony Molina, addressed to Judge Nelson Stephen Roman from Attorney Howard E. Tanner dated 4/22/2020 re: 40 Order on Letter Motion, re: Request for Extension of Motion Schedule. ENDORSEMENT: The application is granted. Clerk of the Court requested to terminate the motion (doc. 49). (Signed by Judge Nelson Stephen Roman on 4/24/2020) (bw) (Entered: 04/27/2020) |

A.7

| 04/24/2020 | | Set/Reset Deadlines/Hearings as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Motions (by Defendants) due by 6/8/2020. Responses (by Government) due by 6/29/2020. Replies due by 7/6/2020. (bw) (Entered: 04/27/2020) |
|---|---|---|
| 06/08/2020 | 51 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated June 8, 2020 re: Extend Time to File Defendants Motions by One Day . Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 06/08/2020) |
| 06/08/2020 | 53 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** MOTION for Leave to File Excess Pages . Document filed by Anthony Molina. (Ser, Jason) Modified on 6/9/2020 (ka). (Entered: 06/08/2020) |
| 06/08/2020 | 54 | MOTION to Suppress *Evidence*., MOTION to Sever Defendant . Document filed by Anthony Molina. (Ser, Jason) (Entered: 06/08/2020) |
| 06/08/2020 | 55 | MEMORANDUM OF LAW in Support by Anthony Molina re: 54 MOTION to Suppress *Evidence*. MOTION to Sever Defendant . filed by Anthony Molina . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q)(Ser, Jason) (Entered: 06/08/2020) |
| 06/08/2020 | 56 | AFFIRMATION of Anthony Molina in Support as to Anthony Molina re: 54 MOTION to Suppress *Evidence*. MOTION to Sever Defendant ., 55 Memorandum of Law in Support,. (Ser, Jason) (Entered: 06/08/2020) |
| 06/08/2020 | 57 | MEMO ENDORSEMENT granting 51 LETTER MOTION filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina, addressed to Judge Nelson Stephen Roman from Attorney Samuel M. Braverman dated June 8, 2020 re: Extend Time to File Defendants Motions by One Day. Request that this Court modify the motion schedule to permit the defendants to file their motions by June 9, 2020. ENDORSEMENT: The application is granted. Clerk of the Court requested to terminate the motion (doc. 51). (Signed by Judge Nelson Stephen Roman on 6/8/2020) (bw) (Entered: 06/09/2020) |
| 06/08/2020 | | Set/Reset Deadlines/Hearings as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Motions (by defendants) due by 6/9/2020. (bw) (Entered: 06/09/2020) |
| 06/09/2020 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Anthony Molina: Notice to Attorney Ser, Jason to RE-FILE Document 53 MOTION for Leave to File Excess Pages. Use the event type Letter Motion found under the event list Motions. (ka)** (Entered: 06/09/2020) |
| 06/09/2020 | 59 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Jason Ser dated June 8, 2020 re: 55 Memorandum of Law in Support, re: for Leave to File Excess Pages . Document filed by Anthony Molina. (Ser, Jason) (Entered: 06/09/2020) |
| 06/09/2020 | 60 | FIRST MOTION for Release of Brady Materials ., FIRST MOTION to Compel *Search for and Production of Exculpatory Materials*., FIRST MOTION to Inspect *OCA Records of the Impaneled Grand Jury*. Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 06/09/2020) |
| 06/09/2020 | 61 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** AFFIDAVIT of Samuel M. Braverman in Support by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina re 60 FIRST MOTION for Release of Brady Materials .FIRST MOTION to Compel *Search for and Production of Exculpatory Materials*.FIRST MOTION to Inspect *OCA Records of the Impaneled Grand Jury*.. (Attachments: # 1 Exhibit Felony Complaint, # 2 Exhibit Standing Brady Order, # 3 |

A.8

| | | |
|---|---|---|
| | | Supplement Pro Se Motion of Anthony Lauria to Dismiss 924C charge)(Braverman, Samuel) Modified on 6/10/2020 (ka). (Entered: 06/09/2020) |
| 06/09/2020 | [62](#) | MEMORANDUM in Support by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina re [60](#) FIRST MOTION for Release of Brady Materials .FIRST MOTION to Compel *Search for and Production of Exculpatory Materials*.FIRST MOTION to Inspect *OCA Records of the Impaneled Grand Jury*.. (Braverman, Samuel) (Entered: 06/09/2020) |
| 06/10/2020 | | **NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Notice to Attorney Braverman, Samuel to RE-FILE Document [61](#) Affidavit in Support of Motion. Use the event type Declaration in Support of Motion found under the event list Replies, Opposition and Supporting Documents. (ka)** (Entered: 06/10/2020) |
| 06/10/2020 | [63](#) | ENDORSED LETTER as to (19-Cr-449-03) Anthony Molina addressed to Judge Nelson Stephen Roman from Attorney Jason Ser dated June 8, 2020 re: Undersigned counsel submits this instant letter to ask the Court to grant leave to file more than 25 pages of written arguments in this matter. ENDORSEMENT: SO ORDERED. Clerk of the Court requested to terminate the motion (doc. 59). (Signed by Judge Nelson Stephen Roman on 6/10/2020)(bw) (Entered: 06/10/2020) |
| 06/10/2020 | [64](#) | DECLARATION of Samuel M. Braverman in Support by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina re: [60](#) FIRST MOTION for Release of Brady Materials .FIRST MOTION to Compel *Search for and Production of Exculpatory Materials*.FIRST MOTION to Inspect *OCA Records of the Impaneled Grand Jury*.. (Braverman, Samuel) (Entered: 06/10/2020) |
| 06/10/2020 | [65](#) | MEMORANDUM in Support by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina re [60](#) FIRST MOTION for Release of Brady Materials .FIRST MOTION to Compel *Search for and Production of Exculpatory Materials*.FIRST MOTION to Inspect *OCA Records of the Impaneled Grand Jury*.. *CORRECTED VERSION* (Braverman, Samuel) (Entered: 06/10/2020) |
| 06/26/2020 | [68](#) | LETTER MOTION addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated June 26, 2020, re: extension of briefing schedule . Document filed by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Keenan, Lindsey) (Entered: 06/26/2020) |
| 06/26/2020 | [69](#) | MEMO ENDORSEMENT as to Anthony Lauria, Brian Rodriguez, Anthony Molina granting [68](#) LETTER MOTION addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated June 26, 2020, re: extension of briefing schedule. ENDORSEMENT: The application is granted. (Responses due by 7/13/2020. Replies due by 7/20/2020) (Signed by Judge Nelson Stephen Roman on 6/26/2020) (lnl) (Entered: 06/26/2020) |
| 07/13/2020 | [71](#) | LETTER MOTION addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated July 13, 2020, re: leave to file excess pages . Document filed by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Keenan, Lindsey) (Entered: 07/13/2020) |
| 07/13/2020 | [72](#) | MEMORANDUM in Opposition by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina re [54](#) MOTION to Suppress *Evidence*. MOTION to Sever Defendant ., [60](#) FIRST MOTION for Release of Brady Materials .FIRST MOTION to Compel *Search for and Production of Exculpatory Materials*.FIRST MOTION to Inspect *OCA Records of the Impaneled Grand Jury*., 52 MOTION to Suppress *and for Other Relief*.. (Keenan, Lindsey) (Entered: 07/13/2020) |
| 07/14/2020 | [73](#) | ENDORSED LETTER as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Jason I. Ser, dated 7/14/2020, re: |

A.9

| | | |
|---|---|---|
| | | Counsel writes on behalf of all defendants in the above captioned matter to request an extension of two weeks for all defense counsel to draft and file replies to the government's response brief. ENDORSEMENT: SO ORDERED. (Replies due by 8/3/2020) (Signed by Judge Nelson Stephen Roman on 7/14/2020) (lnl) (Entered: 07/14/2020) |
| 07/14/2020 | 74 | MEMO ENDORSEMENT as to Anthony Lauria (1), Brian Rodriguez (2), Anthony Molina (3) granting 71 LETTER MOTION addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated July 13, 2020, re: leave to file excess pages. ENDORSEMENT: The application is granted. (Signed by Judge Nelson Stephen Roman on 7/14/2020) (lnl) (Entered: 07/14/2020) |
| 08/03/2020 | 76 | FIRST LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated August 3, 2020 re: Request on Behalf of All Defense Counsel, without objection from the Government *For an Extension of Time to File Reply Papers until August 7, 2020.* Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 08/03/2020) |
| 08/04/2020 | 77 | MEMO ENDORSEMENT as to Anthony Lauria (1), Brian Rodriguez (2), Anthony Molina (3) granting 76 FIRST LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated August 3, 2020 re: Request on Behalf of All Defense Counsel, without objection from the Government For an Extension of Time to File Reply Papers until August 7, 2020. ENDORSEMENT: The application is granted. (Signed by Judge Nelson Stephen Roman on 8/3/2020) (lnl) (Entered: 08/04/2020) |
| 08/04/2020 | | Set/Reset Deadlines/Hearings as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Replies due by 8/7/2020. (lnl) (Entered: 08/04/2020) |
| 08/07/2020 | 79 | REPLY MEMORANDUM OF LAW in Support as to Anthony Molina re: 54 MOTION to Suppress *Evidence.* MOTION to Sever Defendant . . (Attachments: # 1 Exhibit R, # 2 Exhibit S, # 3 Exhibit T, # 4 Exhibit U, # 5 Exhibit V, # 6 Exhibit W, # 7 Exhibit X, # 8 Exhibit Y, # 9 Exhibit Z)(Ser, Jason) (Entered: 08/07/2020) |
| 08/07/2020 | 80 | AFFIRMATION of Anthony Molina in Support as to Anthony Molina re 54 MOTION to Suppress *Evidence.* MOTION to Sever Defendant .. (Ser, Jason) (Entered: 08/07/2020) |
| 08/07/2020 | 81 | LETTER REPLY TO RESPONSE to Motion by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated August 7, 2020 re 60 FIRST MOTION for Release of Brady Materials .FIRST MOTION to Compel *Search for and Production of Exculpatory Materials*.FIRST MOTION to Inspect *OCA Records of the Impaneled Grand Jury*.. (Attachments: # 1 Exhibit Federal Defenders Demand for Discovery Related to the Empaneling of the Grand Jury in US v. Balde)(Braverman, Samuel) (Entered: 08/07/2020) |
| 08/14/2020 | 82 | LETTER by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated August 14, 2020, re: request to file sur-reply Document filed by USA. (Keenan, Lindsey) (Entered: 08/14/2020) |
| 08/17/2020 | 83 | MEMO ENDORSEMENT as to Anthony Lauria, Brian Rodriguez, Anthony Molina on re: 82 LETTER by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated August 14, 2020, re: request to file sur-reply. ENDORSEMENT: The application is granted. (Signed by Judge Nelson Stephen Roman on 8/17/2020) (ap) (Entered: 08/17/2020) |
| 08/27/2020 | 84 | ENDORSED LETTER as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Samuel M. Braverman, Esq dated 8/27/2020 re: The Government has given its consent to adjourn the scheduled filings...ENDORSEMENT: The pretrial submissions are adjourned sine die until the next |

| | | Status Conference scheduled for September 25, 2020 at 1:00pm( Status Conference set for 9/25/2020 at 01:00 PM before Judge Nelson Stephen Roman ) (Signed by Judge Nelson Stephen Roman on 8/27/2020)(jw) (Entered: 08/28/2020) |
|---|---|---|
| 09/20/2020 | 85 | SCHEDULING ORDER as to Anthony Lauria, Brian Rodriguez, Anthony Molina. In light of the recent Coronavirus Disease 2019 ("COVID-19") pandemic affecting New York, and given the directives provided by the Chief Judge of the United States District Court for the Southern District of New York to limit in- person court appearances due to the risk presented by COVID-19, it is hereby ORDERED that the above case is scheduled for Pretrial Conference via teleconference on September 25, 2020 at 1:00 pm. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound(#) to enter the teleconference as a guest...... (Signed by Judge Nelson Stephen Roman on 9/20/2020) (Pretrial Conference set for 9/25/2020 at 01:00 PM before Judge Nelson Stephen Roman.) (jbo) (Entered: 09/21/2020) |
| 09/20/2020 | 93 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 10/27/2020) |
| 09/25/2020 | 87 | OPINION & ORDER as to Anthony Lauria, Brian Rodriguez, Anthony Molina. Defendants Anthony Lauria (Lauria), Brian Rodriguez (Rodriguez), and Anthony Molina (Molina) (collectively, Defendants) are charged by Indictment with: two counts of conspiring to commit robbery, in violation of 18 U.S.C. § 1951; one count of committing robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1951 and 2; and one count of using and carrying a firearm that was brandished during and in relation to second robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1) (A)(i) and 2. (Indictment, ECF No. 20.). For the foregoing reasons, Defendants Motions are GRANTED in part and DENIED in part. Defendant Molinas motion is granted insofar as it (1) seeks an evidentiary hearing to resolve the validity of the seizure of Molinas iPhone; and (2) seeks to suppress evidence seized pursuant to III(d) of the August 29 iCloud Warrant, unless the evidence could have been seized on a separate basis. All other aspects of Defendants Motions are DENIED. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 52, 54, and 60. (Signed by Judge Nelson Stephen Roman on 9/24/2020)(jw) (Entered: 09/25/2020) |
| 09/25/2020 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Status Conference held via telephone as to Anthony Lauria, Brian Rodriguez, Anthony Molina held on 9/25/2020. Defendant Anthony Lauria (01) present with counsel Samuel Braverman, Esq. and Kevin Lauria (father). Defendant Brian Rodriguez (02) present with counsel Howard Tanner, Esq. Defendant Anthony Molina (03) present with counsel Jason Ser, Esq. AUSA Lindsey Keenan also present. Sue Ghorayeb is court reporter. The Court finds each Defendant knowingly, intentionally and voluntarily waives his physical appearance and each consents to this proceeding to be conducted telephonically. The Court issued an opinion as to defendants' motions. Three (3) to Four (4) week jury trial is scheduled for January 25, 2021 or, alternatively, February 1, 2021. Jury selection will begin on the morning of the trial date. Voir dire, request to charge, all proposed jury instructions, proposed verdict sheet, witness lists, exhibit lists and copies of premarked, tabbed exhibits (in binders) shall be submitted to chambers by January 19, 2021. 3500 materials are due January 19, 2021. Two sets of all the above documents are due the morning of the respective deadline date. Motions in limine/404(b) briefing schedule is as follows: moving papers to be filed November 20, 2020; response papers to be filed December 4, 2020; and replies to be filed December 18, 2020. The parties are directed to provide 2 copies of all documents to chambers as the documents are filed. No extensions will be entertained. An in-person Suppression Hearing for Defendant Anthony Molina (03) is scheduled for October 20, 2020 at 10:00 am. All parties shall be present. Next Pretrial Conference scheduled for December 18, 2020 at 1:00 pm. Speedy trial time is excluded from today, September 25, 2021 until January 25, 2021 in the interests of |

| | | justice. Defendant Anthony Lauria (01) remanded. Bail continued for Defendants Brian Rodriguez (02) and Anthony Molina (03). (Replies due by 12/18/2020. Responses due by 12/4/2020. Pretrial Conference set for 12/18/2020 at 01:00 PM; Suppression Hearing set for 10/20/2020 at 10:00 AM before Judge Nelson Stephen Roman.) (jbo) (Entered: 10/09/2020) |
|---|---|---|
| 10/11/2020 | 89 | PROTECTIVE ORDER as to Anthony Lauria, Brian Rodriguez, Anthony Molina...regarding procedures to be followed that shall govern the handling of confidential material..... (Signed by Judge Nelson Stephen Roman on 10/11/2020)(jbo) (Entered: 10/13/2020) |
| 10/13/2020 | 90 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated October 13, 2020, re: re Suppression Hearing . Document filed by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Keenan, Lindsey) (Entered: 10/13/2020) |
| 10/14/2020 | 91 | ORDER as to Anthony Lauria, Brian Rodriguez, Anthony Molina. By motion dated June 8, 2020 (EFC No. 54), Defendant Anthony Molina ("Molina") sought, inter alia, to suppress all the evidence, including his cellphone and its contents, seized by the Government in connection with his arrest. By Opinion and Order, dated September 24, 2020, the Court set this matter for an evidentiary hearing to resolve the validity of the seizure of Molina's cellphone. (ECF No. 87.) On October 2, 2020, the Government, represented by Assistant U.S. Attorney Lindsey Keenan, informed the Court that it did not intend to offer the cellphone, nor its contents, in its case-in-chief at trial. See Government's letter, dated October 2, 2020. As a result, the Government asserted that the need for a hearing was mooted. Defendant Molina's counsel, Jason Ser, asserts that a hearing is still necessary because there is a reference to Molina's cellphone in one of the affidavits submitted in support of the Government's application for a search warrant: However, since Defendant Molina's motion, which specifically sought to suppress the cell and its contents, is now essentially granted, there is no longer a need for a hearing. Accordingly, the hearing scheduled for October 20, 2020 is cancelled as moot. The Clerk of Court is requested to terminate the motion (ECF No. 90). SO ORDERED. (Signed by Judge Nelson Stephen Roman on 10/14/2020)(jbo) (Entered: 10/15/2020) |
| 11/17/2020 | 94 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated November 17, 2020 re: CARES Act Application for Guilty Plea . Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 11/17/2020) |
| 11/23/2020 | 98 | ENDORSED LETTER as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from AUSA Lindsey Keenan dated November 20, 2020 re: Government respectfully requests that the schedule for motions in limine be adjourned without date. Defense counsel have consented to this request. ENDORSEMENT: The Government's request to adjourn sine die the briefing scheduled for motions in limine is granted upon consent of Defendants' counsel. SO ORDERED: (Signed by Judge Nelson Stephen Roman on 11/23/2020)(bw) (Entered: 11/24/2020) |
| 11/24/2020 | 99 | SCHEDULING ORDER as to (19-Cr-449-03) Anthony Molina. In light of the recent Coronavirus Disease 2019 ("COVID-19") pandemic affecting New York, and given the directives provided by the Chief Judge of the United States District Court for the Southern District of New York to limit in-person court appearances due to the risk presented by COVID-19, it is hereby ORDERED that the above case is scheduled for an Attorney Appointment Hearing via teleconference on November 25, 2020 at 11:00 am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. Prior to the teleconference, Defendant's counsel shall either |

| | | |
|---|---|---|
| | | obtain from Defendant a written or oral waiver of appearance and consent for counsel to proceed telephonically either with or without Defendant present by telephone. If counsel cannot obtain a written waiver from Defendant, counsel must provide an affidavit confirming counsel has obtained Defendant's consent. The affidavit must establish that counsel (1) consulted with Defendant regarding his or her right to be present at all conferences, (2) discussed with Defendant the current public health emergency created by the COVID-19 pandemic and the restrictions to courthouse access that have been implemented as a result, and (3) obtained Defendant's consent to willingly and voluntarily give up his or her right to be present at conferences for the period of time in which access to the courthouse has been restricted on account of the COVID-19 pandemic.(See Footnote 1 on this Order. The affidavit shall be e-filed with the Court no later than one (1) day before the scheduled teleconference. (*** See this Order for complete details. ***) SO ORDERED. (Signed by Judge Nelson Stephen Roman on 11/24/2020)(bw) (Entered: 11/25/2020) |
| 11/24/2020 | 103 | SEALED DOCUMENT placed in vault. (ap) (Entered: 12/09/2020) |
| 11/25/2020 | 100 | ORDER as to Anthony Molina: The Federal Defender's Office attorney assigned to this case Jason Ser is hereby ordered substituted and the representation of the defendant in the above captioned matter is assigned to CJ.A. attorney Joseph Vita. Attorney Jason Immanuel Ser terminated in case as to Anthony Molina. (Signed by Judge Nelson Stephen Roman on 11/25/2020) (ap) (Entered: 11/25/2020) |
| 11/25/2020 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Attorney Appointment Hearing via telephone as to Anthony Molina held on 11/25/2020. Defendant Anthony Molina (03) present with counsel Jason Ser, Esq. AUSA Lindsey Keenan also present with FBI Special Agent Justin Gray. Joseph Vita, Esq. also present. Court reporter is Pamela Grimaldi. The Court finds Defendant knowingly, intentionally and voluntarily waives his physical appearance and consents to this proceeding to be conducted telephonically. Defendant counsel's request to be relieved as counsel of record (due to conflict) is granted. Joseph Vita is appointed as CJA counsel of record for Defendant. The Court will issue his order of substitution. Outgoing counsel will provide his file to new counsel by Monday, November 30, 2020. Newly appointed counsel needs time to review the discovery and meet with his client. Defendant's change of plea scheduled for December 3, 2020 is cancelled. The Status Conference to be held via teleconf scheduled for December 18, 2020 at 1 pm remains in place. The Court granted exclusion of speedy trial time from today, November 25, 2020, until February 1, 2021 in the interests of justice. Bail continued. (lnl) (Entered: 12/07/2020) |
| 12/04/2020 | 101 | MOTION to Continue *Trial*. Document filed by Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 12/04/2020) |
| 12/08/2020 | 102 | (1) SUPERSEDING INDICTMENT FILED as to Anthony Lauria (1) count(s) 1s-2s, 3s, 4s-5s, 6s, Brian Rodriguez (2) count(s) 1s-2s, 3s, 4s-5s, 6s, Anthony Molina (3) count(s) 1s-2s, 3s, 4s-5s, 6s. (lnl) (Entered: 12/09/2020) |
| 12/14/2020 | 104 | ENDORSED LETTER as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Samuel M. Braverman, Esq., Counsel for Defendant Anthony Lauria, dated December 4, 2020 re: request to Continue Trial. ENDORSEMENT: The parties' request to adjourn the jury trial from Feb. 1, 2021 until June 14, 2021 or, alternatively, June 21, 2021 is granted upon consent of the Government. The Pretrial TeleConf. is also adjourned from Dec. 18, 2020 until Jan. 20, 2021 at 11:00 am or, alternatively, Jan. 20, 2021 at 3:00 pm. All Defendants will be arraigned on the Superseding Indictment (S1) and will discuss new trial deadlines at the next Pretrial TeleConf. The Clerk of Court requested to terminate the motion (doc. 101). SO |

A.13

| | | ORDERED: (Signed by Judge Nelson Stephen Roman on 12/14/2020)(bw) (Entered: 12/15/2020) |
|---|---|---|
| 12/14/2020 | | Terminate Deadlines and Hearings as to Anthony Lauria, Brian Rodriguez, Anthony Molina: Terminated Pretrial Conference set for 12/18/2020 at 01:00 PM. (bw) (Entered: 12/15/2020) |
| 12/31/2020 | 105 | NOTICE of Change of Address as to Anthony Molina. New Address: Joseph A. Vita Law Office, 52 Irenhyl Avenue, Port Chester, NY, 10573, 914-939-5401. (Vita, Joseph) (Entered: 12/31/2020) |
| 01/12/2021 | 106 | SCHEDULING ORDER as to Anthony Lauria, Brian Rodriguez, Anthony Molina. ORDERED that the above case is scheduled for a Pretrial Conference via teleconference on January 19, 2021 at 3:00 pm. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. (Pretrial Conference set for 1/19/2021 at 03:00 PM before Judge Nelson Stephen Roman) (Signed by Judge Nelson Stephen Roman on 1/12/2021) (See ORDER set forth) (ap) Modified on 1/13/2021 (ap). (Entered: 01/12/2021) |
| 01/14/2021 | 107 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Joseph A. Vita dated 1-14-2021 re: Waiver of physical appearance by defendant for 1-19-21 pretrial conference . Document filed by Anthony Molina. (Vita, Joseph) (Entered: 01/14/2021) |
| 01/14/2021 | 108 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Joseph A. Vita dated 1-14-21 re: Modify bail conditions to permit medical procedure . Document filed by Anthony Molina. (Vita, Joseph) (Entered: 01/14/2021) |
| 01/14/2021 | 109 | MEMO ENDORSEMENT as to Anthony Molina (3) granting 108 LETTER MOTION addressed to Judge Nelson Stephen Roman from Joseph A. Vita dated 1-14-21 re: Modify bail conditions to permit medical procedure. ENDORSEMENT: Upon the Pretrial Officer's consent and without objection by the Gov't, the Court grants Deft's request for temporary removal of the monitoring bracelet to allow for the MRI to be conducted. However, immediately after the procedure the monitor must be re-installed and activated. The Clerk of Court is requested to terminate the motion (doc. 108). (Signed by Judge Nelson Stephen Roman on 1/14/2021) (ap) (Entered: 01/14/2021) |
| 01/15/2021 | 112 | NOTICE OF ATTORNEY APPEARANCE: Dawn M Florio appearing for Anthony Molina. Appearance Type: Retained. *Dawn M. Florio* (Florio, Dawn) (Entered: 01/15/2021) |
| 01/19/2021 | 113 | ORDER as to Anthony Lauria, Brian Rodriguez, Anthony Molina: This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f), to confirm the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 1/19/2021)(See ORDER as set forth) (lnl) (Entered: 01/19/2021) |
| 01/19/2021 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Arraignment as to Brian Rodriguez (2) Count 1s-2s,3s,4s-5s,6s and Anthony Molina (3) Count 1s-2s,3s,4s-5s,6sBrian Rodriguez (2) Count 1s-2s,3s,4s-5s,6s and Anthony Molina (3) Count 1s-2s,3s,4s-5s,6s held on 1/19/2021. Arraignment and Pretrial Conference held via telephone. Defendant Anthony Lauria (01) was not produced due to his unit being placed under quarantine. Defendant's counsel Samuel Braverman, Esq. and Kevin Lauria (father) present. Defendant Brian Rodriguez (02) present with counsel Howard Tanner, Esq. Defendant Anthony Molina (03) present with CJA counsel Joseph Vita, Esq. and newly retained counsel Dawn Florio, Esq. AUSAs Lindsey Keenan and Hagan Scotten also |

present. Darby Ginsberg is court reporter. The Court finds each Defendants Rodriguez (02) and Molina (03) knowingly, intentionally and voluntarily waives his physical appearance and each Defendant consents to this proceeding to be conducted telephonically. The Court issued an oral R. 5(f) order. A written order will be filed. Defendant Rodriguez (02) arraigned on six count Superseding Indictment (S1), waives public reading and enters not guilty plea to the Superseding Indictment (S1). Defendant Molina (03) arraigned on six count Superseding Indictment (S1), waives public reading and enters not guilty plea to the Superseding Indictment (S1). The Government represents that there is no additional discovery related to the Superseding Indictment (S1). Defendant Rodriguez (02) will not file motions. Defendant Molina's (03) counsel needs time to review prior motions and the file. Outgoing CJA counsel Vita will turn over his file to new counsel. There are no plea dispositions at this time. Three (3) to Four (4) week jury trial scheduled previously for June 14, 2021 or, alternatively, June 21, 2021. Jury selection will begin on the morning of the trial date. Voir dire, request to charge, all proposed jury instructions, proposed verdict sheet, witness lists, exhibit lists and copies of premarked, tabbed exhibits (in binders) shall be submitted to chambers by June 1, 2021. 3500 materials are due June 1, 2021. Two sets of all the above documents are due the morning of the respective deadline date. Motions in limine briefing schedule is as follows: moving papers to be filed April 23, 2021; response papers to be filed April 30, 2021; and replies to be filed May 7, 2021. The parties are directed to provide 2 hard copies and one electronic copy of all motion documents to chambers as they are filed. Extensions will not be entertained. Final Pretrial Conference scheduled for June 3, 2021 at 11:00 am or, alternatively, June 4, 2021 at 11:00 am. Defendant Molina's (03) counsel will notify the Court and co-Defendants' counsel if she has a conflict with the trial date. Speedy trial time for Defendants Rodriguez (02) and Molina (03) is excluded from today, January 19, 2021, until June 21, 2021 in the interests of justice. Bail continued for Defendants Brian Rodriguez (02) and Anthony Molina (03). Clerk of Court requested to terminate the motion (doc. 107). **Plea entered by Brian Rodriguez (2) Count 1s-2s,3s,4s-5s,6s and Anthony Molina (3) Count 1s-2s,3s,4s-5s,6s Not Guilty.** (Motions due by 4/23/2021. Responses due by 4/30/2021. Replies due by 5/7/2021.) (lnl) (Entered: 02/08/2021)

| | | |
|---|---|---|
| 04/13/2021 | [126](#) | FIRST MOTION for Conference *to Subsitute Attorney*. Document filed by Anthony Molina. (Florio, Dawn) (Entered: 04/13/2021) |
| 04/16/2021 | [127](#) | SCHEDULING ORDER as to Anthony Lauria, Anthony Molina. It is hereby ORDERED that the above case is scheduled for a Final Pretrial Conference via teleconference on June 3, 2021 at 11:00 am or, alternatively, June 4, 2021 at 11:00 am unless otherwise notified by chambers. The Assignment Committee has scheduled this case for a firm jury trial date to commence on June 14, 2021 in Courtroom 520. Jury selection will be conducted on June 14, 2021 at 9:30 am in the Jury Assembly Room, unless otherwise notified by chambers, with trial to commence immediately thereafter. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest (Jury Selection set for 6/14/2021 at 09:30AM before Judge Nelson Stephen Roman., Pretrial Conference set for 6/3/2021 at 11:00 AM before Judge Nelson Stephen Roman.). (Signed by Judge Nelson Stephen Roman on 4/14/21)(jw) (Entered: 04/16/2021) |
| 04/19/2021 | [128](#) | FIRST LETTER MOTION addressed to Judge Nelson Stephen Roman from Dawn M. Florio dated 4/19/2021 re: Motion Rescheduling *Dawn M. Florio*. Document filed by Anthony Molina. (Florio, Dawn) (Entered: 04/19/2021) |
| 04/19/2021 | [129](#) | MOTION to Stay *filing of motions in limine*. Document filed by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 04/19/2021) |
| 04/19/2021 | [130](#) | SCHEDULING ORDER as to Anthony Molina: ORDERED that the above case is |

A.15

| | | |
|---|---|---|
| | | scheduled for an Attorney Appointment Hearing via teleconference on April 22, 2021 at 11:00 am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. (Attorney Appointment Hearing set for 4/22/2021 at 11:00 AM before Judge Nelson Stephen Roman) (Signed by Judge Nelson Stephen Roman on 4/19/2021) (See ORDER set forth) (ap) (Entered: 04/20/2021) |
| 04/19/2021 | 131 | MEMO ENDORSEMENT as to Anthony Molina (3) on 128 FIRST LETTER MOTION addressed to Judge Nelson Stephen Roman from Dawn M. Florio dated 4/19/2021 re: Motion Rescheduling Dawn M. Florio. ENDORSEMENT: Defts Molina and Lauria's requests to postpone/stay the filing of motions in limine is granted as follows: moving papers to be filed April 30, 2021; response papers to be filed May 7, 2021; and replies to be filed May 14, 2021. Clerk of Court requested to terminate the motions (docs. 128 & 129). (Signed by Judge Nelson Stephen Roman on 4/19/2021) (ap) (Entered: 04/20/2021) |
| 04/22/2021 | 132 | ORDER as to Anthony Molina: The attorney Dawn M. Florio privately retained to represent defendant is hereby ordered discharged and the representation of the defendant in the above captioned matter is assigned to Joseph A. Vita, CJA counsel. (Signed by Judge Nelson Stephen Roman on 4/22/2021) (ap) (Entered: 04/22/2021) |
| 04/22/2021 | 133 | CJA 23 Financial Affidavit by Anthony Molina. APPROVED. (Signed by Judge Nelson Stephen Roman) (ap) (Entered: 04/22/2021) |
| 04/22/2021 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Attorney Appointment Hearing as to Anthony Molina held on 4/22/2021. Attorney Appointment Hearing/Status Conference held via telephone. Defendant Anthony Molina (03) present with counsel Dawn M. Florio, Esq. CJA counsel Joseph Vita, Esq. also present. AUSA Lindsey Keenan and Hagan Scotten also present. The Court finds Defendant knowingly, intentionally and voluntarily waives his physical appearance and consents to this proceeding to be conducted telephonically. Financial Affidavit approved. Defendant's counsel Dawn Florio's request to withdraw as retained counsel and Defendant's request for appointment of CJA counsel are granted. Joseph Vita is re-appointed as CJA counsel of record for Defendant. The Court will issue an order. Mr. Vita was previously appointed as CJA counsel to Defendant and was not discharged for cause but was replaced by retained counsel. Ms. Florio will turn over her file tomorrow. The Court informed Mr. Vita that jury trial/selection is scheduled to begin on June 14, 2021. The Final Pretrial Conference is scheduled for June 3, 2021 at 11:00 am or, alternatively, June 4, 2021 at 11:00 am. All trial documents and 3500 materials are due on June 1, 2021. Bail continued. (Pretrial Conference set for 6/3/2021 at 11:00 AM before Judge Nelson Stephen Roman) (Court Reporter Tabitha Dente) (ap) (Entered: 04/23/2021) |
| 04/30/2021 | 134 | MOTION in Limine . Document filed by Anthony Molina. (Attachments: # 1 Exhibit defendant e-mail)(Vita, Joseph) (Entered: 04/30/2021) |
| 04/30/2021 | 135 | MOTION in Limine . Document filed by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Attachments: # 1 Exhibit A: Draft Transcript)(Keenan, Lindsey) (Entered: 04/30/2021) |
| 05/07/2021 | 137 | MEMORANDUM in Opposition by Anthony Molina re 135 MOTION in Limine .. (Vita, Joseph) (Entered: 05/07/2021) |
| 05/07/2021 | 138 | RESPONSE to Motion by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina re: 134 MOTION in Limine .. (Keenan, Lindsey) (Entered: 05/07/2021) |
| 05/10/2021 | 139 | LETTER by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated May 10, |

A.16

| | | |
|---|---|---|
| | | 2021 re: Join Molina Objections to Government Motions in Limine Document filed by Anthony Lauria. (Braverman, Samuel) (Entered: 05/10/2021) |
| 05/14/2021 | [141](#) | RESPONSE in Support of Motion by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina re: [135](#) MOTION in Limine .. (Keenan, Lindsey) (Entered: 05/14/2021) |
| 05/17/2021 | [142](#) | NOTICE OF ATTORNEY APPEARANCE Shiva H Logarajah appearing for USA. (Logarajah, Shiva) (Entered: 05/17/2021) |
| 05/26/2021 | [143](#) | ORDER: Defendants Anthony Lauria (01) and Anthony Molina (02) (collectively, "Defendants" or the Defense) are charged by superseding indictment (S1) with two counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951; two counts of conspiring to commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951; and two counts of brandishing a firearm in the course of the charged Hobbs Act Robberies in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (ECF No. 102.) A trial is scheduled for June 14, 2021. In summary the Court (I) preliminarily grants the Government's request to limit the scope of the direct testimony of each of seven unnamed law enforcement witnesses to the discrete investigative technique in which he or she participated, with leave for the Defense to renew its objections once the Defense has reviewed the 3500 and Giglio materials produced by June 1, 2021. (II) preliminarily holds that if store employees are called as witnesses, the Defense may question the employees as to whether they attempted to deceive law enforcement during the investigation, but may not discuss or rely on results of the polygraphs; (III) will allow the introduction of portions of the February 26, 2019 interview with Lauria provided that any reference to Molina, directly or indirectly, is effectively deleted and, upon request during trial, the Court will give a limiting instruction to the jury that the statement is only admissible against Lauria and should not be considered by the jury in its deliberations as to Molina; The Clerk of the Court is respectfully directed to terminate the pending motions at ECF Nos. 134 and 135. (Signed by Judge Nelson Stephen Roman on 5/26/21)(jw) (Entered: 05/26/2021) |
| 05/26/2021 | [144](#) | SCHEDULING ORDER as to Anthony Lauria, Anthony Molina: it is hereby ORDERED that the above case is scheduled for a Final Pretrial Conference via teleconference on June 3, 2021 at 11:00 am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. SO ORDERED. (Final Pretrial Conference set for 6/3/2021 at 11:00 AM before Judge Nelson Stephen Roman) (Signed by Judge Nelson Stephen Roman on 5/26/2021) (lnl) (Entered: 05/26/2021) |
| 05/31/2021 | [145](#) | LETTER by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Samuel M. Braverman dated May 31, 2021 re: Defendant Lauria Wishes to Plead Guilty to Counts 1, 2,, 4, and 5 of the Indictment and have a trial on Counts 3 and 6 Document filed by Anthony Lauria. (Attachments: # [1](#) Exhibit S1 19 Cr 449 Indictment)(Braverman, Samuel) (Entered: 05/31/2021) |
| 06/01/2021 | [146](#) | LETTER by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated June 1, 2021, re: defendant Anthony Lauria's proposed guilty plea Document filed by USA. (Keenan, Lindsey) (Entered: 06/01/2021) |
| 06/01/2021 | [147](#) | MOTION to Sever Defendant *Molina from Lauria*. Document filed by Anthony Molina as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Attachments: # [1](#) Exhibit Letter of defendant Lauria 5-31-21, # [2](#) Exhibit Letter of Government 6-1-21)(Vita, Joseph) (Entered: 06/01/2021) |
| 06/01/2021 | [148](#) | Request To Charge by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Keenan, Lindsey) (Entered: 06/01/2021) |

A.17

| Date | No. | Description |
|---|---|---|
| 06/01/2021 | 149 | Proposed Voir Dire Questions by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Keenan, Lindsey) (Entered: 06/01/2021) |
| 06/01/2021 | 150 | LETTER by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina addressed to Judge Nelson Stephen Roman from Lindsey Keenan dated June 1, 2021, re: Government's Proposed Verdict Form Document filed by USA. (Keenan, Lindsey) (Entered: 06/01/2021) |
| 06/01/2021 | 151 | PROPOSED EXAMINATION OF JURORS by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Braverman, Samuel) (Entered: 06/01/2021) |
| 06/02/2021 | 152 | Proposed Jury Instructions by Anthony Lauria as to Anthony Lauria, Brian Rodriguez, Anthony Molina. (Attachments: # 1 Exhibit Proposed Jury Instructions)(Braverman, Samuel) (Entered: 06/02/2021) |
| 06/02/2021 | 153 | ORDER as to Anthony Lauria, Anthony Molina: The Government is directed (1) to provide a Pimentel letter by 3:00 PM on Wednesday, June 2, 2021; and (2) to respond to Defendant Molina's motion to sever (ECF No. 147) by 5:00 PM on Thursday, June 3, 2021. (Responses due by 6/3/2021) (Signed by Judge Nelson Stephen Roman on 6/1/2021) (ap) (Entered: 06/02/2021) |
| 06/02/2021 | 154 | MEMORANDUM in Opposition by USA as to Anthony Lauria, Brian Rodriguez, Anthony Molina re 147 MOTION to Sever Defendant *Molina from Lauria*.. (Keenan, Lindsey) (Entered: 06/02/2021) |
| 06/03/2021 | 155 | RESCEDULING ORDER as to Anthony Lauria, Anthony Molina: Due to a technological difficulty in producing Defendant Anthony Lauria (01) to the U.S. Courthouse on June 3, 2021, it is hereby ORDERED that the in-person Change of Plea / Final Pretrial Conference is rescheduled to June 4, 2021 at 10:00 am in Courtroom 218. In light of the recent Coronavirus Disease 2019 ("COVID-19") pandemic affecting New York, and given the directives provided by the Chief Judge of the United States District Court for the Southern District of New York to limit in-person court appearances due to the risk presented by COVID-19, the Public may dial in to observe the proceeding, however, each individual must mute his/her/their phone during the proceeding. To access the teleconference, please follow these directions: (1)Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code:1231334 #; (3) Press pound (#) to enter the teleconference as a guest. (Pretrial Conference set for 6/4/2021 at 10:00 AM in Courtroom 218, 300 Quarropas Street, White Plains, NY 10601 before Judge Nelson Stephen Roman) (Signed by Judge Nelson Stephen Roman on 6/3/2021) (ap) (Entered: 06/03/2021) |
| 06/04/2021 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Pretrial Conference as to Anthony Lauria, Anthony Molina held on 6/4/2021. Final Pretrial Conference held. Defendant Anthony Lauria (01) present via telephone with counsel Samuel Braverman, Esq. physically present. Defendant Anthony Molina (03) present with counsel Joseph Vita, Esq. AUSAs Shiva Logarajah and Jason Swergold also present with Paralegal Shannon Becker. Due to a technical difficulty with the USMS in physically producing Defendant Lauria (01), he consents to appear for this proceeding by telephone. The Court finds Defendant knowingly, intentionally and voluntarily waives his physical appearance. Oral argument held on Defendant Molinas (03) motion to sever. The Court grants Defendant Molinas motion to sever and ordered Defendant Molina (03) to proceed with jury trial scheduled to commence with jury selection in the Jury Assembly Room on June 14 and 15, 2021 at 9:30 am with trial to commence immediately after jury selection in Courtroom 521. Trial hours are 11:00 am to 4:00 pm. Defendant Molinas (03) request to receive daily transcripts during trial is granted. Defendant Laurias (01) jury trial is tentatively scheduled for February 28, 2022. The Defendant Laurias (01) Status Conference, to be held in person, is scheduled for October 6, 2021 at 10:00 am or, |

A.18

|  | alternatively, October 7, 2021 at 10:00 am. The Court granted exclusion of speedy trial time for Defendant Lauria (01) from today, June 4, 2021, until February 28, 2022 in the interests of justice. Defendant Lauria remains detained. Bail continued for Defendant Molina (03). Clerk of Court requested to terminate motion (doc. 147). (Court Reporter Tabitha Dente) (ap) (Entered: 07/08/2021) |
|---|---|
| 06/14/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Voir Dire held on 6/14/2021 as to Anthony Molina. Jury Selection held. Defendant Anthony Molina present with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporter is Darby Ginsberg. Jury selection begun. Jury selection to continue tomorrow, June 15, 2021. See transcript. Bail continued. (jbo) (Entered: 06/24/2021) |
| 06/15/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Jury Trial as to Anthony Molina held on 6/15/2021. Jury Selection continued and concluded. Trial begun. Defendant Anthony Molina present with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporter is Angela ODonnell. Jury selection continued and concluded. Jurors empaneled and sworn. Opening statements given. Legal discussion held on open issues. See transcript. Bail continued. (jbo) (Entered: 06/24/2021) |
| 06/16/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Jury Trial as to Anthony Molina held on 6/16/2021. Jury trial held (continued). Defendant Anthony Molina present with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporters: Angela ODonnell/Christina Arends-Dieck. Testimony given and exhibits received in evidence. See transcript. Bail continued. (jbo) (Entered: 06/24/2021) |
| 06/17/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Jury Trial as to Anthony Molina held on 6/17/2021. Jury trial held (continued). Defendant Anthony Molina present with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporter: Christina Arends-Dieck/Angela ODonnell. Jury trial continued. Testimony given and exhibits received in evidence. See transcript. Bail continued. (jbo) (Entered: 06/24/2021) |
| 06/18/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Jury Trial as to Anthony Molina held on 6/18/2021. Jury trial held (continued). Defendant Anthony Molina present with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporter: Christina Arends-Dieck. Jury trial continued. Testimony given and exhibits received in evidence. Government rests. Defendant made Rule 29 motion. Oral argument held. The Court denied the motion. Alternate Juror #3 took notes (without permission). Upon the Court's request, the notebook was turned over and marked as Court Ex. #1. Defendant presents case. Testimony given and exhibit received in evidence. Charge Conference held. See transcript. Bail continued. (jbo) (Entered: 06/24/2021) |
| 06/21/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Jury Trial as to Anthony Molina held on 6/21/2021. Jury trial held (continued). Defendant Anthony Molina present with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporters: Darby Ginsberg/Angela O'Donnell. Jury trial continued. Testimony given and exhibits received in evidence. Defendant rests. Government doesn't present rebuttal case. Summations and Rebuttal given. Jury Charge will be given tomorrow (June 22, 2021). See transcript. Bail continued. (jbo) (Entered: 06/24/2021) |
| 06/22/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Jury Trial as to Anthony Molina held on 6/22/2021. Jury trial held (continued). Anthony Molina present |

| | | |
|---|---|---|
| | | with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporter: Darby Ginsberg. Jury trial continued. Jury Charge given. Alternate Jurors #1, #2 and #3 dismissed. Jury deliberations begun. See transcript. Bail continued. (jbo) (Entered: 06/24/2021) |
| 06/23/2021 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Jury Trial as to Anthony Molina held on 6/23/2021. Jury trial held (continued). Anthony Molina present with counsel Joseph Vita, Esq. AUSAs Lindsey Keenan, Shiva Logarajah and Jason Swergold also present with Paralegal Kristin Reilly. Court reporter: Darby Ginsberg. Jury trial continued. Jury deliberations continued and completed. The Jury finds defendant Anthony Molina Guilty on all Six Counts. Jury Polled, Verdict Unanimous. Original signed Jury Verdict form attached (marked as Court Ex. #4). Government moved for Defendant to be taken into custody pending sentencing. Oral argument held. The Court deemed there is a significant change of circumstances and ordered the U.S. Marshals to take Defendant into custody. Sentencing scheduled for September 24, 2021 at 11:15 am. PSI Ordered. Jury trial concluded. See transcript. (jbo) (Entered: 06/24/2021) |
| 06/23/2021 | | Set/Reset Hearings as to Anthony Molina: Sentencing set for 9/24/2021 at 11:15 AM before Judge Nelson Stephen Roman. (jbo) (Entered: 06/24/2021) |
| 06/23/2021 | | Order of Referral to Probation for Presentence Investigation and Report as to Anthony Molina. (Signed by Judge Nelson Stephen Roman on 6/23/21)(jbo) (Entered: 06/24/2021) |
| 06/23/2021 | 157 | ORDER as to (S1 19-Cr-449-03) Anthony Molina. Defendant is ORDERED remanded to U.S. Marshal Office custody. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 6/23/2021)(bw) (Entered: 06/24/2021) |
| 06/23/2021 | | JURY VERDICT as to Anthony Molina (3) Guilty on Count 1s-2s,3s,4s-5s,6s. (jbo) (Entered: 10/12/2021) |
| 06/29/2021 | 158 | MOTION for Acquittal ., MOTION for New Trial *pursuant to Rule 29 and Rule 33*. Document filed by Anthony Molina. (Vita, Joseph) (Entered: 06/29/2021) |
| 06/29/2021 | 159 | DECLARATION of Joseph A. Vita in Support as to Anthony Molina re: 158 MOTION for Acquittal . MOTION for New Trial *pursuant to Rule 29 and Rule 33*.. (Vita, Joseph) (Entered: 06/29/2021) |
| 07/02/2021 | 165 | SEALED DOCUMENT placed in vault. (ap) (Entered: 07/14/2021) |
| 07/14/2021 | 164 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Joseph A. Vita dated July 14, 2021 re: 159 Declaration in Support of Motion, 158 MOTION for Acquittal . MOTION for New Trial *pursuant to Rule 29 and Rule 33*. re: Approve briefing schedule for post-verdict motions . Document filed by Anthony Molina. (Vita, Joseph) (Entered: 07/14/2021) |
| 07/15/2021 | 166 | MEMO ENDORSEMENT as to Anthony Molina (3) on 164 LETTER MOTION addressed to Judge Nelson Stephen Roman from Joseph A. Vita dated July 14, 2021 re: 159 Declaration in Support of Motion, 158 MOTION for Acquittal. MOTION for New Trial pursuant to Rule 29 and Rule 33. re: Approve briefing schedule for post-verdict motions. ENDORSEMENT: The Court orders the following post-trial briefing schedule jointly proposed by the parties: the Defendant's memorandum shall be filed on or before August 6, 2021; the Government's opposition shall be filed on or before August 27, 2021; the Defendant's reply shall be filed on or before September 3, 2021. The parties shall provide two hard courtesy copies of all motion papers as they are filed. The Clerk of Court is directed to terminate the motion at ECF No. 164. (Signed by Judge Nelson Stephen Roman on 7/15/2021) (ap) (Entered: 07/15/2021) |
| 07/15/2021 | | Set/Reset Deadlines as to Anthony Molina: Motions due by 8/6/2021. Responses due by |

| | | |
|---|---|---|
| | | 8/27/2021. Replies due by 9/3/2021. (ap) (Entered: 07/15/2021) |
| 08/06/2021 | 167 | MEMORANDUM in Support by Anthony Molina re 158 MOTION for Acquittal . MOTION for New Trial *pursuant to Rule 29 and Rule 33*.. (Vita, Joseph) (Entered: 08/06/2021) |
| 08/08/2021 | 172 | SEALED DOCUMENT placed in vault. (ap) (Entered: 09/08/2021) |
| 08/27/2021 | 169 | MEMORANDUM in Opposition by USA as to Anthony Molina re 158 MOTION for Acquittal . MOTION for New Trial *pursuant to Rule 29 and Rule 33*.. (Keenan, Lindsey) (Entered: 08/27/2021) |
| 09/03/2021 | 170 | REPLY MEMORANDUM OF LAW in Support as to Anthony Molina re: 158 MOTION for Acquittal . MOTION for New Trial *pursuant to Rule 29 and Rule 33*. . (Vita, Joseph) (Entered: 09/03/2021) |
| 09/14/2021 | 174 | SENTENCING SUBMISSION by Anthony Molina. (Attachments: # 1 Exhibit Sentencing Letters)(Vita, Joseph) (Entered: 09/14/2021) |
| 09/16/2021 | 175 | ORDER as to Anthony Molina: The in-person Sentencing for the above Defendant is scheduled for September 24, 2021 at 11:15 am in Courtroom 218. In light of the recent Coronavirus Disease 2019 ("COVID-19") pandemic affecting New York, and given the directives provided by the Chief Judge of the United States District Court for the Southern District of New York to limit in-person court appearances due to the risk presented by COVID-19, the Public may dial in to observe the proceeding, however, each individual must mute his/her/their phone during the proceeding. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334#; (3) Press pound (#) to enter the teleconference as a guest. (Signed by Judge Nelson Stephen Roman on 9/16/2021) (ap) (Entered: 09/17/2021) |
| 09/17/2021 | 176 | SENTENCING SUBMISSION by USA as to Anthony Molina. (Keenan, Lindsey) (Entered: 09/17/2021) |
| 09/23/2021 | 177 | OPINION & ORDER as to Anthony Molina re: 158 MOTION for Acquittal; MOTION for New Trial pursuant to Rule 29 and Rule. For the foregoing reasons, Defendant's motion pursuant to Rule 29 to acquit, or in the alternative, order a new trial under Rule 33, is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 158. Sentencing is scheduled to take place in person on September 24, 2021 at 11:15 AM (Sentencing set for 9/24/2021 at 11:15 AM before Judge Nelson Stephen Roman.) (Signed by Judge Nelson Stephen Roman on 9/23/21)(jw) (Entered: 09/23/2021) |
| 09/24/2021 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Sentencing held on 9/24/2021 for Anthony Molina (3) Count 1s-2s,3s,4s-5s,6s. Defendant Anthony Molina present with counsel Joseph Vita, Esq. AUSA Lindsey Keenan also present. Court reporter is Angela O'Donnell. After oral argument was held, the Court exercised its discretion in finding that the 2-point enhancement is warranted (the law requires the Court to apply the enhancement). The Court noted Defendant's objection for the record. Presentence Report approved. The Court sentenced Defendant to a term of Twenty-Four (24) Months each on Counts One, Two, Four and Five of conviction (S1) to be served concurrently, Eighty-Four (84) Months on Count Three of conviction (S1), to be served consecutively to all other counts, and Eighty-Four (84) Months on Count Six of conviction (S1), to be served consecutively to all other counts, for a total term of One Hundred Ninety-Two (192) Months. (This sentence is appropriate under either Guideline.) The Court recommends designation at a facility nearest to Westchester County, New York. The Court also recommends that Defendant participate in the RDAP program or other substance abuse program. Upon release from imprisonment, the |

| | | |
|---|---|---|
| | | defendant shall be on supervised release for a term of Three (3) Years each on Counts One through Six, to run concurrently, for a total term of Three (3) Years, subject to the standard conditions 1-12 (at pages 22-23 of the Presentence Report) as well as mandatory (at pages 21-22 of the Presentence Report) and special conditions (at pages 23-24 of the Presentence Report). Preliminary Order of Forfeiture in the amount of $103,425.91 "So Ordered" by Judge Romn and marked as Court Ex. #1. Defendant's objections to the Order of Restitution were denied. The Court noted Defendant's objection to the ruling for the record. Order of Restitution in the amount of $103,425.91 "So Ordered" by Judge Romn and marked as Court Ex. #2. No fine levied. Defendant shall pay the United States $600 Special Assessment due immediately. The Government's oral motion to dismiss the underlying counts of conviction in S1 is GRANTED. Defendant advised of his right to appeal. Defendant remanded. (jbo) (Entered: 10/12/2021) |
| 09/24/2021 | | DISMISSAL OF COUNTS on Government Motion as to Anthony Molina (3) Count 1-3,4. (jbo) (Entered: 10/12/2021) |
| 10/07/2021 | 184 | NOTICE OF APPEAL by Anthony Molina from 183 Judgment. Filing fee $ 505.00, receipt number 465401287237. (tp) (Entered: 10/14/2021) |
| 10/08/2021 | 180 | ORDER OF RESTITUTION as to Anthony Molina. (Signed by Judge Nelson Stephen Roman on 9/24/2021) (ap) (Entered: 10/08/2021) |
| 10/08/2021 | 181 | PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Anthony Molina. (Signed by Judge Nelson Stephen Roman on 9/24/2021) (See ORDER set forth) (ap) (Entered: 10/08/2021) |
| 10/08/2021 | 182 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 10/12/2021) |
| 10/12/2021 | 183 | JUDGMENT IN A CRIMINAL CASE as to Anthony Molina (3). The defendant was found guilty on Count(s) 1s,2s,3s,4s,5s,6s. All open counts are Dismissed; Imprisonment: One hundred ninety-two (192) months; Twenty-Four (24) Months each on Counts One, Two, Four and Five of conviction (S1) to be served concurrently, Eighty-Four (84) Months on Count Three of conviction (S1), to be served consecutively to all other counts, and Eighty-Four (84) Months on Count Six of conviction (S1), to be served consecutively to all other counts, for a total term of One Hundred Ninety-Two (192) Months. Supervised Release: Three (3) Years each on Counts One through Six, to run concurrently, for a total term of Three (3) Years, subject to the standard conditions 1-12 as well as mandatory and special conditions. Defendant advised of his right to appeal. The court makes the following recommendations to the Bureau of Prisons: The Court recommends incarceration at a facility nearest to Westchester County, NY to facilitate family visitation. The Court also recommends that Defendant participate in the RDAP program or other substance abuse program. Assessment: $600.00 due immediately. Restitution: $103,425.91. Special instructions regarding the payment of criminal monetary penalties: See page 8 of the Judgment - ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES. The defendant shall forfeit the defendant's interest in the following property to the United States: $103,425.91 in United States currency. (Signed by Judge Nelson Stephen Roman on 10/12/21)(jbo) (Entered: 10/13/2021) |
| 10/14/2021 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Anthony Molina to US Court of Appeals re: 184 Notice of Appeal - Final Judgment. (tp) (Entered: 10/14/2021) |
| 10/14/2021 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Anthony Molina re: 184 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/14/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 11/22/2021 15:11:23 | | | |
| PACER Login: | zacharysegal | Client Code: | |
| Description: | Docket Report | Search Criteria: | 7:19-cr-00449-NSR |
| Billable Pages: | 22 | Cost: | 2.20 |

A.23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/24/2020
```

UNITED STATES OF AMERICA,

    -against-

ANTHONY LAURIA,
BRIAN RODRIGUEZ, and
ANTHONY MOLINA,

                Defendants.

19-CR-449-01 (NSR)
19-CR-449-02 (NSR)
19-CR-449-03 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendants Anthony Lauria ("Lauria"), Brian Rodriguez ("Rodriguez"), and Anthony Molina ("Molina") (collectively, "Defendants") are charged by Indictment with: two counts of conspiring to commit robbery, in violation of 18 U.S.C. § 1951; one count of committing robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1951 and 2; and one count of using and carrying a firearm that was brandished during and in relation to second robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  (Indictment, ECF No. 20.)

Before the Court are Defendants' pretrial motions (1) for suppression of evidence; (2) for severance; (3) for disclosure of Rule 404(b) evidence and other crimes evidence; (4) for disclosure of *Brady*, *Giglio*, or 3500 material; (5) for inspection of grand jury records; and (6) to dismiss Count Four of the Indictment for failure to state a claim.  (Lauria Memorandum of Law in Support of Motions ("Lauria Mot."), ECF No. 65; Declaration of Samuel M. Braverman ("Braverman Decl."), ECF No. 64, Ex. C ("*Pro Se* Lauria Mot."); Rodriguez Motion to Suppress and for Other Relief, ECF No. 52 ("Rodriguez Mot."); Molina Memorandum of Law in Support of Motion to Suppress, ECF No. 55, ("Molina Mot.").  For the following reasons, Defendants' Motions are

A.24

GRANTED in part and DENIED in part.

## BACKGROUND

The facts herein are drawn from the criminal complaint filed in this matter (Complaint ("Compl."), ECF No. 2), the Indictment, and the parties' submissions.  The three defendants are charged in in two Hobbs Act Robberies of Verizon Wireless stores: First, on August 10, 2017 in New Milford, Connecticut and second, on February 15, 2019, in Mahopac, New York.

## I.      The 2017 New Milford Armed Robbery

At approximately 7:22 p.m., on August 10, 2017, an individual—who was captured on surveillance video and allegedly identified on that video as Lauria—entered a Verizon Wireless Zone store in New Milford, Connecticut (the "New Milford Store"), and spoke to an employee about purchasing an iPhone.  (Compl. ¶ 6).  Lauria left the store without making a purchase, and walked toward a dark-colored Honda Accord with distinctive rims, leaving a fingerprint on the Store's door. (*Id.* ¶¶ 5–8, 16(a)).  Minutes later, two individuals allegedly identified as Rodriguez and Molina—one masked and brandishing a firearm, the other wearing a cap and sunglasses—got out of the Honda Accord, walked into the store, restrained the store's employees with zip ties, and stole Apple iPads and iPhones valued at approximately $48,000.  (*Id.* ¶¶ 9–13).

## II.     The 2019 Mahopac Armed Robbery

At approximately 7:40 p.m., on February 15, 2019, the dark-colored Honda Accord with distinctive rims drove into in the parking lot of a Verizon Wireless Zone store in Mahopac, New York (the "Mahopac Store").  (*Id.* ¶ 18).  Minutes later, allegedly leaving Lauria in the Honda as the getaway driver, Molina and Rodriguez—one masked and brandishing a firearm, the other wearing a hat and sunglasses (and one repeatedly calling the other "Brian")—walked into the store,

restrained the store's employee with zip ties, and stole Apple iPads and iPhones valued at approximately $54,000. (*Id.* ¶¶ 18–21, 23–25).

## III.   <u>The Investigation</u>

In 2017, the New Milford Police Department (the "NMPD") began investigating the 2017 New Milford Robbery.  (*See* Memorandum of Law of the United States of America in Opposition to Defendants' Pretrial Motions ("Gov. Opp."), ECF No. 72, at 3.)  Among other things, they interviewed witnesses, obtained Lauria's fingerprint from the door of the New Milford Verizon store, and obtained video surveillance.  (Compl. ¶¶ 5–14, 16(a)).

### a.   **Connecticut Anonymous Tip and Warrants**

In January 2018, the Connecticut States Police (the "CSP") contacted the NMPD to share an anonymous tip received from two people who arrived unexpectedly at the CSP Barracks in Westbrook.  (*Id.* ¶ 15).  The tipsters said they watched an online video of the New Milford Robbery, and identified the robbers as Lauria, Rodriguez, and Molina, providing contact information for each.  (*Id.*).  Shortly after receiving the anonymous tip, a judge of the Connecticut Superior Court issued warrants for historical cell site and toll records for two phone numbers: (914) 562-3972 (believed to belong to Lauria); and (914) 649-1912 (believed to belong to Rodriguez).  (Compl. ¶¶ 16–17; Molina Mot. Ex. C ("New Milford 3972 Cell Site Warrant"); Molina Mot. Ex. D ("New Milford 1912 Cell Site Warrant")).  Phone records showed that, during August 2017, those two phones were used exclusively in New York, except for the date of the 2017 New Milford Robbery, when they were used in New Milford, Connecticut.  (Compl. ¶¶ 16–17).

### b.   **Toll Records and Cell Site Warrants**

In 2018, among other things, the NMPD subpoenaed toll records for Rodriguez's 1912 phone.  (Gov. Opp. at 4.)  Those records showed that, on the date of the 2017 New Milford Robbery, between 3:06 p.m. and 11:47 p.m., Rodriguez's 1912 phone communicated at least six

3

A.26

times with Lauria's 3972 phone, and at least seven times with phone number (917) 789-4879, which the Government has since determined belonged to Molina. (Gov. Opp. at 4–5.)

After the 2019 Mahopac Robbery, the FBI got involved. (Gov. Opp. at 5.) On March 4, 2019, the Honorable Lisa Margaret Smith, United States Magistrate Judge, issued a so-called "tower extraction" warrant, directing a number of telephone service providers to provide the FBI with the telephone numbers that accessed the cell tower nearest the Mahopac store around the time of the 2019 Mahopac Robbery namely, 6:30 p.m. through 8:30 p.m., Eastern Standard Time. (Molina Mot. Ex. E ("March 4 Tower Extraction Warrant").)

The Sprint tower log shows Lauria's 3972 phone—which used the Sprint network—using a nearby cell tower to communicate with both Rodriguez's 1912 phone—as well as phone number (917) 254-2454, believed to belong to Molina—prior to the robbery. (Gov. Opp. at 5–6.) Similarly, the AT&T tower log showed Rodriguez's 1912 phone—which used the AT&T network—accessed a cell tower near the 2019 Mahopac Robbery when it communicated with Lauria's 3972 phone prior to the robbery. (Gov. Opp. at 6.) Molina's 2454 phone used the T-Mobile network. (Gov. Opp. at 6.) T-Mobile's tower log did not show what cell tower Molina's 2454 phone was using when it communicated with Lauria's 3972 phone prior to the 2019 Mahopac Robbery. (Gov. Opp. at 6.) Toll records for Lauria's phone showed that Lauria's 3972 phone communicated with Rodriguez's 1912 phone repeatedly on the day of the 2017 New Milford Robbery, as well as with Rodriguez's 1912 phone and Molina's 2454 phone repeatedly on the day of the 2019 Mahopac robbery, including prior to the robbery. (Gov. Opp. at 7.)

On March 29, 2019, Judge Smith issued a warrant for cell site and toll record information for Lauria's 3972 phone, Rodriguez's 1912 phone, and Molina's 2454 phone. (Molina Mot. Ex. F ("March 29 Cell Site Warrant").) The records obtained pursuant to this warrant demonstrated,

among other things, that all three phones were near the Mahopac store at the time of that robbery, but were not used in Mahopac at any other time in February 2019.  (Compl. ¶¶ 24(j)–(l), 24(m), 25(f)).

On April 23, 2019, the Honorable Paul E. Davison, United States Magistrate Judge, issued a warrant for prospective and historical location information and toll record information for Rodriguez's 1912 phone, and Molina's 2454 phone.  (Molina Mot. Ex. G ("April 23 GPS Warrant").)

### c.   Complaint Filed

On April 29, 2019, the Honorable Judith C. McCarthy, United States Magistrate Judge, executed the Complaint, finding probable cause to believe that: (1) Lauria and Rodriguez conspired to commit the 2017 New Milford Robbery, in violation of 18 U.S.C. § 1951; (2) Lauria, Rodriguez, and Molina conspired to commit the 2019 Mahopac Robbery, in violation of 18 U.S.C. § 1951; and (3) Lauria, Rodriguez, and Molina used and carried a firearm that was brandished during and in relation to the 2019 Mahopac Robbery conspiracy, and aided and abetted the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2). In connection with the Complaint, Judge McCarthy also issued warrants permitting the use of cell site simulator—commonly referred to as a "Triggerfish"—for Rodriguez's 1912 phone and Molina's 2454 phone, to allow law enforcement agents better to locate and arrest the defendants.  (Rodriguez Mot. Ex. D ("April 29 Rodriguez Triggerfish Warrant"); Molina Mot. Ex. H ("April 29 Molina Triggerfish Warrant").)

Also on April 29, Judge McCarthy issued a warrant for cell site and toll record information for phone number (718) 810-1273, believed to belong to Molina.  (Molina Mot. Ex. I ("April 29 Cell Site Warrant").)

### d.   Arrests of Defendants and Seizure of Property

The following day, using a Triggerfish, law enforcement located and arrested Molina in

5

A.28

his basement bedroom. (Molina Mot. Ex. Q ("Molina Arrest 302") & Ex. J ("April 30 iPhone Warrant") Aff. ¶ 19(a).) While clearing the bedroom, agents seized the black iPhone. (Molina Arrest 302). That same day, again using a Triggerfish, law enforcement located and arrested Rodriguez in his basement apartment, and seized a red iPhone 8. (April 30 iPhone Warrant Aff. ¶ 18).

Later that same day, Judge McCarthy issued a warrant permitting law enforcement to search the black iPhone seized in conjunction with Molina's arrest and the red iPhone seized in conjunction with Rodriguez's arrest. (April 30 iPhone Warrant). Among other things, Rodriguez's iPhone, which used Rodriguez's 1912 number, contained at least seven saved contacts for "Molina," including an entry for Molina's 4879 number—which was repeatedly in contact with Rodriguez's 1912 number on the day of the 2017 New Milford Robbery—labeled "Molina 4."

On May 23, 2019, Judge McCarthy issued a warrant for cell site and toll records for Molina's 4879 number. (Molina Ex. K ("May 23 Cell Site Warrant").) Records obtained pursuant to that warrant showed that Molina's 4879 phone was in New Milford the day of the 2017 New Milford Robbery. (Gov. Opp. at 10.) That same day, Judge McCarthy issued a warrant permitting a supplemental search of Rodriguez's red iPhone. (Rodriguez Mot. Ex. E ("May 23 iPhone Search Warrant").)

The following month, on June 3, 2019, Judge Davison issued a warrant permitting law enforcement to obtain DNA samples from each of the defendants, which would allow law enforcement to compare the defendants' DNA to DNA found on a zip-tie used to bind a victim of the 2019 Mahopac Robbery. (Molina Mot. Ex. L ("June 3 DNA Warrant").) Forensic analysis revealed that Molina's DNA could be included as a contributor to the DNA on the zip tie, and that the likelihood of selecting an unrelated individual whose DNA could be included in the mixture

was 1 in approximately 39.98 million.  (Rodriguez Mot. Ex. G ("DNA Report").)

     **e.   Indictment and Subsequent Events**

     Two weeks later, on June 17, 2019, a grand jury in this District returned Indictment 19 Cr. 449 (NSR), which charged each of the defendants with: (1) conspiring to commit the 2017 New Milford Robbery, in violation of 18 U.S.C. § 1951; (2) conspiring to commit the 2019 Mahopac Robbery, in violation of 18 U.S.C. § 1951; (3) committing the 2019 Mahopac Robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1951 and 2; and (4) using and carrying a firearm that was brandished during and in relation to the 2019 Mahopac Robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

     Subsequently, on August 29, 2019, Judge Davison issued a warrant for iCloud data related to seven iCloud accounts: whyteboi914@yahoo.com, jasmine.maniram20@gmail.com, god-freygrant10@gmail.com, slowpokebe@outlook.com, chillprimo23@gmail.com, anthonyjuli-anomolina@gmail.com; and vivijoy@icloud.com.  (Rodriguez Mot. Ex. F ("August 29 iCloud Warrant").)

## DISCUSSION

     The Fourth Amendment prohibits "unreasonable searches and seizures," and the Warrants Clause mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  For a search warrant to be considered valid, the law requires there be "probable cause to believe that a crime has been, is being, or is about to be committed . . . ."  *United States v. Wagner*, 989 F.2d 69, 71 (2d Cir. 1993).  The probable-cause determination "is not overly strict."  *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005).  "Presented with a warrant application, [a] judge must 'simply . . . make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis

7

A.30

of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235). In assessing probabilities, "a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Such determinations must be approached in a practical way, because "probable cause is a flexible, common-sense standard." *Gates*, 462 U.S. at 231–32; *Texas v. Brown*, 460 U.S. 730, 742 (1983). Additionally, the totality-of-the-circumstances approach includes a recognition of the training and experience of law enforcement agents in assessing human behavior and evidence. *See Gates*, 462 U.S. at 231–32.

Once a warrant has been issued by a judge and executed, the duty of a court reviewing a magistrate judge's probable cause determination on a motion to suppress is far more limited: its task is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The issuing magistrate's decision is "entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks omitted); *see also Wagner*, 989 F.2d at 72 (reversing suppression order). Indeed, the magistrate's "finding of probable cause is itself a substantial factor

tending to uphold the validity of [the] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). "Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232, 236). Thus, as described in *Clark*, the "task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *Clark*, 638 F.3d at 93 (quoting *Gates*, 462 U.S. at 238).

## I.   Rodriguez's and Molina's Standing to Contest a Search Warrant

As a preliminary matter, the Court considers whether Rodriguez and Molina had adequately established standing to bring their suppression challenges. It is well settled that a defendant has no right to have evidence suppressed on Fourth Amendment grounds unless he demonstrates that he had a "legitimate expectation of privacy" in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *see also Rawlings v. Kentucky*, 448 U.S. 98, 104–05 (1980) (citing *Rakas*, 439 U.S. at 131 n.1, and *Simmons v. United States*, 390 U.S. 377, 389–90 (1968)); *United States v. Villegas*, 899 F.2d 1324, 1333 (2d Cir. 1990). "[A] defendant may demonstrate the infringement of his own legitimate expectation of privacy by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner." *Villegas*, 899 F.2d at 1333 (citations omitted). "A defendant who, at the time of the search, neither owned nor occupied the premises nor had any dominion or control over them has no standing to contest a search of the premises." *Id.*

A showing of standing is required under the law because a "person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search

A.32

of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134.  "Only a defendant whose own privacy has been invaded can exclude evidence taken during the invasion." *United States v. Saint Prix*, 672 F.2d 1077, 1082 (2d Cir. 1982).  Absent such a demonstration, the defendant lacks standing to challenge the search, and, therefore, the remedy provided by the exclusionary rule is unavailable.  *See Rakas*, 439 U.S. at 134; *Rawlings*, 448 U.S. at 100; *Villegas*, 899 F. 2d at 1333.

This standing requirement applies as well to searches of cell site data—where the defendant must establish ownership or another possessory interest in the phone at the time for which the data is searched—as it does to searches of physical spaces.  *See, e.g., United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) (denying a cell site challenge, holding that "[Defendant] does not have standing to assert Fourth Amendment rights in those phone records" because "he did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them," "[n]or did [Defendant] assert a privacy interest in the cell phones in some other manner."); *United States v. Serrano*, No. 13 Cr. 58 (KBF), 2014 WL 2696569, at *7 (S.D.N.Y. June 10, 2014) (denying standing to challenge cell site evidence where "[t]he defendant has not proffered an affidavit that he has a privacy interest in that phone or the data on that phone.").  So, too, does it apply to searches of e-mail accounts.  *See United States v. Lewis*, No. 16 Cr. 786 (NSR), 2018 WL 6241445, at *5 (S.D.N.Y. Nov. 29, 2018) ("A person has no expectation of privacy in another person's e-mail account.") (quoting *United States v. Lustyik*, 57 F. Supp. 3d, 213, 223 (S.D.N.Y. 2014)).

The defendant bears the burden of establishing that he had a reasonable expectation of privacy in the place searched and "must submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest

in the searched premises at the time of the search." *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), aff'd, 44 F.3d 1102 (1995) (citations omitted); *see also, e.g., United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." (citing *Rakas*, 439 U.S. at 131 n.1; *United States v. Davis*, 932 F.2d 752 (9th Cir. 1991))). This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge. A defendant's unsworn assertion of the Government's representations does not meet this burden." *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted).  Absent such a demonstration, the defendant lacks standing to challenge the search, and, therefore, the remedy provided by the exclusionary rule is unavailable.  *See, e.g., Rakas*, 439 U.S. at 134.

Both Rodriguez and Molina have submitted affidavits or affirmations regarding their cell phones and iCloud accounts.  (Affidavit of Brian Rodriguez ("Rodriguez Aff."), ECF No. 58; Affirmation of Anthony Molina ("Molina Aff."), ECF No. 56;)  The Government concedes that these are sufficient to establish standing for the following: (1) the red iPhone taken from Rodriguez's house at his arrest; (2) data extracted from that red iPhone pursuant to the May 23 iPhone Warrant; (3) evidence, including Molina's black iPhone, obtained in conjunction with Molina's arrest; (4) data extracted from the black iPhone pursuant to the April 30 iPhone Warrant; and (5) DNA evidence obtained pursuant to the June 3 DNA Warrant.  (Gov. Opp. at 22.) Specifically, the Government notes that Rodriguez and Molina each alleged a possessory interest in the iPhones and data at the relevant times for those searches.

The Government, however, challenges Rodriguez's standing as to several other aspects of the searches regarding: (1) the 1912 phone during the time periods for which the March 29 Cell

Site Warrant authorized the disclosure of data; and (2) any iCloud account in the August 29 iCloud Warrant. Subsequently, Rodriguez submitted a supplemental affirmation that alleged a possessory interest in the 1912 phone, an iCloud account, and related data at the relevant times for those searches. (Supplemental Affidavit of Brian Rodriguez ("Supp. Rodriguez Aff."), ECF No. 78.)

The Government also challenges Molina's standing as to the following: (1) the March 29 Cell Site Warrant regarding the 2454 number, the April 23 GPS Warrant regarding the 2454 number, and the April 29 Cell Site Warrant regarding the 1273 number; (2) the May 23 Cell Site Warrant—which authorized the disclosure of cell site data related to the 4879 phone; and (3) any iCloud account in the August 29 iCloud Warrant. Subsequently, Molina submitted a supplemental affirmation that alleged a possessory interest in the 2454 and 1273 phones, two iCloud accounts, and related data at the relevant times for those searches, with one exception.[1]   (Supplemental Affirmation of Anthony Molina ("Supp. Molina Aff."), ECF No. 80.)

Accordingly, the Court concludes that both Rodriguez and Molina have sufficiently alleged standing for purposes of their Fourth Amendment motions.

## II.   Rodriguez's Suppression Motion

Rodriguez moves to suppress evidence obtained pursuant to the March 29 Cell Site Warrant, arguing that the affidavit omitted anonymous tips naming him as a participant in the 2017 New Milford Robbery (Rodriguez Br. 5–6), and evidence obtained as a result of the April 29 Rodriguez Triggerfish Warrant (namely, the iPhone seized at his arrest), the May 23 iPhone Warrant, and the August 29 iCloud Warrant, arguing that those affidavits improperly relied upon both: (1) evidence obtained pursuant to the March 29 Cell Site Warrant, which Rodriguez argues

---

[1] This exception is discussed below with regard to Molina's challenge to cell site data for Molina's 2454 phone obtained for the time around the 2017 New Milford Robbery.

is fruit of the poisonous tree; and (2) the same anonymous tip that Rodriguez argues should have been included in the affidavit for the March 29 Cell Site Warrant, which tip Rodriguez argues was insufficiently corroborated (Rodriguez Br. 6–12).

     **a.   March 29 Cell Site Warrant**

Rodriguez contends that Special Agent Gray's ("SA Gray") March 29, 2019 search warrant affidavit ("March 29 Affidavit") for cell site data contained material omissions and failed to establish probable cause.  In particular, Rodriguez argues that SA Gray failed to include information he received regarding the two unidentified informants who appeared at the Connecticut State Police barracks claiming to have information about the New Milford robbery. Rodriguez argues this constitutes a material omission, rendering the affidavit misleading and lacking in probable cause.

To suppress evidence obtained pursuant to an affidavit containing erroneous information under the *Franks v. Delaware* analytical framework, 438 U.S. 154, 171 (1978), a defendant is required to show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding."  *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000)) (internal quotation marks and brackets omitted).

Rodriguez has met neither element here.  First, Rodriguez has not demonstrated that the omission was the result of the SA Gray's "deliberate falsehood or reckless disregard for the truth," especially because additional inculpatory information—in this case, a corroborated anonymous tip—would have bolstered the Government's application.  *See, e.g., United States v. Thomas*, 788 F.3d 345, 351 (2d Cir. 2015) ("[W]e cannot conclude that any omission here was made deliberately or with 'reckless disregard for the truth' when it is clear that full disclosure of the relevant

information would only have *strengthened* the search warrant application." (emphasis in original));
*Rajaratnam*, 719 F.3d at 155 ("[W]e cannot conclude that the government omitted certain
information about the SEC investigation with 'reckless disregard for the truth' when it is clear that
fully disclosing the details of that investigation would only have *strengthened* the wiretap
application's 'necessity' showing.") (emphasis in original).

Second, the alleged omission was not necessary to Magistrate Judge Smith's finding of
probable cause, as the affidavit set forth detailed allegations giving rise to probable cause to obtain
cell site data for Rodriguez's 1912 phone.  SA Gray states that his application "was based on [his]
participation in the investigation, [his] examination of reports and records, and [his] conversations
with other law enforcement agents and other individuals, as well as [his] training and experience."
(March 29 Warrant Aff. ¶ 3.)  He describes what he observed on the video of the robbery,
fingerprint evidence, information gleaned from cell toll records, as well as social media accounts
implicating Lauria, Rodriguez, and Molina.  (March 29 Warrant Aff. ¶ 8a–h, 9–12.)  The Court
concludes that, in view of the totality of the circumstances set forth in the March 29 Cell Site
Warrant Affidavit, the anonymous tip was not necessary to a finding of probable cause.
Rodriguez's suppression motion is therefore denied as to evidence obtained pursuant to the March
29 Cell Site Warrant.

### b.  The April 29 Rodriguez Triggerfish Warrant, May 23 iPhone Warrant, and August 29 iCloud Warrant's Reliance on the March 29 Cell Site Warrant

Rodriguez's next suppression argument is that all evidence derived from subsequent search
warrants must be suppressed as "fruit from the poisonous tree," and because the subsequent
warrants repeat cumulative information from the March 29 Cell Site Warrant.  *See United States
v. Wong Sun*, 371 U.S. 471, 484–85 (1963); *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.
1994).  But absent a poisonous tree, there can be no fruit.  As the Court has declined to suppress

evidence obtained pursuant to the March 29 Cell Site Warrant, Rodriguez's argument fails as to the subsequent search warrants as well.

### c. April 29 Rodriguez Triggerfish Warrant

In contrast to the March 29 Cell Site Warrant, the April 29 Triggerfish Warrant relied, in part, on the anonymous tip. Rodriguez argues that there was insufficient corroboration of the anonymous informants to establish probable cause for this warrant. Specifically, Rodriguez notes that the April 29 Triggerfish Warrant failed to corroborate the information obtained by Connecticut State Police and omitted the following: (1) that the informants refused to identify themselves; (2) how either informant knew Mr. Rodriguez or could even identify him; and (3) the informants' purported motive in coming forward: because "Lauria turned on [the informant's] brother."

The Court is not persuaded that these omissions are significant. The affidavit identified the tipsters as anonymous. (April 29 Triggerfish Warrant Aff. ¶ 17.) The affidavit also includes that the tipster identified Rodriguez by watching the video of the robbery posted online by the NMPD. (April 29 Triggerfish Warrant Aff. ¶ 17). Finally, the informant's stated motivation for coming forward—animus toward Lauria—does not appear to bear on the tipsters' identification of Rodriguez. The Court declines to suppress evidence obtained from the April 29 Triggerfish Warrant on these grounds.

### III. Molina's Suppression Motion

Molina moves to suppress evidence seized pursuant to a series of warrants: the March 29 Cell Site Warrant; the April 23 GPS Warrant; the April 29 Molina Triggerfish Warrant; the April 29 Cell Site Warrant; the April 30 iPhone Warrant; the May 23 Cell Site Warrant; the June 3 DNA Warrant; and the August 29 iCloud Warrant.

### a.  Two Errors in March 29 Cell Site Warrant Affidavit

Molina argues that the Court should suppress evidence seized pursuant to the March 29 Cell Site Warrant related to Molina's 2454 T-Mobile number because the gravamen of the probable cause set forth in SA Gray's affidavit relies upon two significant misrepresentations.  The Government concedes the March 29 Cell Site Warrant Affidavit contained two erroneous statements, and provides the following corrected statements:

| Erroneous statement | Statement as corrected by the Government |
|---|---|
| "Based on my review of cell tower log information from the closest cell tower to the Mahopac Store, I have learned that [Lauria's 3972 phone], [Molina's 2454 phone], and [Rodriguez's 1292 phone] were all in the vicinity of the Mahopac Store on February 19, 2019." (March 29 Cell Site Warrant Aff. ¶ 13). | Based on my review of cell tower log information from the closest cell towers to the Mahopac Store, I have learned that [Lauria's 3972 phone]~~, [Molina's 2454 phone]~~, and [Rodriguez's 1292 phone] were ~~all~~ in the vicinity of the Mahopac Store on February ~~19~~ 15, 2019, minutes before the robbery, and, while located by the Mahopac store, [Lauria's 3972 phone] called only two phones: [Molina's 2454 phone] and [Rodriguez's] 1912 phone.] I have not yet received cell tower information to show where [Molina's 2454 phone] was at that time.[2] |
| "Toll records for [Lauria's 3972 phone] reflect that on August 10, 2017, shortly before and after the New Milford Store robbery, [Lauria's 3972 phone] was in communication with [Molina's 2454 phone] and [Rodriguez's 1912 phone]." (March 29 Cell Site Warrant Aff. ¶ 8(i)) | Toll records for [Lauria's 3972 phone] reflect that, on August 10, 2017, shortly before and after the New Milford Store robbery, [Lauria's 3972 phone] was in communication with ~~[Molina's 2454 phone] and~~ [Rodriguez's 1912 phone], and that, on February 15, 2019, shortly before and after the Mahopac Store robbery, [Lauria's 3972 phone] was in communication with [Molina's 2454 phone] and [Rodriguez's 1912 phone].[3] |

---

[2] Molina clarifies that it was Molina who called Lauria.  (*See* Molina's Reply Brief ("Molina Repl."), ECF No. 79, at 12–13 (citing Exs. S & V).)  The Government does not dispute this in its sur-reply.

[3] Molina presents an additional correction to the Government's correction: On February 15, 2019, Lauria's 3972 phone was in communication with Molina's 2454 phone and Rodriguez's 1912 phone only before—and not after—the Mahopac Store robbery.  (*See* Molina Repl. at 7–12 (citing Exs. S–X).)  The Government does not dispute this in its sur-reply.

(*See* Gov. Opp. at 41 (comparison added).)

*First*, Molina emphasizes that the T-Mobile cell tower log information does *not* identify Molina's 2454 phone number as one of the numbers using the T-Mobile towers in February 2019 during the Mahopac Robbery.  This statement should not have been included in paragraph 13 of the March 29 Cell Site Warrant Affidavit; the Government explains that all three co-defendants' phone numbers appeared on the logs, but that only Lauria's 3972 number was recorded actually using the cell tower near the Mahopac store.  (*Id.* at 42.)  *Second*, Molina highlights that Lauria's toll records do not show that Molina's 2454 phone communicated with Lauria's number in August 2017 at all.  This statement should not have been included in paragraph 8 of the March 29 Cell Site Warrant Affidavit; the Government attributes this error to a "misreading of records," which conflated the February 2019 records with the August 2017 records.  (*Id.* at 41–42.)  Both errors were repeated verbatim in the April 23 GPS Warrant Affidavit.  (April 23 GPS Warrant Aff. ¶¶ 9(i), 15.)

### i. *Franks* Standard

"There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  As briefly discussed above, "[a] defendant[, however,] may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure."  *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003).  To be entitled to a *Franks* hearing, the proponent's position must be "more than conclusory and must be supported by more than a mere desire to cross-examine."  *Id.*

The defendant "must make a 'substantial preliminary showing' that a false statement was made in the search warrant affidavit either 'knowingly and intentionally' or with 'reckless

disregard for the truth,' and that 'the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Mandell*, 710 F. Supp. 2d 368, 372 (S.D.N.Y. 2010) (quoting *Franks*, 438 U.S. at 155–56). "A misrepresentation or omission is intentional when 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth.'" *Awadallah*, 349 F.3d at 64 (quoting *United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000)). To meet this standard, a defendant must support his allegations of deliberate falsehood with "an offer of proof." *United States v. Cook*, 348 F. Supp. 2d 22, 29 (S.D.N.Y. 2004) (quoting *Franks*, 438 U.S. at 171).

The materiality inquiry rests on a determination of whether the "alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *Awadallah*, 349 F.3d at 64–65. Typically, to ascertain materiality, a Court should: (1) "disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant"; and (2) uphold the search warrant if "the corrected affidavit supports probable cause." *Id.* at 65 (quoting *Canfield*, 212 F.3d at 718).

### ii. *Franks* Analysis

The Court first addresses whether the two erroneous statements were material, *i.e.*, "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156. To assess materiality, the Court must disregard the false statements and analyze whether there would still be probable cause to obtain cell site information for Molina's 2454 phone for the time around the 2019 Mahopac Robbery.[4] Read in its totality, a corrected affidavit would allege:

- the 2017 New Milford Robbery was committed at approximately 7:45pm by a three-man crew, one of whom acted as a getaway driver in a Honda with distinctive rims (March 29 Cell Site Warrant Aff. ¶ 8);

---

[4] The Court focuses only on the 2019 Mahopac Robbery, because Molina has disavowed any legally cognizable privacy interest in the 2454 phone cell site data at the time of the 2017 New Milford Robbery. (*See* Supp.

- Lauria had entered or exited the New Milford Verizon store around the time of the 2017 New Milford Robbery (*id.* ¶ 8(h);

- the 2019 Mahopac Robbery was committed at approximately 7:45pm by a three-man crew, one of whom acted as a getaway driver in a Honda with distinctive rims (*id.* ¶ 12);

- one of the robbers who went into the store in the 2019 Mahopac Robbery was called "Brian" (Rodriguez's first name) by the other robber (*id.* ¶ 12(g));

- in both the 2017 New Milford Robbery and the 2019 Mahopac Robbery, the two robbers (who did not act as the getaway driver) entered the store. One pointed a gun at the employees and restrained the employees with zip ties while the other walked to the back of the store and stole tens of thousands of dollars worth of cell phones and other electronic devices before they walked out and got into the Honda to drive away (*id.* ¶¶ 8, 12);

- Lauria is Facebook friends with Molina and Rodriguez (*id.* ¶ 11);

- Lauria's 3972 cell phone communicated with Rodriguez's 1912 phone shortly before and after the 2017 New Milford Robbery (*id.* ¶ 8(i));

- Lauria's 3972 phone communicated with Molina's 2454 phone and Rodriguez's 1912 phone shortly before the 2019 Mahopac Robbery (*id.* ¶ 14) [5]; and

- Lauria's 3972 phone and Rodriguez's 1912 phone were both in the vicinity of the 2019 Mahopac Robbery minutes before the robbery (*id.* ¶ 13).

As corrected, the evidence in the affidavit linking Molina to either robbery is meager. The only statements involving Molina are: (1) that Lauria's 3972 phone was in communication with Molina's 2454 phone twice in the hour or so before the 2019 Mahopac Robbery; and (2) the tenuous observation that Molina was Facebook friends with both Lauria and Rodriguez. Whereas other statements place Lauria and Rodriguez at the scene, there is nothing placing Molina in the vicinity of either store. Moreover, nothing links Molina to the Honda. Though probable cause "is

_____

Molina Aff. ¶ 3 ("The [2454] T-Mobile cellular telephone number was mine from February 8, 2018 through and until at least April 30, 2019."); Molina Mot. at 8 n.7 ("Mr. Molina's 2454 T-Mobile number did not belong to ASA Cornerstone and was not in use by Mr. Molina in 2017.").)

[5] As noted above and illustrated in Molina's briefing, Lauria's 3972 phone was in communication with Molina's 2454 phone only twice before—and not after—the Mahopac Store robbery. (*See* Molina Repl. at 7–12 (citing Exs. S–X).)

not a high bar" to clear, *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 134 S.Ct. 1090, 1103 (2014)), one social media connection and two calls—with nothing more to suggest Molina's participation in either robbery—is simply not enough to demonstrate "the probability . . . of criminal activity." *Wagner*, 989 F.2d at 72.  As such, in view of the totality of the circumstances, the Court readily concludes that the false statements were "necessary to the [issuing] judge's probable cause finding." *Awadallah*, 349 F.3d at 64–65.

### iii.   Applicability of the Corrected Affidavit Doctrine

Perhaps anticipating that probable cause would be defeated by this exercise, the Government urges the Court to apply the "corrected affidavit doctrine" to supplement the content of the affidavit with  "additional information" that was possessed "at the time [the Government] sought the … warrant." *Ganek v. Leibowitz*, 874 F.3d 73, 85 n.6 (2d Cir. 2017).  Specifically, the Government wishes to include that, minutes before the 2019 Mahopac Robbery, Lauria's 3972 phone communicated with exactly two phones: Molina's 2454 phone and Rodriguez's 1912 phone. (Gov. Opp. at 41.)  Because the Court determines that the inevitable discovery rule applies, it declines to reach the issue of the applicability of the corrected affidavit doctrine in this context.

### b.  April 29 Molina Triggerfish Warrant

Molina argues that the April 29 Molina Triggerfish Warrant Affidavit failed to point out two issues regarding the anonymous tipsters: (1) their anonymity and (2) the fact that the FBI had not yet corroborated one aspect of the anonymous tip, namely, Molina's use of the 9885 number. The Court refers to its discussion above regarding the anonymous tip relied upon by the April 29 Rodriguez Triggerfish Warrant.  Again, the affidavit was clear that the informants were anonymous.  As to the 9885 number, the affidavit never asserted—whether directly or by implication—that law enforcement had corroborated the 9885 number.  To the contrary, it specifically stated that there was corroboration for the tipster's identification of (1) the  3972

20

A.43

number as belonging to Lauria (April 29 Molina Triggerfish Warrant Aff. ¶¶ 17(c), 18(i));  and (2) the 1912 number as belonging to Rodriguez (April 29 Molina Triggerfish Warrant Aff.  ¶¶ 17(c), 19(c)–(e)).  However, while stating that the tipster had identified Molina's number as the  9885 number (April 29 Molina Triggerfish Warrant Aff. ¶ 17(c)), the affidavit only set forth corroboration of the 2454 number as Molina's (April 29 Molina Triggerfish Warrant Aff. ¶ 27(c)).  Accordingly, the Court cannot conclude that these omissions were "necessary to the [issuing] judge's probable cause finding."  *Awadallah*, 349 F.3d at 64–65.

### c.  Inevitable Discovery Doctrine

The inevitable discovery doctrine "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016).  The doctrine "is available only where there is a high level of confidence that each of the contingencies required for the discovery of the disputed evidence would in fact have occurred." *United States v. Heath*, 455 F.3d 52, 55 (2d Cir. 2006).  The inevitable discovery doctrine requires the "district court to determine, 'viewing affairs as they existed at the instant before the unlawful search occurred, what would have happened had the unlawful search never occurred.'" *United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013) (quoting *United States v. Eng*, 971 F.2d 854, 859 (2d Cir. 1992)).  The Government "bears the burden of proving inevitable discovery by a preponderance of the evidence."  *Id.*  Proof of inevitable discovery "'involves no speculative elements but focuses on *demonstrated historical facts capable of ready verification or impeachment*.'" *Id.* (quoting *Eng*, 971 F.2d at 859) (emphasis in original).

The Government maintains that even had the magistrate rejected a corrected affidavit for the March 29 Cell Site Warrant, the FBI would inevitably have submitted an amended affidavit, supplemented with information about the anonymous tip identifying Molina, Lauria, and Rodriguez as the robbers.  In response, Molina argues that application of the inevitable discovery

21

A.44

doctrine would be inappropriate, as it would undermine deterrence of police conduct that violates Fourth Amendment rights.   While the Court is troubled by the "recurring pattern of errors" highlighted in Molina's briefing, the Court will not eschew the inevitable discovery rule at this time.

The Government persuasively argues that it would have been able to remedy the three main errors of which Molina complains: (1) the Government did not have evidence by March 29, 2019 that Molina's phone was in contact with Lauria's or Rodriguez's phones on the date of the 2017 New Milford Robbery; and (2) the Government did not have evidence by March 29, 2019 that Molina's phone was near the Mahopac Robbery on the day and near the time of that robbery; and (3) law enforcement had not corroborated that the 9885 number provided by the anonymous tipsters for Molina was, in fact, his number.   The Government presents avenues by which each error has been remedied independently of any warrants challenged by Molina.   (Gov. Opp. at 49– 50.)  Given these independent means of obtaining the challenged information, the Court has a high level of confidence that such evidence would have inevitably been obtained.   The Court therefore finds that the Government has met its burden, by a preponderance of the evidence, that the discovery of the disputed evidence would in fact have occurred.   Molina's suppression application—as to the March 29 Cell Site Warrant, April 29 Triggerfish Warrant, and subsequent warrants on the same grounds or as "fruit of the poisonous tree"—is therefore denied.

Accordingly, even if the Court were to find that Molina had made a substantial preliminary showing that the challenged statements were the result of SA Gray's deliberate falsehood or

A.45

reckless disregard for the truth, a *Franks* hearing is not warranted due to the inevitable discovery
doctrine.

### d.  April 30 Seizure of Molina's iPhone

Molina further argues that his iPhone should be suppressed because it was seized without
a search warrant.  On April 30, 2019, after arresting Molina, who was in his basement bedroom,
law enforcement recovered his iPhone.  (Molina Mot. Ex. Q.)  The FBI's report describes the
recovery as follows:

> Agents identified a closed door that led to a bedroom.  Arrest team called for
> Molina to come to the steps, which he did. Molina was taken into custody without
> incident. . . . While clearing the basement bedroom where Molina was, Agents
> recovered one cell phone on Molina's bed. . . [W]riter placed a call to [the 2454
> number] . . . . The phone on the bed then rang and identified the number writer
> had called from.

(*Id.*)  According to this report, the iPhone was in plain view on the bed in the bedroom where
Molina was when he was arrested.  *See Maryland v. Buie*, 494 U.S. 325, 334 (1990) (holding that
officers executing an arrest in a home may "as a precautionary matter and without probable cause
or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest
from which an attack could be immediately launched."); *Minnesota v. Dickerson*, 508 U.S. 366,
374–75 (1993) (under the plain view doctrine, if "police are lawfully in a position from which they
view an object, if its incriminating character is immediately apparent, and if the officers have a
lawful right of access to the object, they may seize it without a warrant."); *United States v. Delva*,
858 F.3d 135, 147 (2d Cir. 2017) ("[W]e see no error in the district court's findings that the
cellphone and letters—recognizable as likely evidence (cellphones having been used in the
kidnapping/robbery, and the letters being post-kidnapping/robbery communications between two
of the charged coconspirators)—were in plain view in the second bedroom").

Molina, however, contests that his iPhone was in plain view.  (Supp. Molina Aff. ¶ 4 ("That iPhone was not out in the open sitting on my bed at the time of my arrest.")  Therefore, there is a disputed issue of fact regarding the seizure of Molina's iPhone, and an evidentiary hearing is warranted.

### e.  August 29 iCloud Warrant

Molina also argues that the August 29 iCloud Warrant improperly permitted the seizure of evidence of aggravated identity theft, a crime for which probable cause was not established in the accompanying affidavit.  The August 29 iCloud Warrant sought evidence linked to violations only of "violations of Title 18, United States Code, Sections 1951 (Hobbs Act Robbery), and 924(c) (use of a firearm during and in relation to a of a crime of violence) (collectively, the 'Subject Offenses') involving Brian Rodriguez, Anthony Lauria, and Anthony Molina . . . ."  (August 29 iCloud Warrant, Attachment A, Section III.)   No other criminal statutes were identified.  Nevertheless, Attachment A's list of "Information to be Seized by the Government" exceeded that which could be linked to a § 1951 or § 924(c) violation.  It identifies items related to "aggravated identity theft" spanning a period of nearly two years.  (*Id.* at Attachment A, ¶ III(d).)

As a result, the August 29 iCloud Warrant was facially overbroad.  In this case, "the portion of the warrant that is constitutionally infirm . . . for lack of . . . probable cause—is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted."  *United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013) (citation omitted).  All evidence untethered from the specified offenses, *i.e.*, violations of 18 U.S.C. §§ 924(c) and 1951, must be suppressed.  The Court therefore strikes the paragraph that permitted the search for, and seizure of, "[e]vidence regarding [Molina's] commission of aggravated identity theft" (August 29 iCloud Warrant, Attachment A, ¶ III(d)), and directs that all evidence seized pursuant to that paragraph be suppressed unless it could have seized on a basis beyond that

24

A.47

paragraph.  The rest of the warrant, however, still stands.  *See, e.g., United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992) ("When a warrant is severed (or redacted) the constitutionally infirm portion . . . is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted.").  After the Government has identified its exhibits, Molina may object if he determines that the Government has, in fact, sought to introduce evidence obtained solely via the offending paragraph of the warrant.

### f.  Motion to Compel Discovery

Molina seeks, in his reply brief, to compel discovery he claims is "material to preparation of the defense" pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E).  Molina includes broad requests for documents and communications between SA Gray and Assistant United States Attorney Lindsey Keenan relating to the investigation and SA Gray's affidavits.  Molina does not explain how such documents he seeks are discoverable and/or admissible.  The Court sees no justification to compel such discovery, and as such this request is denied.

## IV.  <u>Motions for Severance</u>

Each of the defendants moves to sever his trial from that of his co-defendants.  Rodriguez argues that the jury will be unduly prejudiced by the overwhelming DNA evidence against Molina.  Molina argues that the case against Lauria and Rodriguez is so strong that it would inevitably prejudice him.  Lauria argues that the defendants may present antagonistic defenses, there may be co-defendant statements that need to be redacted, and that the jury will be unduly prejudiced by the overwhelming DNA evidence against Molina. The government, however, argues that Defendants have failed to overcome the strong presumption in favor of a joint trial.  For the reasons stated below, Defendants' motions to sever the trial are denied.

As the Supreme Court has explained, the "preference in the federal system [is] for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Joint trials seek to promote "economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 121 n.6 (1968) (internal quotations omitted). "This preference is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d at 115; *see United States v. Pirro*, 76 F. Supp.2d 478, 483 (S.D.N.Y. 1999) ("[T]he cases are legion that there is a strong public interest in joint trials where . . . the defendants are . . . charged in the same conspiracy").

Under Rule 14(a) of the Federal Rules of Criminal Procedure, however, courts may "order separate trials of counts, sever the defendants' trials or provide any other relief that justice requires" in cases where "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." To demonstrate that severance is proper, a defendant must establish substantial prejudice. *See United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991) ("The defendant prejudice so great as to deny [him or her] a fair trial."). "Substantial prejudice does not simply mean a better chance of acquittal." *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984), *cert. denied*, 469 U.S. 934 (1984). Rather, the prejudice of a joint trial must constitute a "miscarriage of justice." *United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997) (quoting *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993)). And even when the risk of prejudice is great, limiting instructions will often "suffice as an alternative to granting a Rule 14 severance motion." *United States v. Feyrer*, 33 F.3d 110, 114 (2d Cir. 2003). Thus, severance is generally warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 509 U.S. at 539.

### a.  Prejudicial Spillover

As the Second Circuit has held, severance may be warranted where there is a risk of "prejudicial spill over." *United States v. Salameh*, 152 F.3d 88, 115–16 (2d Cir. 1998).  In other words, "'[p]rejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." *Id.*; *see also Zafiro*, 509 U.S at 539 ("Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant [] might present a risk of prejudice."). Nevertheless, "[w]here a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *Salameh*, 152 F.3d at 111.

Rodriguez and Lauria each argue that "it will be impossible for a jury to keep [DNA] evidence [identifying Molina] separate as to this defendant and co-defendant Molina, they will be unduly influenced by the DNA Report." (Rodriguez Mot. at 19; Lauria Mot. at 4).  And Molina argues that he "will be severely prejudiced from the subject matter and volume of evidence implicating his co-defendants," including video surveillance, fingerprints, the use of the name "Brian" during a robbery, telephone evidence, and possible 404(b) evidence.  (Molina Mot. at 40–41).

The Court does not find substantial prejudice would result if the trials were not severed. Each of the defendants' participation in the robbery schemes would be otherwise admissible against the others in a separate trial as proof of the existence of the charged criminal conspiracy. *See Salameh*, 152 F.3d at 111.  Notably, no defendant points to any evidence that would be admissible against a co-defendant but inadmissible against himself.  In any event, even if the potential for prejudicial spillover did exist, Defendants fail to establish that a limiting instruction would not suffice to cure any risk of unfair prejudice.

A.50

The Court concludes that there is no basis for severance.  *See United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) ("'[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.'" (quoting *United States v. Carson*, 702 F.2d 351, 366-67 (2d Cir. 1983))); *United States v. Feola*, 651 F. Supp. 1068, 1123-24 (S.D.N.Y. 1987) ("[I]t is well established that 'simply because the evidence against codefendants is stronger or that one defendant's role in the crime is lesser than that of others is not sufficient reason to grant a severance'").

### b.  Lauria's Claims of Antagonistic Defenses

Lauria argues that the Defendants "may" have antagonistic defenses due to the "juxtaposition of the indictment's varied allegations against the differing defendants," which he argues "plainly presents an antagonism in the defendants' respective trial defenses."  Lauria has not defined the contours of those potential defenses and how they might conflict, and it is not plain to the Court.  "In order to make a showing of 'mutually antagonistic' or 'irreconcilable defenses,' the defendant must make a factual demonstration that 'acceptance of one party's defense would tend to preclude the acquittal of [the] other.'"  *Salameh*, 152 F.3d at 116.  Lauria has not suggested any facts that would lead to this conclusion.  The Court will not sever the trial on this basis.

### c.  Lauria's Concern About Co-Defendant Statements

Lauria also expresses concern regarding the prospect of statements of a co-defendant being offered against him.  The Court recognizes that "a post-arrest statement made by a nontestifying defendant which facially incriminates a co-defendant is inadmissible at their joint trial despite a limiting instruction to the jury because it violates the co-defendant's right to cross-examination." *United States v. Romero*, 897 F.2d 47, 53 (2d Cir. 1990).  Although these situations sometimes warrant severance, district courts nevertheless have the discretion to instead order redactions that

28

A.51

"eliminate any directly incriminating references to [] co-defendants," and to give "the jury a proper

limiting instruction." *Id*; *see also United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989).

The Government has consented to making redactions if it offers any such statement, which

moots the issue.  Further, Defendants have failed to identify any co-defendant statement that is

facially incriminating.  *See United States v. Piervinanzi*, No. 5th S 89 Cr. 229(PKL), 1990 WL

139021, at *3 (S.D.N.Y. Sept. 18, 1990) ("Unless and until counsel for Marchese identifies

statements made by a co-defendant which facially incriminate Marchese, the motion for severance

based on *Bruton* must be denied").  Either way, severance under *Bruton* is not warranted.

**V.      Motion to Disclose Rule 404(b) Evidence and Other Crimes Evidence Prior to Trial**

Regarding Rule 404(b) material, the Government has stated that it will comply with the

"Court's rules and the law regarding the timing of 404(b) disclosures," which "only requires

'reasonable notice in advance of trial' for the admission of prior convictions and bad acts." *United*

*States v. Fennell*, 496 F. Supp. 2d 279, 284 (S.D.N.Y. 2007).  The request for 404(b) materials is

denied without prejudice at this time, and may be discussed further at the September 25, 2020

pretrial conference.

**VI.     Motions for Disclosure of *Brady*, *Giglio*, or 3500 Material**

To date, the Government advises it is unaware of any potential *Brady* material, but will

provide timely disclosure to the Defendants if any *Brady* material comes to light.   As the

Government has acknowledged its obligations under *Brady*, Defendants' motions are either moot

or premature in the absence of an alleged discovery violation.  The requests are therefore denied

without prejudice to renew.  *See, e.g.*, *United States v.  Santana*, No. 13 Cr. 147 (KMW), 2015

WL 5781413, at *3 (S.D.N.Y. Oct. 1, 2015) (denying motion to produce *Brady* material because

"[t]he Government states that it is aware of its obligations under Brady, but that, to date, it is unaware of any Brady material regarding the Defendants").

With respect to Lauria and Rodriguez's request for all impeachment material to be disclosed, the Government also advises that it understands its obligations under *Giglio*, its progeny, and the Jencks Act, 18 U.S.C. § 3500.  As the Government represents that it intends to provide the defense with *Giglio* material prior to trial, and is willing to confer with the Defendants on a reasonable disclosure schedule, this request is also denied without prejudice to renew.

**VII.**   **Motion for Inspection of Grand Jury Records**

Lauria generally seeks the release of "the records of the grand jury," and appears to request two categories of information: (1) records relating to "how the grand jury was drawn, summoned, or selected" and (2) records about what occurred before the grand jury, such as whether the jurors were "properly instructed on the law" and "heard all of the evidence."

**a.   How the Grand Jury Was Drawn, Summoned, or Selected**

With respect to the first category, under 28 U.S.C. § 1867(a), a defendant may move to dismiss the indictment "on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."  In preparation for such a motion, a defendant is entitled to inspect the "content of records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f).  Thus, a defendant is generally entitled to some records relating to the "how the grand jury was drawn, summoned, or selected."

Similar motions recently have been made in numerous other cases, in which defendants indicted very recently have made particularized requests regarding the process for selecting the grand jury venire.  In order to determine whether there are documents that are responsive to these requests to which the defendants are entitled, the Honorable Katherine Polk Failla, United States District Judge for the Southern District of New York, scheduled a call with the Jury Administrator

for the Southern District of New York and invited defense counsel in several cases to join the call on June 30, 2020.  *United States v. Souleymane Balde*, 20 Cr. 281 (KPF), Dkt. No. 21.

Lauria has presented similarly particularized requests.  (*See* Anthony Lauria Letter Reply, ECF No. 81.)  The Government has represented that it is prepared to produce to him the same categories of documents that it (or the court) will be producing to other defendants.  This motion is therefore denied as moot.

The Court notes that the indictment in this case was filed on June 17, 2019, well over seven days ago.  The question of whether any motion Lauria attempts to bring under 28 U.S.C. § 1867(a) is timely, however, will be addressed if and when a motion is actually filed.  *See United States v. Saipov*, No. S1 17-CR-722 (VSB), 2020 WL 915808, at *3 (S.D.N.Y. Feb. 26, 2020) ("[S]ince Defendant only seeks information and records at this time, I will defer decision on timeliness until a motion challenging the selection and composition of the Grand Jury.").

### b.  What Occurred Before the Grand Jury

With respect to the second category, the law is clear that Lauria is not entitled to such information.  It is settled law that "grand jury proceeding[s] [are] accorded a presumption of regularity," *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991) (internal quotation marks omitted).  Given this, there has been a "long-established policy that maintains the secrecy of grand jury proceedings in the federal courts." *Dennis v. United States*, 384 U.S. 855, 869 (1966) (internal quotation marks omitted).  Breaking grand jury secrecy constitutes "extraordinary relief." *United States v. Shaw*, No. S1 06 CR 41 (CM), 2007 WL 4208365, at *6 (S.D.N.Y. Nov. 20, 2007) (internal quotation marks omitted).

Rule 6(3)(E)(ii) of the Federal Rules of Criminal Procedure permits limited disclosure of information in this category.  It allows for disclosure "at the request of the defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the

grand jury." Fed. R. Crim. P. 6(3)(E)(ii).  In order to invoke disclosure under this Rule, "a defendant must demonstrate some grossly prejudicial irregularity or some other particularized need or compelling necessity" that outweighs the Government's and the Grand Jury's substantial interest in secrecy.  *United States v. Gibson*, 175 F. Supp. 2d 532, 534 (S.D.N.Y. 2001); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983).  "This standard applies both to in camera review and disclosure to the parties of grand jury minutes."  *United States v. Dunn*, No. 05-CR-127 (KMK), 2005 WL 1705303, at *1 (S.D.N.Y. July 19, 2005).

Here, there is a facially valid indictment and Lauria makes no claim that would establish a particularized need or compelling necessity justifying disclosure of matters occurring before the grand jury.  Lauria's request for this information is therefore denied.

## VIII.   Motion to Dismiss Count Four of the Indictment for Failure to State a Claim

Lauria moves, *pro se*, to dismiss Count Four of the Indictment for failure to state a claim, arguing that, in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), Section 924(c)'s so-called residual clause, 18 U.S.C. § 924(c)(3)(B), is unconstitutionally vague and that a Hobbs Act robbery is therefore no longer a "crime of violence" for the purposes of Section 924(c) because it does not qualify as a crime of violence under the remaining so-called force clause or elements clause.  (*See Pro Se* Lauria Mot.)  This motion must be denied.  Although Section 924(c)'s residual clause is unconstitutionally vague, *see United States v. Davis*, 139 S. Ct. 2319, 2327–33 (2019), a substantive Hobbs Act robbery offense categorically remains a valid predicate crime of violence under the elements clause, *see United States v. Hill*, 890 F.3d 51, 53 (2d Cir. 2018), which remains the law even after *Davis*, *see United States v. Barrett*, 937 F.3d 126, 128–29 (2d Cir. 2019).

### CONCLUSION

For the foregoing reasons, Defendants Motions are GRANTED in part and DENIED in

part.  Defendant Molina's motion is granted insofar as it (1) seeks an evidentiary hearing to resolve

the validity of the seizure of Molina's iPhone; and (2) seeks to suppress evidence seized pursuant

to ¶ III(d) of the August 29 iCloud Warrant, unless the evidence could have been seized on a

separate basis.  All other aspects of Defendants' Motions are DENIED.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 52,

54, and 60.

Dated:   September 24, 2020                           SO ORDERED:
            White Plains, New York

_____
          NELSON S. ROMÁN
     United States District Judge

33

A.56

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x
3  UNITED STATES OF AMERICA,
4
                               Case No. 19-cr-449 (NSR)
5       -vs-
                                    TRIAL
6  ANTHONY MOLINA,
7                      Defendant.
8  ------------------------------------x
9                               United States Courthouse
                                White Plains, New York
10                              June 22, 2021
11 Before:
              HONORABLE NELSON S. ROMAN, District Judge
12

13
   APPEARANCES
14
   AUDREY STRAUSS
15      United States Attorney for the
        Southern District of New York
16 LINDSEY KEENAN
   SHIVA LOGARAJAH
17 JASON M. SWERGOLD
        Assistant United States Attorneys
18
   JOSEPH A. VITA
19 Attorney for the Defendant, Anthony Molina
20

21

22

23

24

25

1              (In open court; jury not present)

2              THE COURT:  Everybody ready?

3              MR. VITA:  Judge, are we prepared to address the

4    charge -- any charge issues at this point?

5              THE COURT:  Are there any issues that anybody wants to

6    place on the record with respect to the verdict sheet?

7              MS. KEENAN:  Not from the government, Your Honor.

8              MR. VITA:  Not from the defense, Judge.

9              THE COURT:  Okay.  Let's move on to the jury charge.

10             Any objections or issues want to be addressed at this

11   time with respect to the charge?

12             MS. KEENAN:  Not from the government, Your Honor.

13             MR. VITA:  Judge, I have two applications.

14             THE COURT:  Yes, sir.

15             MR. VITA:  The first is -- and we have discussed one

16   of these previously -- the first is in regard to -- and it's

17   pursuant to Rule 30.  On page 30 of the charge, as drafted, with

18   respect to the paragraph entitled Firearm, I would request that

19   the following language be added at the end of that paragraph.

20             THE COURT:  What do you want me to include?

21             MR. VITA:  The following language:  "A pellet gun,

22   imitation, facsimile or toy gun does not constitute a firearm

23   within the meaning of the statute."

24             And, Judge, the basis for this application is multiple

25   based upon the record in the case.  Specifically, with regard to

1  the 2019 robbery count, the testimony of Detective Michael Russo

2  at page 76 of the transcript in which he said, "I can't tell

3  from the surveillance video whether it was a real gun or not."

4          And also with respect to the 2017 robbery count, the

5  testimony of both victims who indicated a belief that it may

6  have been plastic or sounded plastic or may have been a pellet

7  gun.  That's the basis for the request with intent to the charge

8  language.

9          THE COURT:  Would the government like to be heard on

10  this issue?

11          MS. KEENAN:  Your Honor, the jury charge is -- the

12  purpose of the jury charge is to set forth the law for the

13  jurors and not to advance defense theories.  That's a defense

14  theory that they argued, but our position is that's not

15  appropriate for the charge.

16          THE COURT:  Mr. Vita, the charge pretty much reads

17  that the definition of a firearm is, and then the charge also

18  indicates that it's the government's burden to demonstrate that

19  it's a firearm as defined.  If they fail to demonstrate that, or

20  that doesn't fall within the definition, all right, then

21  whatever -- if they failed to demonstrate that, then whatever it

22  is that was displayed is something other than a firearm.  So I

23  don't necessarily believe that I have to give an additional

24  charge.

25          MR. VITA:  Judge, then in the alternative, I would ask

1 that Your Honor strike the last sentence in the charge, which

2 says, "I instruct you that a gun is a firearm. "

3         "Gun" is an ambiguous statement.  The jury could

4 believe that a pellet gun is a gun based upon that sentence --

5 without, you know -- I think the charge above that would be

6 adequate, and I think because of that ambiguity, that should not

7 be there.

8         THE COURT:  Would the government like to be heard on

9 this?

10         MS. KEENAN:  Your Honor, a gun is a firearm.  I don't

11 think there is any ambiguity that when the charge says a gun is

12 a firearm, it might potentially mean that a pellet gun is a

13 firearm.  This is the law.  It's a standard charge given in

14 courtrooms in this district all the time.  I don't think there

15 is any risk of jury confusion that it might include a facsimile

16 gun.

17         THE COURT:  All right.  I do believe it's a standard

18 charge, Mr. Vita, but your objection is duly noted.

19         MR. VITA:  Judge, the other application I have is in

20 regard to the paragraph on page 11, which deals with -- entitled

21 Statements of the Defendant, and that goes into page 12.  I

22 think the only testimony in this case was that some pedigree

23 information was obtained by the marshals regarding my client.

24 There was no questioning or interrogation or any issues

25 involving the Fifth Amendment.  So based upon that factor, I

1  conspiracy at the time the substantive crime you are considering

2  was committed, that is, had entered into the conspiracy.

3          And fifth, that the defendant could reasonably have

4  foreseen that the substantive crimes you are considering might

5  be committed by his co-conspirators.

6          If you find that the government has proven all five of

7  these elements beyond a reasonable doubt, then you may find the

8  defendant guilty of a substantive offense charged against him,

9  even if he did not personally participate in the acts

10 constituting the crime, and even if he did not have actual

11 knowledge of it.

12         All right.  I'm now going to turn to Counts Three and

13 Six of the Indictment.  Counts Three and Six charge Anthony

14 Molina, the defendant, with firearm offenses.  These counts

15 charge a violation of the law making it a crime for any persons,

16 during and in relation to any crime of violence, to use or carry

17 a firearm or in furtherance of any such crime, to possess a

18 firearm.

19         Count Three is a firearms count connected to the

20 robbery offense charged in Count Two.  This means that you

21 cannot consider Count Three unless you determine that the

22 defendant is guilty of the robbery charged in Count Two.  Count

23 Six is a firearms count connected to the robbery offense charged

24 in Count Five.  This means that you cannot consider Count Six

25 unless you determine that the defendant is guilty of the robbery

1  charged in Count Five.

2           The elements of the offense.  To find the defendant

3  guilty of the firearms offenses charged in Counts Three and Six,

4  the government must prove each of the following elements beyond

5  a reasonable doubt:

6           First, that on or about the dates alleged in the

7  Indictment, the defendant used or carried or possessed a

8  firearm, or any combination of these acts, or aided and abetted

9  the use, carrying or possession of a firearm by another.

10          Second, the defendant used or carried a firearm or

11 aided and abetted the use and carrying a firearm, during and in

12 relation to the specified crimes of violence, or that the

13 defendant possessed the firearm or aided and abetted the

14 possession of the firearm, in furtherance of the specified

15 crimes of violence.

16          Third, that the defendant acted willfully and

17 knowingly.

18          The first element:  Using, carrying, or possessing.

19 The first element the government must prove beyond a reasonable

20 doubt is that on or about the dates set forth in the Indictment,

21 the defendant used, carried or possessed a firearm or aided and

22 abetted the same.

23          Firearm.  A firearm under the statute means any

24 weapon, which will or is designed to or may readily be converted

25 to expel a projectile by the action of an explosive.  In

1  considering this specific element of which the defendant used or

2  carried or possessed a firearm, it does not matter whether the

3  firearm was loaded or operable at the time of the crime.

4  Operability is not relevant to your determination of whether a

5  weapon qualifies as a firearm.  I instruct you that a gun is a

6  firearm.

7          The term "use."  In order to prove the defendant used

8  a firearm, the government must prove beyond a reasonable doubt

9  an active employment of a firearm by the defendant and/or an

10 accomplice during or in the relation to the commission of a

11 crime of violence.  This does not mean that the defendant and/or

12 the accomplice must actually fire or attempt to fire a firearm,

13 although those would obviously constitute use of a firearm.

14 Brandishing, displaying, or even referring to a weapon so that

15 others present know that the defendant and/or an accomplice had

16 a firearm available if needed, all constitute use of a firearm.

17 The mere possession of a firearm at or near the site of the

18 crime without active employment as I just described it is not,

19 however, sufficient to constitute use of a firearm.

20         The term "carry."  In order to prove that the

21 defendant carried a firearm, the government must prove beyond a

22 reasonable doubt that the defendant had a firearm within his

23 control so that it was available in such a way that it furthered

24 the commission of the crime.  The defendant need not have held a

25 firearm physically, that is, to have actual possession of it on

1 his person.  If you find that the defendant had dominion and

2 control over the place where a firearm was located, and had the

3 power and intention to exercise control over a firearm, and that

4 a firearm was immediately available to him in such a way that it

5 furthered the commission of the crime of violence, you may find

6 that the government has proven that the defendant carried a

7 firearm.

8          Possession.  The legal concept of possession may

9 differ from the everyday usage of the term, so let me explain it

10 to you in some detail.  Actual possession is what most of us

11 think of as possession, that is, having physical custody or

12 control of an object, exactly like this pen that's in my hand.

13 If you find the defendant had a firearm on his person,

14 therefore, you may find the defendant had possession of it.

15 However, a person need not have actual physical possession --

16 that is, physical custody an object -- in order to be in legal

17 possession of it.  If a person has the ability to exercise

18 substantive control over an object, even if he does not have the

19 object in his physical custody, and that person has the intent

20 to exercise such control, then the person is in possession of

21 that article.  This is called "constructive possession."

22          Control over an object may be demonstrated by the

23 existence of a working relationship between one person having

24 the power or ability to control the item and another person who

25 has actual physical custody.  The person having control

1  "possesses" a firearm because he has an effective working

2  relationship with the person who has actual custody of a

3  firearm, and because he can direct the movement or transfer or

4  disposition of the firearm.  In addition, an individual may have

5  possession of an item that is not found on his person because

6  the individual has a relationship to the location where the item

7  is maintained.  In this manner, for example, a businessperson

8  may possess things that are scattered throughout a number of

9  stores, offices or installations around the country.

10        More than one person can have control over the same

11 firearm.  The law recognizes that possession may be sole or

12 joint.  If one person alone has actual or constructive

13 possession of a thing, possession is sole.  If more than one

14 person has possession of it, as I have defined "possession" for

15 you, then possession is joint.  That is what is meant by

16 possession.  If you find that the defendant had such power and

17 intention that he possessed the firearm under this element, even

18 if he possessed it jointly with another, proof of ownership of a

19 firearm is not required.

20        Finally, possession and ownership are not the same.  A

21 person could possess an object and not be the owner of the

22 object.

23        The defendant is also charged with aiding and abetting

24 the crimes charged in Counts Three and Six.  A defendant may be

25 found guilty of violating Section 924(c) under an aiding and

1 abetting theory or under a *Pinkerton* liability.  I previously
2 instructed you on aiding and abetting law and *Pinkerton*
3 liability.  You should apply those instructions in determining
4 whether the defendant is guilty of these counts as an aider and
5 abettor, or *Pinkerton* liability applies here.  I also want to
6 give you an additional instruction that applies specifically to
7 Counts Three and Six.

8          To convict the defendant of the firearms offenses
9 charged in Counts Three and Six under an aiding and abetting
10 theory, you must find that the defendant either facilitated the
11 use, carrying or possession of the firearm, or the commission of
12 the charged crimes of violence.  It is not necessary that the
13 defendant facilitate both the possession and use or carrying of
14 the firearm and the crimes of violence.

15          In addition, to convict the defendant of the firearms
16 offense on an aiding and abetting theory, you must find that the
17 defendant had advance knowledge that a participant in the crime
18 of violence would use, carry, or possess a firearm in
19 furtherance of the crime of violence.  Advance knowledge means
20 knowledge at a time the defendant can attempt to alter the plan
21 or withdraw from it.  Knowledge of the firearm may, but does not
22 have to, exist before the underlying crime has begun.  It is
23 sufficient if the knowledge is gained in the middle of the
24 underlying crime so long as the defendant continues to
25 participate in the crime and has a realistic opportunity to

1  withdraw from it.  You may, but need not, infer that the
2  defendant has sufficient foreknowledge if you find the defendant
3  continued his participation in the crime after learning about
4  the use, carrying, or possession of a firearm by a
5  co-conspirator.

6          In other words, as to aiding and abetting the offenses
7  charged in Counts Three and Six, the government must prove
8  beyond a reasonable doubt the defendant either facilitated the
9  use, carrying, or possession of a firearm or the commission of
10 the charged crime of violence and had knowledge of a firearm
11 when he still had a realistic opportunity to withdraw from the
12 crime of violence.

13         Note that "actual knowledge" is not required with
14 respect to *Pinkerton* liability.

15         The second element.  The second element is that the
16 defendant used or carried a firearm during and in relation to a
17 crime of violence, or, in the alternative, that he possessed a
18 firearm in furtherance of such a crime.

19         "In relation to" means that the firearm must have had
20 some purpose, role, or effect with respect to the crime of
21 violence.  This requirement is satisfied if the firearm
22 facilitated, or had the potential to facilitate, the specified
23 crimes of violence.

24         To possess a firearm "in furtherance of a crime of
25 violence" requires that the defendant possess the firearm and

# NOTICE OF APPEAL

### United States District Court

Southern _____ District of New York _____



Caption:

UNITED STATES OF AMERICA v.

ANTHONY MOLINA

Docket No.: 19-cr-449-3 _____

Hon. Nelson S. Roman _____
(District Court Judge)

Notice is hereby given that ANTHONY MOLINA _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment ✔ |, other | _____

(specify)

entered in this action on 09/24/2021 _____.
(date)

This appeal concerns: Conviction only |___ Sentence only |___| Conviction & Sentence |✔ Other |____

Defendant found guilty by plea | | trial | ✔ | N/A |

Offense occurred after November 1, 1987? Yes |✔ No |___ N/A |___

Date of sentence: 09/24/2021 _____ N/A |___|

Bail/Jail Disposition: Committed |✔ Not committed | | N/A |

Appellant is represented by counsel? Yes ✔ | No | | If yes, provide the following information:

Defendant's Counsel: Richard W. Levitt, c/o Levitt & Kaizer

Counsel's Address: 40 Fulton Street, 17th Floor

New York, NY 10038

Counsel's Phone: 212-480-4000

Assistant U.S. Attorney: AUSA Lindsey Keenan

AUSA's Address: One St. Andrew's Plaza

New York, NY 10007

AUSA's Phone: 212-637-2634

Signature

A.68